# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Joel Marvin Munt,

      Plaintiff,

v.

Nannette Larson, Kathy Reid, Shelly Monio,
Kim Ebeling, Doctors #1–6, Health Services
Workers #1–6, Opticians #1–4, and RN #1,

      Defendants.

**Civil No. 15-582 (SRN/SER)**

**REPORT AND RECOMMENDATION**

---

    Joel Marvin Munt, *pro se*, 236179, MCF-Stillwater, 970 Pickett Street North, Bayport, Minnesota 55003.

    Timothy S. Christensen, Esq., Minnesota Attorney General's Office, 445 Minnesota Street, Suite 900, St. Paul, Minnesota 55101, for Defendants Nanette Larson, Kathy Reid, Shelly Monio, and Kim Ebeling.

---

STEVEN E. RAU, United States Magistrate Judge

    The above-captioned case comes before the undersigned on Plaintiff Joel Marvin Munt's ("Munt") Motion for Preliminary Relief ("First Motion for Preliminary Relief") [Doc. No. 6] and Second Motion for Preliminary Relief [Doc. No. 25].[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B)–(C) and District of Minnesota Local Rule 72.1 for a report and recommendation. For the reasons stated below, the Court recommends denying the Motions for Preliminary Relief.

---

[1]     The Court hereinafter refers to these motions collectively as the "Motions for Preliminary Relief."

# I.    BACKGROUND

## A.    Factual Background

Munt is a prisoner of the State of Minnesota and is incarcerated currently at the Minnesota Correctional Facility at Stillwater ("MCF-Stillwater"). (Letter to Mag. Judge Dated July 10, 2015, "July 10 Letter") [Doc. No. 73 at 1]. Until recently, he was incarcerated at the Minnesota Correctional Facility at Oak Park Heights ("MCF-Oak Park Heights"). (Civil Rights Compl. Pursuant to 42 USC § 1983, "Compl.") [Doc. No. 1 ¶ C.1]. Defendant Nanette Larson ("Larson") is the Director of Health Services for the Minnesota Department of Corrections ("DOC"). (Compl. ¶ C.2); (Answer) [Doc. No. 23 ¶ 4]. Defendant Kathy Reid ("Reid") is the Heath Services Administrator at MCF-Oak Park Heights, and Defendant Shelly Monio ("Monio") is a Grievance Coordinator at MCF-Oak Park Heights. (Answer ¶ 4); *see also* (Compl. ¶¶ C.17, C.19). Defendant Kim Ebeling ("Ebeling") is a Grievance Coordinator at the DOC's Central Office. (Answer ¶ 4); *see also* (Compl. ¶ C.20).

Munt filed his Complaint under 42 U.S.C. § 1983 on February 25, 2015, alleging that Defendants Larson, Reid, Monio, and Ebeling (collectively "Defendants") violated his Eighth Amendment rights. (Compl. ¶¶ A., E.1–23). Specifically, Munt alleges that before his incarceration, he "learned glasses gave him severe headaches," even when his prescription was correct. (*Id.* ¶ D.1). Munt asserts that every pair of glasses he has worn has caused the headaches and that his headaches are made worse by "[a]ny movement." (*Id.*). Munt alleges that he has "worn contacts for many years and no such problem occurs." (*Id.* ¶ D.2). When he arrived at MCF-Oak Park Heights in April 2012, Munt's spare contacts lenses and related supplies were

taken from him.[2] (*Id.* ¶ D.3); (Paulson Aff. ¶ 15, 18).[3] Shortly thereafter, Munt requested glasses and "notified Health Services of the problem he experienced when wearing glasses." (Compl. ¶ D.4); *see also* (Offender Kite Form, Ex. 1, Attached to Compl., "Ex. 1 to Compl.") [Doc. No. 1-2].[4] Munt was placed on a list to see an eye doctor and was told that he could "address [his] concerns at that time." (Ex. 1 to Compl.). Munt's complaints in April 2012 were responded to, in that an optometrist saw him on April 11, 2012, and he received new glasses on April 23, 2012. (Paulson Aff. ¶ 15). The DOC has been unable to locate the optometrist's notes from this visit, and the record does not otherwise disclose whether Munt raised concerns about headaches due to glasses with the optometrist then. *See* (*id.*).

Munt alleges that he filed "numerous kites" in 2012 that were not responded to, that he mentioned his "headaches . . . each time he signed up for a sick call," but that his complaints of headaches were not recorded in his medical file.[5] (Compl. ¶ D.6).

On August 9, 2012, however, Munt was seen for a "multiple-month history of headaches." (Medical File, Ex. 6, Attached to Paulson Aff. "Ex. 6 to Paulson Aff.") [Doc. No.

---

[2]    "Pursuant to DOC [p]olicy, . . . when an offender arrives at [MCF-]Oak Park Heights their spare contacts and contact supplies are confiscated, but an offender may keep the contact lenses that he is wearing." (Aff. of David Paulson, MD, MBA, "Paulson Aff.") [Doc. No. 50 ¶ 18].

[3]    Portions of the Paulson Affidavit and exhibits attached thereto were filed under seal, and references to the sealed filings in Defendants' briefs have been redacted. The sealed exhibits include Munt's medical records, including medical records that are unrelated to Munt's headaches. The Court refers only to those portions of Munt's medical records that are necessary to an analysis of Munt's claims.

[4]    Munt has attached numerous relevant documents as exhibits to his Complaint, all of which are included at Document Number 1-2. For ease of reference, the Court will hereinafter cite to these documents as "Ex. ___ to Compl.".

[5]    A "kite" is a type of informal grievance. *See generally* (Compl.).

50-2 at 3].[6] The medical record for this visit does not include any references to the source of the headaches. (*Id.*). The headaches were identified as being of a "potential migraine variant." (*Id.*). Munt reported trying several medications for his headaches, "without significant improvement." (*Id.*). Munt's vitals were taken and he was given a physical examination. (*Id.*). Munt was given a trial of "Dilacor XR . . . as a suppressive medication" and the doctor suggested using "Tylenol on an as-needed basis." (*Id.*). Munt was told to inform the medical clinic if he experienced further difficulties. (*Id.*).

On October 4, 2012, Munt submitted a kite requesting contact lenses, to which he received a response informing him that "contacts were not allowed," but an eye doctor would review his request. (Compl. ¶ D.7); (Medical File, Ex. 5, Attached to Paulson Aff. "Ex. 5 to Paulson Aff.") [Doc. No. 50-2 at 5]. On November 2, 2012, Munt received a letter from Larson acknowledging Munt's notice "that [his] medical condition [was] being ignored because [he was] being told that contact lenses are disallowed by policy." (Ex. 2 to Compl.). Larson further stated:

> You say that your migrane-associated headaches are aggravated when wearing glasses and that policy should not override your medical needs.
>
> I somewhat agree with your position on the policy. However, after reviewing your medical record, your history of headaches and their connection with eyeglasses is far from established to a degree that would support advocacy of your position.
>
> Please work with Health Services to objectively address your headache pain. Perhaps some clarity can be obtained with that strategy.

(*Id.*).

Munt next complained of headaches associated with his glasses on April 19, 2013. (Compl. ¶ D.9); *see* (Paulson Aff. ¶ 16). Munt asked for contacts and a nurse informed him of

---

[6]     The exhibits to the Paulson Affidavit that have been filed under seal are not paginated. In the interest of clarity, the Court has assigned page numbers to those exhibits and refers to them accordingly.

the risks of contact lens use in prison due to "chemical use," as well as the possibility of "infection [due to] confined living quarters." (Ex. 5 to Paulson Aff. at 3). Munt was informed that his request for contacts would be reviewed by a "provider, eye doctor, and the Health Services Administrator." (Paulson Aff. ¶ 16). No "ophthalmologist, optometrist, or physician determined that Munt needed another examination in April 2013 as no examination was scheduled." (*Id.*).

On July 29, 2013, Munt again complained of headaches caused by glasses, and was "refer[red] to [an] MD." (Compl. ¶ D.10); (Paulson Aff. ¶ 17); (Ex. 5 to Paulson Aff. at 2–3). Munt was seen by a practitioner on August 1, 2013, and August 15, 2013. (Ex. 6 to Paulson Aff. at 2, 4). The notes for these visits demonstrate that Munt discussed a long history of headaches, but make no mention of a complaint that the headaches were being caused by glasses. (*Id.*). Rather, Munt was examined and treated for "headache, nonspecified" and "ethmoid sinusitis and maxillary sinusitis." (*Id.*). After a course of antibiotics and prednisone, he reported that his headaches were "much improved." (*Id.* at 2).

For almost a year, Munt did not complain of headaches due to his glasses. *See* (Compl. ¶ D.12). Although Munt's spare contact lenses and associated supplies were confiscated upon his entry to MCF-Oak Park Heights, Munt continued to wear the contacts he was wearing at the time of intake until August 1, 2014, when his "final pair of contacts died." (*Id.* ¶ D.11); (Paulson Aff. ¶ 18). Munt asserts he made a "good faith" attempt to rely on his prescribed glasses, but Munt filed a kite stating that his glasses were giving him headaches the very same day his contacts "died." *See* (Compl. ¶ D.11–12); (Ex. 3 to Compl.).

On August 12, 2014, Munt was referred to an "MD to assess his eyes." (Ex. 5 to Paulson Aff. at 1–2). Stephen Craane, MD ("Dr. Craane"), saw Munt ten days later, when Munt reported

with "certainty" that his headaches were due to "wearing glasses instead of contact lenses," and reported experiencing "similar headaches in the past when converting between contact lenses and eyeglasses." (Ex. 6 to Paulson Aff. at 1). Munt asserted that he had "tried a variety of medications . . . for these headaches, without relief." (*Id.*). He reported "no chest pain, dyspnea, nausea, focal motor weakness, sensory loss, or paresthesia." (*Id.*). Dr. Craane conducted a physical examination of Munt, which yielded normal results. *See* (*id.*). Dr. Craane noted that Munt was experiencing "[h]eadache, potentially related to [his] correctional eyewear." (*Id.*). He referred Munt "to the facility optician for reevaluation and potential rewriting of [his] eyeglass prescription." (*Id.*). Munt "verbalize[d] understanding and agreement with this plan" and was told to "notify medical staff should he experience further difficulties." (*Id.*).

Munt filed several kites in early September 2014 regarding the need for attention to his headaches due to glasses. *See* (Compl. ¶¶ D.15–19). On September 10, 2014, Munt was seen by an optometrist. (Compl. ¶ D.20); (Paulson Aff. ¶ 19). This optometrist ordered new glasses for Munt. (Compl. ¶ D.20); (Paulson Aff. ¶ 19). Munt alleges that the optometrist informed him that the "DOC would not approve contacts" and prescribed new glasses "despite no reason to believe this would resolve the issue, nor any attempt to even diagnose the issue." (Compl. ¶ D.20).[7]

Munt continued to file numerous kites throughout September 2014, inquiring into the policy that prohibits contacts, complaining that no alternative to contact lenses had been looked into in an effort to address his headaches, inquiring whether contact lenses or "Lasik" surgery would be a "valid solution" to his headaches, and accusing administration of lying to him about the "no contacts" policy because contacts are allowed when medically necessary. *See* (Exs. to Compl. 6–12). Repeatedly, Munt was informed that he was not allowed contact lenses under the

---

[7]     The DOC has been "unable to locate a contemporaneous record of this visit." (Paulson Aff. ¶ 19).

applicable policy because contact lenses were not medically necessary for him (i.e., contact lenses had not been ordered by a doctor as medically necessary), that he had been scheduled for another eye exam, and that alternatives to contact lenses had not been explored because "no other options have been requested." *See* (*id.*).

Munt received new glasses on September 29, 2014, and on October 9, 2014, submitted a kite stating that the glasses "did nothing to resolve the problem. They continue to cause increasingly severe headaches, loss of cognitive ability and other issues." (Compl. ¶¶ D.30–31); (Ex. 13 to Compl.). This kite was forwarded to an eye doctor. (Ex. 13 to Compl.). Munt continued to complain of headaches and loss of cognitive ability when wearing his glasses and the lack of an "alternative solution nor consideration for the problem" in an October 27, 2014 kite to Larson. (Ex. 14 to Compl.).

On November 5, 2014, Munt was again seen by an optometrist, Michelle Taylor, OD ("Dr. Taylor"). (Compl. ¶ D.34); (Paulson Aff. ¶ 20); (Optometry Records, Ex. 7, Attached to Paulson Aff., "Ex. 7 to Paulson Aff.") [Doc. No. 50-2 at 2, 4]. Munt reported headaches caused by his glasses and "disorientation when he removes them." (Ex. 7 to Paulson Aff. at 4). Munt received another new pair of glasses on November 20, 2014, and on the same day, reported that his headaches were not resolved by the new glasses. (Ex. 7 to Paulson Aff. at 4, 6); (Paulson Aff. ¶ 20). On December 3, 2014, Dr. Taylor requested a "contact lens fitting and supply." (Ex. 7 to Paulson Aff. at 7). Dr. Taylor reported that Munt had a "[n]ormal eye exam," noted her diagnosis of "myopia/astigmatism," and stated that the request was "[b]ased on subjective complaints—he wants it in writing that contacts are not allowed for basic myopia." (*Id.*); *see also* (*id.* at 4) (Dr. Taylor's note that she "will request [contact lenses] due to subjective complaints of headaches"). In accordance with the DOC's typical review process, a nurse and physician

reviewed the request, but denied it and "recommended alternative treatment on December 11, 2014." (Paulson Aff. ¶ 22).

In the meantime, Munt filed a formal grievance on December 1, 2014. (Compl. ¶ D.36); (Ex. 15 to Compl.). On December 5, 2014, Munt received correspondence from Monio regarding his grievance, which stated that Munt's complaint would "not be entered as a formal grievance" because he did not "obtain and file [his] grievance within 45 calendar days of the occurrence of the issue being grieved." (Ex. 17 to Compl.). She also noted that "some . . . copies," presumably referring to copies of kites, were "responded on and some [were] not." (*Id.*). On December 8, 2014, Munt filed a grievance appeal, arguing that the 45-day requirement did not apply to his medical grievance and that, in any event, he had been seen on November 5, 2014, "clearly within 45 days" of his December 1, 2014 grievance. (Ex. 18 to Compl.). Munt further stated that some copies of kites he submitted did not include responses because staff "didn't respond" to those kites. *See* (*id.*). A December 16, 2014 letter from Ebeling to Munt stated that his grievance appeal was being returned because he "did not attach a copy of [the] original facility grievance/response and/or documentation that the grievance was addressed informally. The requirements of Policy 303.1001 Procedure – Medical have the same standards as Policy 303.100 Grievance Procedure." (Ex. 19 to Compl.).

While Munt was pursuing the formal grievance process, he received a December 6, 2014 letter from Larson, in which she stated that Munt was continuing to "lobby[] for contact lenses." (Ex. 20 to Compl.). Larson stated:

> The controlling policy on contact lenses is 500.150, Adaptive Equipment/Medical Authorizations. The policy reads, in part, "Authorizations are limited to medical necessity as deemed by the prescribing authority." Your practitioners have not made such a determination, despite several examinations. You have been provided this information in kite responses.

Absent a practitioner's opinion that contact lenses are medically indicated to address a medical condition, you are unlikely to be successful in obtaining contact lenses.

If you continue to have headaches, please address that issue with Health Services.

(*Id.*).[8]

On January 7, 2015, Munt received a response from Dr. Taylor regarding a December 23, 2014 kite. (Ex. 21 to Compl.). Dr. Taylor informed Munt that she made the contact lens request he wanted, but that she had "never gotten approval for this type of request in the past. In fact, I've been denied for guys with triple your prescription [and] headaches, and I know of no medical insurance on the street that would consider contacts in your case." (*Id.*); *see also* (Compl. ¶ D.43). Dr. Taylor informed Munt that the request had been denied and that Munt could "go without the glasses, pulling them out only when [he] need[s] to see details" and further informed Munt that there are medications available to help with headaches. (Ex. 21 to Compl.); *see also* (Compl. ¶ D.43). "[T]here is no objective evidence that [Munt's] eyeglasses are causing headaches." (Paulson Aff. ¶ 27). Further, there is "no indication in Munt's medical record" that suggests Munt has "an objective abnormality" that is causing his headaches, "such as a brain tumor or hemorrhage." (*Id.* ¶ 25).

Based on the above, Munt alleges that Defendants have been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. (Compl. ¶¶ E.2, E.16, E.20, E.21). Munt alleges that almost three years have passed with "no attempt having been made to address . . . [his] problem" and that Health Services has simply told him that contact lenses are not permitted in order to discourage "something [the] policy does allow and with no legitimate

---

[8]    Larson's statements in this letter appear to be repetitive of statements she made to Munt in a letter dated October 25, 2014, which Munt contends he did not receive until December 4, 2014. (Ex. 16 to Compl.); (Compl. ¶ D.37).

penological interest in doing so." (Compl. at p. 15–16).[9] Munt states that "while contacts are an effective solution to the issue, this suit is about the failure of [H]ealth [S]ervices to address a medical need rather than a particular solution to it." (*Id.* at p.16). Munt further asserts that Defendants have "interfered with their own administrative process as he attempted to" resolve his medical issues and "refused to follow the administrative process for grievances, interfering with [Munt's] progress in" the grievance process. (*Id.*). Munt therefore alleges that Defendants violated his "[F]irst [A]mendment right to redress in so much as [they] impeded the administrative process" and his "right to Due Process and . . . Equal Protection." (*Id.* ¶¶ E.2, E.16, E.20, E.21).

In his Complaint, Munt seeks various forms of relief: (1) judgment declaring the actions of Defendants unconstitutional; (2) an order requiring the DOC to "address [Munt's] medical issue, [by] either providing contact lenses, Lasik Surgery (if possible for his eyes) or some alternative option that allows [Munt] to see without subjecting him to the headaches he must endure with glasses," and an order requiring the DOC to provide Munt with contact lenses until one of the above "permanent" solutions is implemented; (3) an order preventing the DOC, "it's [sic] employees, contractors and anyone else operating on its behalf, from transferring or otherwise retaliating against" Munt "to prevent future harm to him and a multiplicity of actions"; (4) an order requiring the DOC to "change its policy to allow reasonable alternatives to glasses as the current policy is without [a] legitimate penological interest and is leveraged to ignore the serious medical needs of inmates"; (5) an order requiring the DOC to "begin addressing the medical needs of inmates . . . and to provide such care as is required"; (6) an order requiring "the employees, contractors and anyone else operating on behalf of the [DOC] to clearly write their

---

[9]     The Court refers to pages of the Complaint as no paragraph number is assigned to the relevant content.

names on kites in addition to signing them for increased accountability and less opportunity for officials to impede the use of the process by inmates"; and (7) compensatory and punitive damages. (*Id.* ¶¶ F.1–31).

### C.   Relevant Procedural Background: Motions for Preliminary Relief

Munt filed his First Motion for Preliminary Relief simultaneously with his Complaint and requested expedited handling of his First Motion for Preliminary Relief. At the time he filed the motion, no summons had been issued as to any defendant. More importantly, Munt did not pay the filing fee when he filed his Complaint, and instead filed an application seeking leave to proceed *in forma pauperis* ("IFP"). (Order Dated Feb. 27, 2015) [Doc. No. 12 at 1]. Consistent with 28 U.S.C. § 1915(b), Munt was ordered to pay an initial partial filing fee of $42.11 and informed that this action would "not go forward until" this amount was paid in full. (*Id.* at 1–2). Munt paid the initial filing fee, and subsequently the Court granted Munt IFP status. (Order Dated Mar. 25, 2015) [Doc. No. 16 at 1]. Munt was therefore entitled to have the United States Marshal serve Defendants, but because Munt had not submitted the proper documentation for service of process, service could not be completed at that time. (*Id.* at 2). Munt later submitted the required documentation, and shortly thereafter filed his Second Motion for Preliminary Relief. The Court issued a briefing schedule, requiring Defendants to respond to the Motions for Preliminary Relief by May 19, 2015, and permitting Munt to reply by June 2, 2015. (Text Only Order Dated April 28, 2015) [Doc. No. 24]. Later, Munt requested an extension of time until the end of June to file his replies, which the Court granted. (Text Only Order Dated May 29, 2015) [Doc. No. 57]. The Motions for Preliminary relief were fully briefed on June 29, 2015, when Munt's final reply was filed. The Court discusses the substance of Munt's motions below.

#### 1.   First Motion for Preliminary Relief

In his First Motion for Preliminary Relief, Munt asks the Court to grant him the following preliminary relief: (1) the "use of proper prescription contact lenses for the duration of this case"; (2) an injunction preventing the DOC, "its employees, contractors, and anyone else acting on its behalf from transferring" Munt to "another facility . . . upon penalty of contempt of court"; (3) an injunction preventing the DOC, "its employees, contractors, and anyone else acting on its behalf from transferring" Munt to "another unit within" MCF-Oak Park Heights "upon penalty of contempt of court"; (4) an injunction preventing the DOC, "its employees, contractors, and anyone else acting on its behalf from making any other acts in retaliation or meant to impede [Munt] in court," including limiting access to the law library and interfering with Munt's legal materials "upon penalty of contempt of court"; and (5) an order "allowing [Munt] to get copies and delivery of pleadings free of charge." (First Mot. for Prelim. Relief at 4–6). Munt contends that the above relief is necessary to "avoid further harm," and to avoid "impediments to the pursuit of [his] complaint, and multiplicity of actions." (*Id.* at 1).[10]

In response, Defendants argue that Munt's second, third, fourth, and fifth requests for relief, regarding transfers, retaliation, and copies and delivery of pleadings, are unrelated to the allegations in the Complaint and that Munt is therefore not entitled to these forms of preliminary relief. (Mem. in Opp'n to First Mot. for Prelim. Relief) [Doc. No. 49 at 5–7]. Defendants also contend that, even if those requests for relief were sufficiently related to the allegations in the Complaint, Munt is not entitled to preliminary relief regarding transfers, retaliation, and copies and delivery of pleadings. (*Id.* at 7–9). With respect to Munt's first request for relief, regarding

---

[10] In a supplement to his First Motion for Preliminary Relief Munt alleges that another inmate "fighting the DOC and preparing additional legal measures against the illegal conduct of medical staff . . . was taken from [his] unit and had other punitive measures taken against him." (Supp. to First Mot. for Prelim. Relief) [Doc. No. 7]. On this basis, Munt contends that "the danger of retaliation is very real and it serves justice best to grant the requested relief to prevent the harm rather than waiting until it has occurred and additional legal actions are required." (*Id.*).

the provision of contact lenses for the duration of this litigation, Defendants contend that Munt has failed to show that he is entitled to preliminary relief. (*Id*. at 9–14).

In reply, Munt argues that his requests regarding transfers, retaliation, and copies and delivery of pleadings should be granted, as he need not show a connection between the relief he requests and the allegations in his Complaint because "[e]quitable relief may be granted independently of the alleged restrictions." (Reply to Defs.' Mem. in Opp'n to First Mot. for Prelim. Relief, "Reply Re: First Mot. for Prelim. Relief") [Doc. No. 66 at 3]. With respect to his request for contact lenses, Munt contends that he is entitled to preliminary relief because he will suffer various forms of irreparable harm if preliminary relief is not granted, he has shown a likelihood of success on the merits, and the interests of the parties and public weigh in favor of an injunction. (*Id.* at 7–12).

### 2. Second Motion for Preliminary Relief

In his Second Motion for Preliminary Relief, Munt seeks "preliminary relief to avoid irreparable harm to the pursuit of his Complaint." (Second Mot. for Prelim. Relief at 1). Munt describes several restrictions that he contends will "prejudice and frustrate the . . . pursuit of his claims and thereby interfere with his right of access to the courts" and that violate his right to equal protection "and other provisions of the Federal Constitution," as the alleged restrictions do not "exist for other parties." (*Id.* at 5). The alleged restrictions include limited ability to obtain copies of legal documents, limited access to notary services and copies, limited access to the law library and particular legal resources, mail delays, lack of electronic filing capabilities at MCF-Oak Park Heights, and a resulting decrease in time Munt has for research and drafting of pleadings. (*Id.* at 3–5). Munt specifically requests: (1) "daily access to the Law Library for a reasonable number of hours each day"; (2) that "copying and notary services be made available

to [him] daily"; (3) daily access to electronic filing and/or "extended deadlines to compensate for time lost due to delays"; and (4) "access onsite to District Court cases, Circuit Court cases, and the ability to do Shepardizations." (*Id.* at 6).

Defendants argue that the Second Motion for Preliminary Relief should be denied because the relief Munt seeks is "not related to the allegations in the Complaint." (Mem. in Opp'n to Second Mot. for Prelim. Relief) [Doc. No. 35 at 2, 3–5]. Alternatively, Defendants argue that, even if considered on the merits, Munt's requests for preliminary relief fail. (*Id.* at 5–18). In reply, Munt contends that he is not required to establish a connection between the allegations in his Complaint and the preliminary relief he seeks by motion, as the issues raised in the motion are "access to the court issue[s] harming the pleading[s]." (Reply to Defs.' Mem. in Opp'n to Second Mot. for Prelim. Relief, "Reply Re: Second Mot. for Prelim. Relief") [Doc. No. 59 at 4]. Munt further contends that he will be irreparably harmed without the requested relief and that other relevant factors weigh in favor of granting him preliminary relief. (*Id.* at 6–22).

### D.    Other Filings

In addition to the Motions for Preliminary Relief, Munt filed six letters. Munt filed these letters to the Court before, during, and after the course of briefing on the Motions for Preliminary Relief. The Court summarizes these letters below.

In an April 15, 2015 letter to the Court, Munt asserts that when he attempted service by mail of his Second Motion for Preliminary Relief, "the Mail Room intercepted" envelopes addressed to Defendants Reid and Monio. (Letter to Mag. Judge Dated Apr. 15, 2015, "April 15 Letter") [Doc. No. 22 at 1]. Munt labeled the envelopes as "Legal Mail" but "the Mail Room . . . refused delivery," opened the envelopes, and "returned them with a Notice of Non-Delivery of Mail" that "claimed they were 'NOT legal or special as addressed.'" (*Id.*). In light of these

events, Munt requests an order requiring "the Mail Room to deliver [his] letters and prohibit[ing] them from further unconstitutional interference with [his] Legal Mail."[11]

On May 5, 2015, Munt sent a letter to the Court, stating that he had been subject to "retaliation" that was "becoming more flagrant and burdensome." (Letter to Mag. Judge Dated May 5, 2015, "May 5 Letter") [Doc. No. 27 at 1]. In the letter Munt alleges difficulties with access to the law library, room searches, interference with his legal mail and legal papers, limits on printing, inquiry into his copying activity, and hostile attitudes from guards. (*Id.* at 1–2). Munt requests the Court grant his "previously requested preliminary relief." (*Id.* at 4).

On May 28, 2015, Munt sent a letter describing an interaction with the law librarian at MCF-Oak Park Heights in which he asked her "to put in writing things that affect this case," specifically matters regarding "Jeanne Michels perjury" and an inmate's inability to "get legal copies if [he is] out of money."[12] (Letter to Mag. Judge Dated May 28, 2015, "May 28 Letter") [Doc. No. 62]. The librarian refused and Munt told her she "would be subpoenaed to testify." (*Id.*). "Michels then called [Munt] up, [and] said she did not like her people being talked to that way." (*Id.*). Munt asserted that he was then "put . . . on IR." (*Id.*). Munt further informed the Court that he had not "completed the reply to [Defendants] response to [his] first request for preliminary relief" and stated that it was "unclear how much of [his] legal material will be left after whatever they do." (*Id.*). Munt stated that "[t]hey only went after me because of this suit and [an] upcoming one" and again asked the Court to grant him preliminary relief. (*Id.*).

---

[11]     The Court ordered Defendants to respond to, and permitted Munt to submit a reply regarding the April 15 Letter because Munt had already filed the April 15 Letter when the Court issued a briefing schedule with respect to the Motions for Preliminary Relief. See (Text Only Order Dated Apr. 28, 2015). Because the document is a letter to the Court, the Court discusses it along with Munt's other letters to the Court.
[12]     Jeanne Michels ("Michels") is the Education Director at the MCF-Oak Park Heights and has submitted an affidavit in this case; she is not a defendant. (Aff. of Jeanne Michels) [Doc. No. 36]; *see also* (Compl.).

On June 3, 2015, Munt sent another letter to the Court alleging various acts of retaliation that occurred "[s]ince 5/29/2015," including not having "paper to produce pleadings," complete denial of the ability to "do any research or . . . type," and denial of access to Defendants' Memorandum in Opposition to the First Motion for Preliminary Relief and his notes regarding the memorandum. (Letter Dated June 3, 2015, "June 3 Letter") [Doc. No. 64 at 1]. Munt also stated there was "no way to know when or if I will see [the] materials" and that his "status with no legal access is likely to continue for at least 30 days before [it] changes, and it is unclear what if any changes will occur then." (*Id.*). In addition, Munt stated that he learned that "you will be denied legal copies if you lack the money" and that "you are delayed in getting your copies even if you have the money." (*Id.*). It also appears that Munt lost his job as a "swamper" (i.e., a unit janitor), and Munt contends that this job was one of only four jobs he could perform when he "cannot see and is plagued by headaches." (*Id.*); *see also* (Mem. in Opp'n to Second Mot. for Prelim. Relief at 13) (explaining the term "swamper"). Finally, Munt asked the Court to grant his requests for preliminary relief.[13] (June 3 Letter at 1).

On June 18, 2015, Munt sent another letter to the Court, in which he asserted that the "DOC" was preventing him from filing his reply to Defendants' Memorandum in Opposition to

---

[13]        In his June 3 Letter, Munt also refers to a disciplinary hearing. (June 3 Letter at 2). Munt makes no reference to a disciplinary hearing in his Complaint or his Motions for Preliminary Relief, and his June 3 Letter provides no detail regarding the basis or nature of the disciplinary hearing referenced therein. *See generally* (Compl.); (June 3 Letter).

        In addition, in the same letter, Munt asks the Court to "hold a hearing where witnesses may be subpoenaed and evidence produced so that . . . Michels may be charged with perjury." (June 3 Letter at 1). As noted, Munt makes references to his belief that Michels has committed perjury in several of his other filings. *See, e.g.*, (May 28 Letter). The Court has no authority to pursue perjury charges against Michels. *See United States v. Giannattsio*, 979 F.2d 98, 100 (7th Cir. 1992) ("A judge in our system does not have the authority to tell prosecutors which crimes to prosecute or when to prosecute them. Prosecutorial discretion resides in the executive, not in the judicial, branch . . . ."); *United States v. Guidant LLC*, 708 F. Supp. 2d 903, 922 (D. Minn. 2010) (Frank, J.) ("[T]he prosecution—not a court—determines what crimes are charged against a defendant.").

the First Motion for Preliminary Relief. (Letter to Mag. Judge Dated June 18, 2015, "June 18 Letter") [Doc. No. 65 at 1]. Munt stated that as of May 29, 2015, he was denied access to his legal materials and the law library. (*Id.* at 2). In addition, Munt reported that he was "notified that [his] legal papers and . . . property must be shipped out or thrown away" and that he was unable to view his property to determine what should be kept. (*Id.* at 2–3).[14] Munt also stated that: (1) he had not yet received copies of federal circuit and district court cases that Defendants cited in earlier memoranda and that he had requested from the law library; (2) he was recently deprived of his acid reflux and allergy medications; and (3) he was "relieved of his job" and that any other job he might be assigned "is unlikely to be one that [he] can do, thus returning [him] to seg due to being fired." (*Id.* at 3–4). As in previous letters, Munt also appears to challenge recently imposed discipline as "inappropriate," though it is unclear what discipline was imposed, nor are the factual circumstances that led to the discipline explained in the letter. (*Id.* at 4–5). Munt asserts that the various conduct complained of has interfered with his right of access to the courts. (*Id.* at 6). Munt asks the Court to order "his return to his unit . . . , his swamper job at full seniority, his cell . . . , and the return of his property." (*Id.*).

Finally, on July 10, 2015, Munt sent a letter informing the Court that he was transferred to MCF-Stillwater, a transfer that Munt contends is retaliatory and will "further impede his access to the courts and harm [his] ability to pursue actions against the officials" at MCF-Oak Park Heights. (July 10 Letter at 1). Munt also complains of various issues at MCF-Stillwater, ranging from access to notary services, copying, and the law library, to lack of access to private

---

[14]     As previously noted, Munt did timely file a reply regarding the First Motion for Preliminary Relief. In addition, when he filed this reply he stated that he was given access to Defendants memorandum in opposition and his "notes for a reply on 6/23/2015." (Reply Re: First Mot. for Prelim. Relief at 1). He further stated, "I still lack access to the Law Library and to most of my legal materials, though I have many things I need to be working on." (*Id.*).

showers "which [Munt] need[s] for religious purposes," to noise from other inmates and "high pollen/dust/mold" levels. (*Id.* at 2). Munt suggests that issues at MCF-Stillwater have exacerbated difficulties posed by his vision deficits (when not wearing glasses) and difficulties related to his headaches when wearing glasses. *See* (*id.*). In addition, Munt states that he recently received his property and that he believes some of his legal papers are missing, though "it remains to be seen what is gone." (*Id.* at 3). Finally, Munt asks the Court to "[r]estore" him to MCF-Oak Park Heights, with his previous unit, cell, and job. (*Id.*).[15]

## II.  LEGAL STANDARD

A preliminary injunction is issued to "preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). "'[W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict upon other parties litigant; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest.'" *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Dataphase Sys. v. C.L. Sys.*, 640 F.2d 109, 114 (8th Cir. 1981)). "The burden of proving that a preliminary injunction should be issued rests entirely with the movant." *Id.*

A preliminary injunction is an extraordinary remedy, and "in the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is

---

[15]     The Court notes that Munt's concerns about his ability to seek injunctive relief against Defendants, now that he has been transferred to MCF-Stillwater, are not without legal support. That is, a plaintiff's claims for injunctive relief against individual defendants at a particular institution may be "effectively mooted" by "his prison transfer." *Anderson v. United States*, Civil No. 11-1486 (DWF/LIB), 2013 WL 1173948, at *7 n. 11 (D. Minn. Jan. 25, 2013). Because of the recency of Munt's transfer and because Munt is not entitled to any form of preliminary relief, the Court declines to recommend denial of Munt's Motions for Preliminary Relief on mootness grounds and proceeds with further consideration of his requests for relief.

especially called for in dealing with the complex and intractable problems of prison administration." *Id.* (internal quotation marks omitted); *see also Wickner v. Larson*, Civil No. 09-940 (DWF/JJK), 2010 WL 98940, at *2–3 (D. Minn. Jan. 11, 2010) (noting that reluctance to grant injunctive relief "is particularly pronounced where a state prisoner seeks relief in federal court").

## III.    DISCUSSION

Munt's requests for preliminary relief are numerous and expansive, but can generally be divided into two categories. The first category of relief is relief that is clearly related to and based on the claims in Munt's Complaint. The only request for relief that falls into this category is Munt's first request in his First Motion for Preliminary Relief that he be provided contact lenses during this litigation. The second category of relief is relief that is not related to or based on any claim or facts alleged in Munt's Complaint. The Court addresses Munt's requests for preliminary relief in accordance with these two categories.

### A.    Request for Contact Lenses

As noted, the only request relief made by Munt that is clearly based on a claim in his Complaint is his request for contact lenses during this litigation. This request is related to Munt's Eighth Amendment claim of deliberate indifference for Defendants' alleged failure to address his headaches due to glasses. *See* (First Mot. for Prelim. Relief at 4) (requesting that Munt "be granted the use of proper prescription contact lenses for the duration of this case" because Munt suffers "headaches and cognitive disruption as the price [of] seeing with glasses"). Applying the *Dataphase* factors, the Court concludes that Munt is not entitled to preliminary relief.

#### 1.    Likelihood of Success on the Merits

The Court begins with a discussion of Munt's likelihood of success on the merits, as "'an injunction cannot issue if there is no chance of success on the merits.'" *Wickner*, 2010 WL 98940, at *3 (quoting *Mid-Am. Real Estate Co. v. Iowa Realty Co.*, 406 F.3d 969, 972 (8th Cir. 2005)). The Eighth Amendment requires "prison officials to provide inmates with medical care." *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997). "To prevail on a claim of constitutionally inadequate medical care, the inmate must show that the prison officials' conduct amounted to 'deliberate indifference to [the prisoner's] serious medical needs.'" *Id.* at 1237–38 (alteration in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

> An Eighth Amendment claim that prison officials were deliberately indifferent to the medical needs of inmates involves both an objective and a subjective component. The plaintiff[] must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.

*Id.* at 1239. "This is an onerous standard." *Martinson v. Leason*, 22 F. Supp. 3d 952, 960 (D. Minn. 2014) (Kyle, J.) (internal quotation marks omitted). "The plaintiff 'must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not . . . rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct.'" *Id.* (quoting *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008)).

Munt alleges that Defendants acted with deliberate indifference to his serious medical need because they have failed to address his "severe headaches from glasses." (Compl. ¶ A.). A medical condition is "objectively serious" for Eighth Amendment purposes when the need has "been diagnosed by a physician as requiring treatment, or is one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir. 1995). As noted, Munt does not contend that the serious medical need

at issue is his vision impairment, and instead contends that his headaches are objectively serious because "any lay person can see the need for some solution" when he does not get headaches "without glasses and does [get headaches] with them." (Reply Re: First Mot. for Prelim. Relief at 10). Munt states that a lay person would know "that such headaches need treatment." (*Id.*).

Munt's medical records reflect a history of headaches, some of which Munt subjectively attributed to his use of glasses. There is no evidence, however, that any doctor has diagnosed Munt with headaches attributable to his glasses. (Paulson Aff. ¶ 27) ("[T]here is no objective evidence that [Munt's] eyeglasses are causing headaches."); *see also* (Ex. 7 to Paulson Aff. at 7) (Dr. Taylor's notes stating that Munt had a "[n]ormal eye exam," noting Munt's diagnosis of "myopia/astigmatism," and stating that request for contact lenses was "[b]ased on subjective complaints" and Munt's desire to have in it in writing that contacts are not allowed for his diagnosis). Nor is it clear that headaches due to glasses present the type of medical need that is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *See Camberos*, 73 F.3d at 176; *Hanks v. Prachar*, Civ. No. 02-4045 (MJD/RLE), 2009 WL 702177, at *15 (D. Minn. Mar. 13, 2009) (finding that plaintiff's injuries, including "headaches," were not "obvious to a lay person as requiring medical attention"); *see also Goodman v. Johnson*, No. 1:11cv79 (GBL/IDD), 2015 WL 1401661, at *6 (E.D. Va. Mar. 23, 2015) ("[W]hether the medical need in this case is framed as . . . plaintiff's headaches, or . . . headaches causes by eyeglasses, it is unclear whether the need is 'serious.'"); *cf. Schaub v. VonWald*, 638 F.3d 905, 915, 918–19 (8th Cir. 2011) (concluding that plaintiff's "skin breakdown . . . existing pressure sores, some of which were infected" causing "oozing . . . and the smell of infection" demonstrated "a need for medical attention that would have been obvious to a layperson"). Nevertheless, the Court need not resolve this question because even if Munt

established an objectively serious medical need, he has failed to show subjective deliberate indifference on the part of Defendants.

Munt contends that Defendants "knew no attempt had been made to deal with the [headaches]" and have "ignor[ed]" or "refus[ed] to address the problem[,] . . . asserting [Munt] can be blind or live with the headaches."[16] (Reply Re: First Mot. for Prelim. Relief at 10–11); *see also* (First Mot. for Prelim. Relief at 2) (arguing success on the merits because Munt's "issues have not been addressed and will not be addressed"). Similarly, in his Complaint, Munt alleges that Defendants violated his Eighth Amendment rights because they "ignored the failure of Health Services to address [his] headaches caused by the use of glasses," and because Defendants Larson and Reid "supported and tolerated a culture . . . which ignored the medical needs of inmates and where doctors were discouraged from recommending treatments." (Compl. ¶¶ E.2, E.16, E.20, E.21). Munt further contends that Larson's and Reid's "fail[ure] to inform [him] that" DOC policy did allow contacts when medically necessary, and Monio's and Ebeling's interference with his use of the formal grievance process demonstrate deliberate indifference. (*Id.*). Giving consideration to Munt's allegations, the Court finds no evidence of deliberate indifference.

Defendants are employed in administrative roles at the DOC and/or MCF-Oak Park Heights, "are not medical doctors, ophthalmologists or optometrists" and do "not have the expertise to make medical treatment decisions." (Mem. in Opp'n to First Mot. for Prelim. Relief at 13); *see also* (Compl. ¶¶ C.2, C.17, C.19–20); (Answer ¶ 4) (discussing Defendants' employment). That is, none of the Defendants were involved personally in Munt's medical care,

---

[16]    Munt's use of the term "blind" appears to be an exaggeration. In an August 1, 2014 kite, Munt stated that "without optical aid [his] vision is very poor," but the Court believes there is an appreciable difference between "very poor" vision and blindness, and nothing in Munt's medical records suggest that Munt is literally blind. *See* (Ex. 3 to Compl.).

and their involvement is limited to their responses to various kites, letters, and grievances from Munt. *See generally* (Compl.). To the extent Munt contends that Defendants have been deliberately indifferent because they have failed to provide treatment for his headaches, his claim is untenable. As prison officials acting in an administrative capacity, Defendants "cannot substitute their judgment for a medical professional's prescription" and "cannot be liable for the medical staff's diagnostic decisions." *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002). That is, Defendants do not have a "constitutional duty to independently assess, and second-guess, the medical opinions of [the] prison's medical staff." *Anderson*, 2013 WL 1173948, at *12.

Even where a prison official is not a "medical doctor and does not personally treat inmates' medical needs," an official has a "constitutional duty to see that prisoners in his charge who need medical care receive it." *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010). To varying extents, Defendants were made aware that Munt was suffering from headaches due to glasses and that Munt felt his medical needs were not being met because Health Services failed to provide "alternative solutions" to resolve his headaches after he was denied contact lenses. *See, e.g.*, (Ex. 14 to Compl.). The Court considers Munt's allegations of deliberate indifference with respect to Larson and Reid together, as the nature and extent of their involvement in matters related to Munt's complaints is similar, and addresses Munt's allegations of deliberate indifference with respect to Monio and Ebeling together, as their involvement in these matters is similar. *Cf. Martinson*, 27 F. Supp. 3d at 960 (noting that liability for damages for a "federal constitutional tort is personal" (internal quotation marks omitted)).

Larson and Reid reviewed and responded to some of Munt's kites regarding medical treatment. Munt's medical records show that, based on Munt's complaints of headaches due to his glasses, he was referred to and examined by optometrists. (Paulson Aff. ¶¶ 5, 18–20); (Ex. 7

to Paulson Aff. at 1, 4) (documenting Munt's visits with optometrists in April 2012, September 2014, and November 2014). Having found no medical condition that required the prescription of contact lenses, these practitioners prescribed Munt new glasses. *See* (Paulson Aff. ¶ 9–13) (stating that "[t]here is no indication in the medical records that Munt was diagnosed" with an eye condition that requires contact lenses). Practitioners' examinations of Munt have revealed no objective evidence of a connection between Munt's headaches and his use of glasses. *See* (*id.* ¶ 27).

Munt contends that these efforts are inadequate because there was "no reason to believe [new glasses] would resolve the issue, nor any attempt to even diagnose the issue." (Compl. ¶ D.20). In light of the nature of Munt's complaints however—that is, headaches **due to glasses**, examination by optometrists and rewriting of Munt's glasses prescription appear entirely reasonable, and certainly do not reflect something "more . . . than gross negligence" or something "akin to criminal recklessness." *Martinson*, 22 F. Supp. 3d at 960 (internal quotation marks omitted). Indeed, in August 2014, Munt "verbalize[d] understanding of and agreement with" Dr. Craane's plan to refer Munt to "the facility optician for reevaluation and potential rewriting of [his] eyeglass prescription." (Ex. 6 to Paulson Aff. at 1). Moreover, when Munt complained of headaches of an unspecified origin, Munt was evaluated and was prescribed various treatments. *See* (*id.* at 3) (containing notes of August 2012 visit regarding headaches where Munt was told to use "Tylenol on an as-needed basis"); *see* (*id.* at 2, 4) (containing notes of August 1, 2013 visit and August 15, 2013 visit where Munt's headaches linked to sinusitis were "much improved" after treatment with antibiotics and prednisone).

When Munt continued to report that new glasses did not resolve his headaches and requested alternative solutions, Larson, copying Reid, informed Munt that contact lenses were

prohibited unless they are deemed a medical necessity by a prescribing authority and that his "practitioners have not made such a determination, despite several examinations." (Ex. 20 to Compl.). Larson further informed Munt that should he continue to experience headaches, he should "address that issue with Health Services." (*Id.*). Similarly, in response to Munt's complaints and questions about the scope of DOC policy regarding contacts, Reid scheduled Munt for a repeat eye exam, explained that contacts had not been determined to be "medically necessary" in his case and that no alternatives had been requested by Munt. (Exs. 9–11 to Compl.). That is, Larson's and Reid's responses appear to have been informed by the fact that Munt has always defined his ailment as headaches **due to his glasses**. *See, e.g.*, (Ex. 3 to Compl.) (August 1, 2014 kite stating, "The glasses that I have give me headaches"); (Ex. 4 to Compl.) (September 4, 2014 kite referring to "headaches from glasses"); (Ex. 15 to Compl.) (Munt's formal grievance stating that "[w]earing glasses causes" him "debilitating headaches and loss of cognitive ability"). Munt continues to define his medical need in this manner and disclaims that the headaches may have a different origin. *See, e.g.*, (Compl. ¶ A) (stating that the "issue" being ignored is "severe headaches from glasses, worsened by movement"); *see also* (Reply Re: First Mot. for Prelim. Relief at 8) ("Plaintiff has had other headaches, and even migraines, [which] are extremely different in effect than those resulting from the glasses.").

Given the nature of Munt's complaints and the treatment that was in fact provided, the Court finds that it was reasonable for Larson and Reid to rely on the medical professional's course of treatment.[17] *See McRaven v. Sanders*, 577 F.3d 974, 981 (8th Cir. 2009) ("A prison

_____

[17]    The DOC's policy regarding contact lenses and Dr. Taylor's request for a "contact lens fitting and supply" for Munt does not alter the Court's conclusion in this regard or suggest any intentional delay of or interference with medical care by Larson or Reid. *See* (Ex. 7 to Paulson Aff. at 7). The policy permits contact lenses when deemed medically necessary by a prescribing authority, and Dr. Taylor's request was "based on" Munt's subjective complaints and his

official may rely on a medical professional's opinion if such reliance is reasonable."); *see also Lindsey v. Cooley*, Civil Action No. 2:04cv302-WKW, 2006 WL 1527125, at *3–4 (M.D. Ala. May 12, 2006) (finding no deliberate indifference where plaintiff was "prescribed Tylenol and rest," "referred to and examined by an optometrist," and had an x-ray of his head for "headaches and pain" he attributed to glass lodged in his skull and stating that plaintiff's "desire for different or additional tests does not establish a constitutional violation"). Indeed, prison officials can be "'found free from liability if they responded reasonably to a risk, even if the harm ultimately was not averted.'" *Dulany*, 132 F.3d at 1240 (quoting *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)).

Even if Larson and Reid acted unreasonably in failing to require Health Services to pursue an unspecified, alternative treatment despite Munt's persistent complaints that his headaches are caused by his glasses and in the absence of any medical evidence to support Munt's subjective complaints, Munt "must show more—acting unreasonably in failing to take particular measures does not suffice because reasonableness is a negligence standard and [neither] negligence," nor gross negligence, can "give rise to a deliberate indifference claim." *Martinson*, 22 F. Supp. 3d at 961; *see also Dulany*, 132 F.3d at 1239 ("[I]nmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment."). Munt has failed to demonstrate any likelihood of success on the merits as to his Eighth Amendment claims against Larson and Reid.[18]

---

apparent desire to have "it in writing that contacts are not allowed for basic myopia," rather than any medical determination that contacts were required. (*Id.*); (Paulson Aff. ¶¶ 8, 21–22). The request was denied after review by a nurse and physician. (Paulson Aff. ¶ 22).

[18] To the extent Munt contends that Larson's and Reid's deliberate indifference is demonstrated by their failure to accurately inform him about DOC's policy regarding contacts, his contention is unsupported by the record. *See* (Compl. at ¶¶ E.2, E.16). As early as November 2, 2012, Larson told Munt that she "somewhat agree[d]" with his position that DOC policy

Monio and Ebeling were made aware of Munt's complaints via Munt's filing of a formal grievance and his appeal of the formal grievance when processing of the grievance was denied. *See* (Compl. ¶¶ D.38–40). Monio's only involvement in this matter is her refusal to process Munt's grievance, which she deemed untimely, and Ebeling's only involvement is her return of Munt's grievance appeal because he "did not attach a copy of [the] original facility grievance/response and/or documentation that the grievance was addressed informally." (Compl. ¶¶ D.38–40); (Exs. 17, 19 to Compl.). Munt disputes the validity of Monio and Ebeling's reasons for rejecting his grievance and appeal, and suggests that Monio and Ebeling falsified those reasons in a concerted effort to deny him medical treatment. *See* (Compl. ¶¶ E.20, E.21) (stating that Monio "abus[ed] her position in failing to process" Munt's grievance and that Ebeling "lied that the grievance and response were not sent with the appeal"). Given Monio's and Ebeling's very limited involvement, based on the current record, in matters surrounding Munt's complaints of inadequate medical care, and the lack of any evidence, other than Munt's conclusory allegations, that Monio and Ebeling acted **deliberately** to prevent him from receiving medical care, the Court cannot find that Munt has demonstrated any likelihood of success on the merits of his Eighth Amendment claims against Monio and Ebeling.

Because Munt has failed to demonstrate any likelihood of success on the merits, he is not entitled to preliminary relief. *Wickner*, 2010 WL 98940, at *3 (citing *Mid-Am. Real Estate Co.*,

---

prohibiting contacts should not "override [his] medical needs," but that based on her review of Munt's medical record, "Munt's history of headaches and their connection with eyeglasses [was] far from established." (Ex. 2 to Compl.). This explanation is entirely consistent with the DOC's policy which permits contact lenses only when "medical[ly] necess[ary] as deemed by the prescribing authority." (Adaptive Equipment/Medical Authorizations, Ex. 8, Attached to Paulson Aff., "Ex. 8 to Paulson Aff.") [Doc. No. 50-3 at 3]. Likewise, in response to a kite dated September 16, 2014, Reid explained that "[c]ontacts are only allowed when medically necessary." (Ex. 9 to Compl.).

406 F.3d at 972). In addition, none of the other *Dataphase* factors support the preliminary relief that Munt seeks. The Court addresses these additional factors below.

### 2. Irreparable Harm

Munt argues that he has demonstrated irreparable harm because, without contacts for the duration of the case, he will endure "further months of suffering," an inability to see, harm to "his ability to reason, concentrate and remember," and "[a]ny amount of legal, physical, or social harm." (First Mot. for Prelim. Relief at 2); (Reply Re: First Mot. for Prelim. Relief at 7–8). While the Court is sympathetic to Munt's complaints regarding his ongoing headaches, the Court finds that his conduct in this litigation undermines the asserted debilitating effects of his headaches. For instance, Munt was able to timely pay his initial partial filing fee and has filed several motions, a reply to Defendants' answer, and three reply briefs. *See* [Doc. Nos. 3, 6, 9, 15, 25, 26, 54, 58, 59, 66, 69]. Some of these documents have been accompanied by appendices or other supplemental materials. *See* [Doc. Nos. 4, 7, 60]. Munt also filed numerous letters to the Court and the Clerk's Office. *See* [Doc. Nos. 13, 22, 27, 62, 64, 65, 72, 73]. Munt's submissions are typed, or handwritten with excellent penmanship, are coherent, responsive to Defendants' arguments, and well-organized. In addition, Munt's filings make clear that, until he was fired from his job, he performed work as a unit janitor, and in at least one letter, Munt asks the Court restore him to this position. (June 18 Letter at 4, 6). These facts demonstrate that Munt has retained his ability to advocate on his own behalf and that he remains physically able to perform, at a minimum, tasks of a unit janitor. Finally, Munt states that it is "unclear whether permanent physical damage may result from continued wearing of the glasses" and that "while under the effect of the glasses [he] may run into issues." (Reply Re: First Mot. for Prelim. Relief at 8). Based on the foregoing, Munt has failed to meet his burden to establish irreparable harm. *See*

*Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982) ("The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights, be those rights protected by statute or by the common law." (internal quotation marks omitted)).

### 3.     Balance of Harms

With respect to the balance of harms, Defendants contend that they have an interest in implementing the DOC's policy that "prohibits contact lenses unless they are determined to be medically necessary by a practitioner." (Mem. in Opp'n to First Mot. to Prelim. Relief at 10). Because "no practitioner has determined that contact lenses are medically necessary for [Munt]," Defendants contend that providing Munt with contact lenses would constitute "an arbitrary exception" to the policy and "would interfere with the DOC's ability to uniformly enforce its policies." (*Id.*).

The Court agrees that allowing Munt to use contacts for the duration of this case would permit Munt to bypass the DOC policy, a consequence of the proposed injunctive relief that the Court finds significant where preliminary relief is sought in the prison context. *See Goff*, 60 F.3d at 520 (stating that in "the prison context, a request for injunctive relief must always be viewed with great caution" given the "complex and intractable problems of prison administration" (internal quotation marks omitted)); *Wickner*, 2010 WL 98940, at *3 (noting that reluctance to grant injunctive relief "is particularly pronounced where a state prisoner seeks relief in federal court"). In response to Defendants asserted interest in enforcing DOC policy, Munt contends that Defendants have "no legitimate penological interest in restricting contact lenses to begin with." (Reply Re: First Mot. for Prelim. Relief at 9). It is unclear if, in referring to Defendants' alleged

lack of "legitimate penological interest" Munt intends to attack the legitimacy of the DOC's policy under the framework established by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987), which involves consideration of four factors to determine "whether a prison regulation [restricting constitutional rights] is reasonably related to a legitimate penological interest." *Roe v. Crawford*, 514 F.3d 789, 794–95 (8th Cir. 2008) (citing *Turner*, 482 U.S. at 89–91). Because neither party has addressed the *Turner* factors, the Court does not further address them here, but notes that the DOC policy at issue is designed to foster the consistent and standardized issuance of "medically indicated special appliances" within the DOC.[19] (Ex. 8 to Paulson Aff. at 1). In sum, even if Munt could show that he will suffer some harm absent a preliminary injunction, the balance of harms favors Defendants.

### 4. Public Interest

Finally, Munt argues that the public interest is served by requiring Defendants to "do their jobs" and by "upholding the Constitution." (Reply Re: First Mot. for Prelim. Relief at 12). Nonetheless, Munt has not shown any likelihood of success on the merits, and at this point in the litigation the Court cannot conclude that "any of the [D]efendants have violated the law." *Rivera*

---

[19]    The DOC's limitation on the issuance of contact lenses also appears to be informed by risks associated with contact lens use in prison posed by the chemicals used in prison facilities, as well as the possibility of "infection [due to] confined living quarters." (Ex. 5 to Paulson Aff. at 3) (nurse's warning to Munt about risks of contact lens use in prison). The Court also notes that it is unclear whether Munt intends to assert a substantive claim consistent with *Turner*. *Compare* (Compl. at p.15–16) *with* (*id.* ¶¶ E.1–23). Even if Munt does intend to assert such a claim, he has not argued his likelihood of success on the merits of such a claim, and the Court is, at this juncture, without sufficient information to consider the four *Turner* factors. *See Roe*, 514 F.3d at 794–95 (explaining that under *Turner*, courts consider "(1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) the existence, or absence of obvious, easy alternatives . . . that fully accommodate[ ] the prisoner's rights at *de minimis* cost to valid penological interests." (omission in original) (internal quotation marks omitted)).

*v. Kalla*, Civil No. 12-cv-1479 (MJD/FLN), 2012 WL 7761498, at *6 (D. Minn. Dec. 12, 2012). "Moreover it is in the public interest for courts to exercise judicial restraint when considering a preliminary injunction in the prison context due to the 'complex and intractable problems of prison administration.'" *Id.* (quoting *Rogers*, 676 F.2d at 1214).

In sum, the Court concludes that Munt has not demonstrated that he is entitled to preliminary injunctive relief in the form of the use of contact lenses for the duration of this case, as Munt has failed to show that any of the *Dataphase* factors support his request for relief.[20]

### B.      Other Requests for Preliminary Relief

Munt's makes numerous other requests for relief in the Motions for Preliminary Relief. These requests for relief are unrelated to any claim in Munt's Complaint. Because "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint," these requests for relief must be denied. *Devose*, 42 F.3d at 471.

As discussed above, Munt's Complaint alleges claims of deliberate indifference under the Eighth Amendment based on Defendants' alleged failure to address his headaches caused by glasses, and First Amendment, due process, and equal protection claims based on Defendants' alleged interference with the administrative grievance process through lack of response to certain

---

[20]      Munt also alleges claims against Doctors #1–6, Health Services Workers #1–6, Opticians #1–4, and RN #1. (Compl. ¶¶ E.3–15, E.17–19, E.22). These unnamed defendants have not been served with a summons and the Complaint, and no one has responded the Motions for Preliminary Relief on their behalf. The Court cannot issue a preliminary injunction against these unnamed defendants, as a preliminary injunction may only be issued "on notice to the adverse party." Fed. R. Civ. Pro. 65(a)(1). Munt's submissions suggest that he seeks a preliminary injunction, rather than a temporary restraining order, and there seem to be obvious practical difficulties with issuing a temporary restraining order against unnamed parties. But even if the Court were to consider Munt's request as one for a temporary restraining order with respect to the unnamed defendants, the Court concludes that, for reasons similar to those explained above with respect to Defendants, Munt would not be entitled to a temporary restraining order with regard to the unnamed defendants.

informal grievances and refusal to process Munt's formal grievance and grievance appeal. *See* (Compl. ¶¶ E.2, E.16, E.20, E.21). While the facts and claims pled in Munt's Complaint are limited to the above, Munt's second, third, fourth, and fifth requests for relief in his First Motion for Preliminary Relief and all requests for relief in his Second Motion for Preliminary relief are based on various facts and circumstances that are neither pled in Munt's Complaint, nor related to any claim therein. Specifically, in Munt's second, third, fourth, and fifth requests for relief in his First Motion for Preliminary Relief, Munt seeks an order preventing his transfer to another facility or another unit in his facility, preventing "any other acts in retaliation or meant to impede [Munt] in court," including retaliatory room searches and interference with legal materials and access to the law library, and permitting Munt to obtain "copies and delivery of pleadings free of charge." (First Mot. for Prelim. Relief at 4–6).

Likewise, in his Second Motion for Preliminary Relief, Munt complains of limited avenues for obtaining copies, limited access to notary services, limited access to the law library and particular legal resources, mail delays, lack of electronic filing, and a resulting decrease in time Munt has for research and drafting of pleadings. (Second Mot. for Prelim. Relief at 3–5). These "injur[ies] claimed in [Munt's] motion[s]" are not connected to "the conduct asserted in the complaint." *Devose*, 42 F.3d at 471. While the issues raised may reflect serious concerns about Munt's right to be free from retaliation and his right of access to the courts, "the purpose of a preliminary injunction is to protect the plaintiff from harms alleged **in the complaint** while litigation is pending. Thus [Munt] can only obtain a preliminary injunction in connection with the injuries alleged in the complaint." *Frye v. Minn. Dep't of Corrections*, No. 05-1327 JNE/JJG, 2006 WL 2502236, at *1 (D. Minn. Aug. 29, 2006) (denying motion for preliminary injunction where prisoner's allegation that officials had "seized his papers in order to inhibit his litigation"

was "unrelated to the issues he raised in his complaint").[21] "Faced with a motion that raise[s] issues entirely different from those presented in" Munt's Complaint, the Court must recommend denial of the second, third, fourth, and fifth requests for preliminary relief in Munt's First Motion for Preliminary Relief and must also recommend denial of Munt's Second Motion for Preliminary Relief. *Devose*, 42 F.3d at 471.

The Court acknowledges that the portion of Munt's Complaint captioned "Prayer for Relief" contains broad requests for permanent relief, many of which are similar to the requests for relief made in Munt's Motions for Preliminary Relief and discussed above. *See generally* (Compl. ¶¶ F.1–27). While these requests are made at the close of Munt's Complaint, there is no conduct or claim alleged in the Complaint that is connected to those requests for relief, or as previously discussed, to the similar requests in Munt's Motions for Preliminary Relief. Therefore, Munt's requests for preliminary relief in his motions remain unrelated to the "**conduct** asserted in the complaint." *See Devose*, 42 F.3d at 471 (emphasis added). Indeed, Munt does not dispute that he is seeking preliminary relief for claims he does not actually seek to

---

[21]    *See also* 18 U.S.C. § 3626(a)(2) (stating that in "any civil action with respect to prison conditions, . . . [p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm"); *Devose*, 42 F.3d at 471 (denying motion for preliminary injunction in which prisoner contended "prison officials had filed trumped-up disciplinary charges against him because of [his] lawsuit" where prisoner's complaint alleged Eighth Amendment violation); *Hale v. Wood*, 89 F.3d 840 (8th Cir. June 21, 1996) (unpublished table decision) ("We reject Hale's contention that defendants' allegedly threatening and retaliatory behavior mandate granting injunctive relief, because Hale failed to establish a connection between these injuries and the conduct he challenged in his complaint."); *Clark v. Roy*, Civil No. 13-2849 (MJD/HB), 2015 WL 3937297, at *2 (D. Minn. June 24, 2015) (denying motion for preliminary injunction where motion raised issues regarding a medical condition different from the injuries alleged in the complaint); *Becerra v. Doe*, No. 07-CV-3414 (JMR/JJG), 2008 WL 4999251, at *1 (D. Minn. Nov. 19, 2008) (denying motion for preliminary injunction where prisoner sought an injunction based on allegations that "prison officials [were] inhibiting his efforts to pursue this litigation with retaliatory discipline; by denying him office supplies; by limiting his access to legal papers; and by opening and delaying his legal mail" because issues raised in complaint were unrelated to the subsequent claims of official misconduct).

litigate in this case. For instance, Munt repeatedly states that he will be pursuing his claims regarding the law library, the mail room "[i]ncident" and policies, and the "DOC Grievance System" in a "separate" or "upcoming" lawsuit. *See, e.g.*, (Reply to Defs.' Resp. to Pl.'s Apr. 15 Letter) [Doc. No. 58 at 2, 5, 7]; (Reply Re: Second Mot. for Preliminary Relief at 13). These statements further demonstrate that Munt's requests for preliminary relief go beyond the harms alleged in the Complaint and therefore cannot be granted in this case.

In his First Motion for Preliminary Relief, Munt notes his Complaint alleges a violation of his First Amendment rights based on Defendants' interference with the grievance process and states that "[t]he injunctions are required to prevent further violations of" his constitutional rights. (First Mot. for Preliminary Relief at 6). A motion for preliminary relief seeking to enjoin Defendants from interfering with the grievance process would present a request for relief related to the allegations in Munt's Complaint, but Munt does not make this request for relief. Rather, Munt seeks broad relief in the form of an order preventing any transfer and "any other acts in retaliation or meant to impede [Munt] in court," including retaliatory room searches, interference with legal materials, and limitations on his access to the law library. (*Id.* at 4–5). None of **this** conduct is alleged as a basis for the claims in Munt's Complaint, and to the extent Munt's allegation in his Complaint regarding Defendants' interference with the grievance process can be viewed as an access to courts claim or retaliation claim, it does not create a connection to the varied and all-encompassing requests for relief in Munt's Motions for Preliminary Relief. That is, Munt's allegation in his Complaint regarding Defendants' interference with the grievance process is entirely unrelated to the injuries claimed in Munt's motions, such as limited access to the law library or retaliatory room searches and transfers. *See Devose*, 42 F.3d at 471.

In addition, to the extent Munt's broad request for a preliminary injunction preventing defendants from any retaliatory act or any act interfering with his access to the courts can be construed as being a request to enjoin Defendants from interfering with the grievance process (i.e., a request for relief related to the conduct alleged in the Complaint), Munt has failed to argue that he is entitled to preliminary relief based on any grievance-process related claim he makes in his Complaint. More specifically, while Munt has made arguments regarding his probability of success on the merits, Munt does not make any argument regarding his chance of success on the merits with respect to any First Amendment, due process, or equal protection claim arising out of Defendants' alleged interference with the grievance process, other than his conclusory statement that his First Amendment rights have been violated. *See* (First Mot. for Prelim. Relief at 6). Rather, Munt's arguments regarding his chance of success on the merits address only his Eighth Amendment deliberate indifference claim. (First Mot. for Preliminary Relief at 2) (arguing success on the merits because Munt's "issues have not been addressed and will not be addressed" by Defendants); (Second Mot. for Preliminary Relief at 2) (arguing success on the merits because Munt's "issues have not been addressed and will not be addressed" by Defendants); (Reply Re: First Mot. for Preliminary Relief at 6, 10–12) (stating that Munt "has already established a prima facie case for the merits of his Complaint" and, when further addressing likelihood of success on the merits, discussing only deliberate indifference claim).

Because Munt has failed to offer argument in support of his chance of success on the merits of any First Amendment, due process, or equal protection claim stemming from Defendants' alleged interference with the grievance process, Munt has failed to meet his burden of demonstrating that he is entitled to any preliminary relief related to those claims. *See Wickner*, 2010 WL 98940, at *3 n.3 ("Because Plaintiff has not provided legal support or evidence to

support any likelihood of success on the merits on any of his other First, Eighth, and Fourteenth Amendment claims in his motion or supporting papers, he has not met his burden, and the Court does not address the merits of these claims here." (citation omitted)); *see also Goff*, 60 F.3d at 520 (noting that the "burden of proving that a preliminary injunction should be issued rests entirely with the movant"); *Sneh v. Bank of New York Mellon*, Civ. No. 12-954 (MJD/JSM), 2012 WL 5519690, at *5 (D. Minn. Oct. 30, 2012) (noting that while *pro se* pleadings are entitled to liberal construction, the court may not, "in granting the deference owed to *pro se* parties, 'assume the role of advocate for the *pro se* litigant'" (quoting *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999)).

Despite the incongruous nature of Munt's requests for relief and the claims in Complaint, Munt urges the Court to exercise its equitable power to issue the requested preliminary injunctions. (Reply Re: First Mot. for Prelim. Relief at 3); (Reply Re: Second Mot. for Prelim. Relief at 4). The Court is, however, bound by the Eighth Circuit's holding that a party seeking a preliminary injunction "must . . . establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose*, 42 F.3d at 471.

Munt also contends that to the extent his requests for preliminary relief are based on his right of access to courts, he need not show a specific connection between his request for relief and the claims in his Complaint. (Reply Re: First Mot. for Prelim. Relief at 3); (Reply re: Second Mot. for Prelim. Relief at 4). Munt bases this argument on *Silva v. Mayes*, No. C04-1885-JLR-MAT, 2005 WL 2207013 (W.D. Wash. Sept. 8, 2005), a case initially cited by Defendants. In *Silva*, the Court stated that the plaintiff's claims in his motion regarding "deprivation of personal property" were "arguably related [to claims in plaintiff's complaint] to the extent any denial of access to the courts might interfere with plaintiff's ability to litigate his underlying claims." 2005

WL 2207013, at *3. The court went on to conclude that the plaintiff failed to establish irreparable harm. *Id.* This Court is not persuaded that *Silva* requires an outcome different than that recommended above.

First, the court's opinion in *Silva* is not binding on this Court. Second, *Silva* is inconsistent with the *Devose* rule. For instance, in *Becerra*, the court denied a motion for preliminary injunction where the prisoner plaintiff sought an injunction based on allegations that "prison officials [were] inhibiting his efforts to pursue this litigation with retaliatory discipline; by denying him office supplies; by limiting his access to legal papers; and by opening and delaying his legal mail," because the claims in the complaint were unrelated to the plaintiff's later claims of official misconduct. 2008 WL 4999251, at *1; *see also Frye*, 2006 WL 2502236, at *1 (denying motion for preliminary injunction where prisoner's allegation that officials had "seized his papers in order to inhibit his litigation" was "unrelated to the issues he raised in his complaint"). The Court concludes that these cases correctly apply the rule in *Devose*—that is, a plaintiff can only seek preliminary relief from those harms alleged in the complaint.

Finally, even if the Court were to consider Munt's requests for relief related to his right of access to the courts, Munt would not be entitled to a preliminary injunction, because Munt has failed to demonstrate irreparable harm. "A review of the multitude of documents filed by [Munt] in this action belies the argument he is being denied adequate access to the courts." *Silva*, 2005 WL 2207013, at *3.

As already discussed, Munt has been an active litigant. Munt timely paid his initial partial filing fee and filed a motion to appoint counsel, two motions for preliminary relief, a reply to Defendants' answer, a motion for extension of time, three reply briefs, and two motions for discovery. *See* [Doc. Nos. 3, 6, 9, 15, 25, 26, 54, 58, 59, 66, 69]. Several of these documents

include appendices or other supplemental materials. *See* [Doc. Nos. 4, 7, 60]. Munt has also filed numerous letters to the Court and the Clerk's Office. *See* [Doc. Nos. 13, 22, 27, 62, 64, 65, 72, 73]. In addition, while Munt complains of insufficient access to federal case law, his briefing and letters refer to appropriate legal standards and, at times, cite to and quote extensively from federal authority. *See, e.g.*, (Second Mot. for Prelim. Relief at 2) (accurately stating factors relevant to consideration of request for preliminary injunction); (Reply Re: First Mot. for Prelim. Relief at 10–11) (including citations to and quotations of various federal cases); (July 10 Letter at 1) (arguing that his "transfer would not have happened 'but for' [his] exercise of [his] protected rights"). And to the extent Munt complains that he has insufficient time to prepare pleadings in his case, he is free to request extensions of time as necessary. Thus, even if Munt's various requests for preliminary relief related to access to the courts were related sufficiently to the claims in Munt's Complaint, Munt is not entitled to relief because he has failed to demonstrate that he will suffer irreparable harm absent the extraordinary measure of a preliminary injunction. *See Silva*, 2005 WL 2207013, at *3; *see also Goff*, 60 F.3d at 520 (stating that the "absence of a finding of irreparable injury is sufficient grounds" for denying a preliminary injunction).

Having concluded that the second, third, fourth, and fifth requests for relief in Munt's First Motion for Preliminary Relief and the requests for relief in Munt's Second Motion for Preliminary Relief must be denied for lack of connection to the allegations alleged in Munt's Complaint, the Court also addresses Munt's various letters to the Court, which suffer the same deficiency. That is, like the above-mentioned requests for preliminary relief, the various requests for relief in Munt's letters are based on facts and circumstances that are unrelated to the claims in Munt's Complaint. For instance, Munt's April 15 Letter requests an order preventing mailroom

staff from interfering with Munt's legal mail and is based on events occurring after the commencement of this lawsuit. (Apr. 15 Letter). Munt's June 18 Letter alleges new acts of retaliation, limitations on Munt's access to the law library and legal materials, refers generally to disciplinary proceedings, and asserts that Munt was denied access to allergy and acid reflux medications temporarily. (June 18 Letter). Likewise, Munt's other letters allege new acts of retaliation and continued interference with or limitations on access to copies, legal materials, and the law library. *See generally* (May 5 Letter); (May 28 Letter); (June 3 2015); (July 10 Letter). These issues and the corresponding requests for relief are unrelated to conduct alleged in Munt's Complaint, which centers on Defendants' actions (or inaction) with regard to Munt's medical need and Defendants' conduct in addressing Munt's informal and formal grievances regarding that need. *See generally* (Compl.). Therefore, Munt is not entitled to any relief he seeks via his letters. In reaching this conclusion, the Court does not intend suggest a lack of concern with the issues raised in Munt's letters, but where "other injuries occur during litigation, [and] those injuries are not related to the conduct alleged in the complaint, a plaintiff cannot obtain a preliminary injunction against that conduct." *Becerra*, 2008 WL 4999251, at *1; *see also Hale*, 89 F.3d 840. Moreover, in reaching this conclusion, the Court does not express any view on the merits of Munt's allegations. "Rather, the Court holds that [Munt's] complaint in **this case** cannot serve as a basis for the injunctive relief" he requests in his letters.[22] *Clark*, 2015 WL 3937297, at *1.

---

[22] The Court must note its concern regarding Munt's repeated filing of letters to the Court. In these letters, Munt alleges new facts in support of his previously filed motions, or alleges new facts in support of entirely new requests for preliminary relief. These are inappropriate means of seeking relief from the Court. Parties typically must present matters to the Court through motion practice, and must file only those documents in support of the motion as permitted by the Local Rules for the District of Minnesota. *See* LR 7.1 (discussing civil motion practice and stating that "[e]xcept with the court's prior permission, a party must not file a memorandum of law except as

In sum, the Court concludes that Munt's second, third, fourth, and fifth requests for relief in the First Motion for Preliminary Relief and the requests for relief in his Second Motion for Preliminary Relief are unrelated to the claims in Munt's Complaint. Munt is therefore not entitled to those requests for preliminary injunctive relief. In addition, to the extent such requests for relief could be construed as sufficiently related to the claims in Munt's Complaint, Munt has failed to satisfy his burden of establishing that he is entitled to the extraordinary remedy of a preliminary injunction.

## III.    RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Plaintiff Joel Marvin Munt's ("Munt") Motion for Preliminary Relief [Doc. No. 6] be **DENIED**.

2.    Munt's Second Motion for Preliminary Relief [Doc. No. 25] be **DENIED**.

Dated: July 30, 2015

 *s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

---

expressly authorized under" the rule). Munt's frequent filing of letters to the Court is of particular concern here, where Munt has demonstrated an ability to file formal motions and an understanding of the responsive briefing that accompanies formal motion practice. Because of Munt's *pro se* status, however, the Court has considered Munt's letters and, as described above, concludes that Munt is not entitled to the relief he seeks. Further, to the extent Munt's letters discuss matters related to his request for contact lenses during this litigation, the Court has considered those matters when evaluating this request for relief.

**Notice**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.