# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Joel Marvin Munt, | Case No. 15-cv-0582 (SRN/SER) |
| Plaintiff, | |
| v. | **ORDER ON REPORT AND RECOMMENDATION** |
| Nannette Larson, Kathy Reid, Shelly Monio, Kim Ebeling, Doctors #1-6, Health Services Workers #1-6, Opticians #1-4, and RN #1, | |
| Defendants. | |

Joel Marvin Munt, pro se, 236179, MCF-Stillwater, 970 Pickett Street North, Bayport, Minnesota 55003.

Timothy S. Christensen, Esq., Minnesota Attorney General's Office, 445 Minnesota Street, Suite 900, St. Paul, Minnesota 55101, counsel for Defendants Larson, Reid, Monio, and Ebeling.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Report and Recommendation ("R & R") of Magistrate Judge Steven E. Rau dated July 30, 2015 [Doc. No. 74]. In the R & R, Magistrate Judge Rau recommended that this Court deny Plaintiff Joel Marvin Munt's Motion for Preliminary Relief [Doc. No. 6] and Second Motion for Preliminary Relief [Doc. No. 25]. Plaintiff filed timely objections to the R & R ("Objections") [Doc. No. 76]. Defendants Larson, Reid, Shelly, Monio, and Ebeling filed a timely response to Plaintiff's Objections ("Def.'s Obj. Resp.") [Doc. No. 83].

The Court must conduct a *de novo* review of any portion of the Magistrate Judge's

opinion to which specific objections are made. 28 U.S.C. § 636(b)(1); Fed. R . Civ. P. 72(b); D. Minn. L.R. 72.2(b). Based on that *de novo* review, the Court adopts in part the R & R and denies Plaintiff's motions for preliminary injunctive relief.

## I.   BACKGROUND

The factual and procedural background of this preliminary injunction matter is well documented in the R & R and is incorporated herein by reference. (See R & R at 1-18.)

### A. Factual Background

Plaintiff is an inmate currently incarcerated at Minnesota Correctional Facility ("MCF") -Stillwater. (R & R at 2.) However, for the vast majority of the time relevant to this matter, he was incarcerated at MCF-Oak Park Heights, where he arrived in April 2012. (See id. at 2, 17-18.) Defendants Nanette Larson ("Larson"), Kathy Reid ("Reid"), Shelly Monio ("Monio"), and Kim Ebeling ("Ebeling") (collectively, "Defendants") are all personnel with the Minnesota Department of Corrections ("DOC"). (Id. at 2.) Larson is the Director of Health Services for the DOC. (Id.) Reid is the Health Services Administrator at MCF-Oak Park Heights. (Id.) Ebeling is a Grievance Coordinator at the DOC's "Central Office" while Monio holds the same title at MCF-Oak Park Heights.[1] (Id.)

Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 alleging the Defendants

---

[1] Plaintiff also listed several unnamed doctors, DOC Health Service workers, opticians, and an "RN" (presumable a registered nurse (see Compl. at ¶C.6 [Doc. No. 1].)) as defendants. Collectively, these individuals are referred to as "the Unnamed Defendants." The distinction between Defendants and the Unnamed Defendants is important in addressing some of Plaintiff's objections. See infra Part II(B), (I).

and Unnamed Defendants violated his Eighth Amendment rights.  (Civil Rights Compl. Pursuant to 42 USC § 1983 at ¶¶ A, E.1-23 ("Compl.") [Doc. No. 1].)  Plaintiff alleges that even before he was incarcerated, he found that glasses gave him "severe headaches" no matter what prescription he had and those headaches were made worse with movement.  (Compl. at ¶ D.1.)  As a result, Plaintiff wore contact lenses ("contacts") for many years to avoid these headaches.  (Id. at ¶ D.2.)  However, upon being transferred to MCF-Oak Park Heights, Plaintiff alleges his spare contacts were confiscated pursuant to a DOC policy.  (Id. at ¶ D.3; Affidavit of David Paulson, MD, MBA, at ¶¶ 15, 18 ("Paulson Aff.") [Doc. No. 50].)

Plaintiff soon notified DOC personnel "of the problem he experienced when wearing glasses."  (Compl. ¶ D.4.)  An optometrist saw Plaintiff in April 2012 and he received new glasses the following day.  (Paulson Aff. at ¶ 15.)  Over the next several years, Plaintiff filed multiple complaints related to the headaches he was experiencing and the DOC made numerous attempts to address these concerns.  (See R & R at 3-8.) Importantly, in August 2012, Plaintiff was seen by a doctor in relation to his "multiple-month history of headaches."  (Medical File, Ex. 6, attached to the Paulson Aff. at 3 ("Ex. 6 to Paulson Aff.") [Doc. No. 50-2].)[2]  Plaintiff's headaches were diagnosed as being of a "potential migraine variant" and he was given a suppressive medication (Dilacor XR), told to use Tylenol as needed, and to inform the medical clinic if his headaches persisted.

---

[2] The exhibits to the Paulson Affidavit were filed under seal and are not paginated.  To preserve clarity, this Court followed the page numbers assigned to these documents by the Magistrate Judge and cites them accordingly.  (See R & R at 4, n.6.)

(Ex. 6 to Paulson Aff. at 3.)

Two months after this visit, Plaintiff again requested contacts, but was informed that while an eye doctor would review his request "contacts were not allowed." (Compl. at ¶ D.7.)  In November 2012, Plaintiff received a letter from Larson.  (Ex. 2 to Compl.)[3] Larson acknowledged Plaintiff's request for contacts and allegation that his medical condition was being ignored by the refusal to provide him with contacts.  (Id.)  However, Larson noted, "after reviewing your medical records, your history of headaches and their connection with eyeglasses is far from established to a degree that would support advocacy of your position."  (Id.)  Plaintiff was told to work with Health Services to "objectively address" his headaches.[4]  (Id.)

Plaintiff again complained of headaches related to his glasses and requested contacts in April 2013.  (Compl. at ¶ D.9; see Paulson Aff. at ¶ 16.)  Ultimately, no reviewing medical personnel determined that Plaintiff "needed another examination" at that time.  (Paulson Aff. at ¶ 16.)  Plaintiff was also informed, by a nurse, of the risks of

---

[3] Plaintiff attached numerous documents as exhibits to his Complaint, all of which can be found as Doc. No. 1-2.  For the sake of consistency and clarity, this Court follows the Magistrate Judge's citation method with regards to these documents.  (See R & R at 3, n.4.)

[4] A central element in the dispute between Plaintiff and Defendants is DOC Policy 500.150.  That policy reads in relevant part, "The [DOC] provides adaptive equipment [such as contacts] to an offender when the offender's health or functional ability would otherwise be adversely affected, as determined by a designated prescribing authority or nursing staff and approved by the facility health services administrator/designee." (Ex. 8 to Paulson Aff.)  The policy further provides, "Contact lenses are not on the DOC allowable property list and therefore a medical authorization is needed for an offender to have in his/her possession.  Authorizations are limited to medical necessity as deemed by the prescribing authority."  (Id.)

contacts in prison due to "chemical use" and the possibility of infection related to the confined living space.  (Ex. 5 to Paulson Aff. at 3.)

In August 2013, Plaintiff was again seen by a physician in relation to his complaint of headaches, but made no mention of the fact that he believed his headaches were caused by glasses.  (Ex. 6 to Paulson Aff. at 2, 4.)  He was treated for "headaches, nonspecified" and "ethmoid sinusitis and maxillary sinusitis."  (Id.)  Plaintiff reported his headaches were "much improved" after this treatment.  (Id. at 2.)  Notably, for nearly a year after this treatment, Plaintiff made no complaints of headaches related to his glasses. (See Compl. at ¶ D.12; Ex. 3 to Compl.)

However, Plaintiff again began complaining of headaches associated with his use of glasses in August 2014.  (See R & R at 5-8.)  Plaintiff regularly attributed these headaches to his use of glasses instead of contacts.  (See id. at 5-6.)  Various medical personnel examined Plaintiff, but none found a medical connection between his headaches and eyewear, nor did they find contacts were medically necessary.  (See id. at 5-8.)  Plaintiff also made numerous complaints regarding the policy related to contacts and the fact that no alternative to contacts had been investigated.  (See id. at 6-7.)  In response, DOC personnel repeatedly informed Plaintiff he was not allowed contacts because DOC Policy 500.150 only provided for them when medically necessary (i.e., when a doctor prescribed contacts as medically necessary).  (Id.)  No objective medical evidence ties Plaintiff's glasses to his headaches, nor is there any indication Plaintiff has "an objective abnormality" causing the headaches.  (Paulson Aff. at ¶¶ 25, 27.)

In December 2014, Plaintiff filed a formal grievance related to his headaches and

lack of contacts.  (Compl. at ¶ D.36; Ex. 15 to Compl.; R & R at 8.)  Shortly thereafter, Monio returned the grievance stating it was not filed within the necessary timeframe and that some of Plaintiff's complaints were addressed.  (Ex. 17 to Compl.)  Plaintiff filed a grievance appeal challenging these determinations.  (Ex. 18 to Compl.)  Ebeling returned Plaintiff's appeal because he failed to attach the required documentation.  (Ex. 19 to Compl.)

### B. Procedural Background

Based on the aforementioned facts, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  (Compl. at ¶¶ E.2, E.16, E.20, E.21.)  Plaintiff emphasizes that the heart of his claims relate to Defendants' failure "to address a medical need rather than a particular solution [presumably, contacts] to it."  (Compl. at p. 16.)[5]  Plaintiff also alleges that Defendants improperly interfered with his attempts to utilize the grievance process, (id.), which he alleges violates his First Amendment, due process, and equal protection rights. (Compl. at ¶¶ E.2, E.16, E.20, E.21.)  He seeks a variety of injunctive relief and damages. (See R & R at 10-11; Compl. ¶¶ F.1-31.)  Important to the present matter, Plaintiff requests an order: (1) directing the DOC to address his medical issues, either by allowing him to wear contacts or providing him with an alternative to glasses which allows him to see without subjecting him to headaches; and, (2) preventing any retaliation against him. (R & R at 10; Compl. at ¶¶ F.22, F.24.)  Notably, he requests no injunctive relief

---

[5] A page number is referenced because the Complaint does not assign a paragraph number to the relevant content.

specifically related to the grievance processing system.  (See Compl. at ¶¶ F.1-33.)

Plaintiff subsequently filed two motions for preliminary relief.  In the first, he requested the following: (1) use of contacts for the duration of the lawsuit; (2) an order preventing the DOC from transferring him to another facility, or another unit within MCF-Oak Park Heights; (3) an order preventing any retaliatory acts, or acts meant to impede access to court (e.g., limiting his law library access or interfering with his legal materials); and (4) delivery and copies of pleadings free of charge.  (First Motion for Preliminary Relief at 4-6 "(First Mot. For Prelim. Relief") [Doc. No. 6].)  The parties' arguments related to this motion, and other parts of the procedural history surrounding it, are well documented in the R & R and not recited again here.  (See R & R at 11-13.)

Plaintiff's second motion describes various restrictions he alleges are aimed at limiting his ability to pursue his claims and interfere with his access to the courts, in violation of his equal protection and other constitutional rights.  (Second Motion for Preliminary Relief at 5 ("Second Mot. for Prelim. Relief") [Doc. No. 25].)[6]  The alleged restrictions include limiting his ability to obtain legal documents, limiting access to the law library and certain legal resources, limiting access to notary and copying services, and mail delays.  (Second Mot. for Prelim. Relief at 3-5.)  Plaintiff specifically requests relief in the form of: (1) daily access to the law library; (2) daily copying and notary services; (3) access to electronic filing, or extended deadlines to account for "time lost due to delays;" and (4) "access onsite to District Court cases, Circuit Court cases, and the

---

[6] The Court will refer to the two motions for preliminary relief collectively as "Motions for Preliminary Relief."

ability to do Shepardizations." (Id. at 6.)  The parties' arguments related to this motion, and other parts of the procedural history surrounding it, are well documented in the R & R and not recited again here. (See R & R at 11, 13-14.)

Plaintiff also filed six letters with the Magistrate Judge, most during or after the course of briefing on the Motions for Preliminary Relief. (Letter dated April 15, 2015 [Doc. No. 22]; Letter dated May 5, 2015 [Doc. No. 27]; Letter dated May 28, 2015 [Doc. No. 62]; Letter dated June 3, 2015 [Doc. No. 64]; Letter dated June 18, 2015 [Doc. No. 65]; Letter dated July 10, 2015 [Doc. No. 73] (collectively, "Plaintiff's Letters").) Plaintiff's Letters all assert that he is suffering from retaliatory acts and restrictions on his ability to access the court and pursue his claims. (See R & R at 14-18.)  Most of Plaintiff's Letters again request the injunctive relief sought in the Motions for Preliminary Relief. (See id. at 14-16.)  However, some request additional relief such as return of Plaintiff's legal materials, reinstatement at a prison work position, returning Plaintiff to his unit at MCF-Oak Park Heights, and a return to MCF-Oak Park Heights following Plaintiff's transfer to MCF-Stillwater in July 2015. (See id. at 16-18.)

**C. R & R's Findings and Recommendations**

The Magistrate Judge prudently divided Plaintiff's various requests for injunctive relief in the Motions for Preliminary Relief and Plaintiff's Letters into categories: (1) those related to and based on claims in the Complaint ("Related Request"); and (2) those not related to or based on any claims or facts in the Complaint ("Unrelated Requests").[7]

---

[7] The distinction between Related and Unrelated Requests is important to assessing some of Plaintiff's objections. See infra Part II(C), (D).

(See R & R at 19.)   Only Plaintiff's request for contacts during the pendency of the matter was considered a Related Request.   (Id.)   All of Plaintiff's other preliminary injunctive relief requests (e.g., law library time, daily notary access, orders prohibiting or undoing retaliatory acts, etc.) were Unrelated Requests.[8]   (See id. at 19, 31-34.)

The R & R then assessed Plaintiff's Related Request for contacts under the standard for issuing preliminary injunctions.   (See id. at 19-31.)   The R & R concluded that Plaintiff failed to show any likelihood of success on the merits.   (Id. at 20-28.)   The Magistrate Judge also questioned whether Plaintiff met his burden to show an "objectively serious medical need," but declined to decide the issue because Plaintiff failed to show the necessary deliberate indifference on the part of Defendants.   (Id. at 20-22.)   The R & R further concluded that Plaintiff failed to show irreparable harm.   (Id. at 29-30.)   Weighing the harms preliminary relief would cause each party, the R & R concluded this factor favored denying the Related Request.   (Id. at 29-30.)   The Magistrate Judge noted that neither party expressly raised or addressed a challenge to any of the DOC's policies under Turner v. Safley, 482 U.S. 78 (1987) and thus declined to address the matter further.   (Id.)   Finally, the R & R concluded that public interest weighed in favor of denying Plaintiff's Related Request.   (Id. at 30-31.)   Pursuant to these findings, the Magistrate Judge recommended denying Plaintiff's Related Request.   (Id. at 31.)

Next, the R & R considered Plaintiff's Unrelated Requests.   (See id. at 31-39.) The   Magistrate   Judge   found   that   Plaintiff   failed   to   show   the   necessary

---

[8] The R & R titled these Unrelated Requests as "Other Requests."

connection/relationship between the injury to be addressed by the Unrelated Requests and the conduct and claims in Plaintiff's Complaint. (Id. at 31-34.) Furthermore, even if the Unrelated Requests were construed as related to Plaintiff's claims about the grievance processing system, the R & R found that Plaintiff failed to meet his burden of showing some likelihood of success on the merits, (id. at 34-35), or irreparable harm. (Id. at 37-38.) Thus, the Magistrate Judge recommended denying the Motions for Preliminary Relief entirely. (Id. at 40.)

### D. Plaintiff's Objections to the R & R

Plaintiff responded to the R & R with an extensive list of objections. (See generally Objections.) Although he lists 41 separate objections, some are duplicative, or are not truly objections to the R & R. Liberally construed, Plaintiff's objections fall into the following categories: (1) factual disputes with the R & R (see id. at ¶¶ 1, 2, 3, 10, 11, 13, 14, 18, 22, 38); (2) misconstructions of what the R & R found (see id. at ¶¶ 5, 6, 12, 16, 26, 28, 30); (3) an objection that requiring the preliminary injunctive relief sought be sufficiently connected with the underlying claims and conduct impermissibly limits the Court's power to grant injunctive relief (see id. at ¶¶ 4, 24, 27, 29, 32, 35); (4) an objection that the R & R failed to consider a "primary purpose" of preliminary injunctions in maintaining the status quo (see id. at ¶¶ 4, 19, 25, 27, 37, 40); (5) an objection that the Magistrate Judge incorrectly assessed the objectively serious medical condition requirement (see id. at ¶¶ 6, 7); (6) an objection that because Defendants are supervisors of others who showed deliberate indifference towards Plaintiff, a "prima facie case" for deliberate indifference exists (see id. at ¶¶ 8, 12, 14, 15, 39, 41); (7) an

objection that the Magistrate Judge erred by concluding that Plaintiff failed to show irreparable harm with regards to his vision and headaches (see id. at ¶¶ 17, 19, 20, 40); (8) an objection regarding the balance of harms analysis and Plaintiff's attempt to raise a Turner claim (see id. at ¶¶ 1, 21, 34); (9) an objection about the Court's ability to issue preliminary injunctive relief against the Unnamed Defendants (see id. at ¶ 23); (10) an objection that the Magistrate Judge failed to liberally construe Plaintiff's claims (see id. at ¶ 36); and (11) an objection that the Magistrate Judge failed to perform the necessary preliminary injunction analysis as to Plaintiff's Unrelated Requests.  (See id. at ¶ 37.)

On September 14, 2015, Plaintiff also filed a reply to Defendants' responses to his objections.[9]   (See Plaintiff's Reply to Defendant's [sic] Responses to Plaintiff's Objections ("Pl. Reply") [Doc. No. 86.].)  It contained only one new objection category: an objection that the public interest always favors issuing preliminary relief when constitutional rights are at stake.  (See Pl. Reply at ¶¶ 20, 21.)  Otherwise, the reply contained supplemental arguments for each of the previously described objection categories.  (See generally Pl. Reply.)  The Court addresses each objection category in turn.

---

[9] No reply is afforded under the Local Rules.  See D. Minn. LR 72.2(b).  Even if this reply was instead construed as a supplementation of Plaintiff's Objections, it would be untimely as it was filed more than 14 days after Plaintiff was served with the R & R.  See D. Minn. LR 72.2(b)(1).  Pro se litigants are not excused from compliance with procedural law.  Brown v. Frey, 806 F.2d 801, 804 (8th Cir. 1986).  Plaintiff was previously warned to comply with the procedural rules governing the pursuit of his claims.  (R & R at 39, n.22.)  He is again instructed to comply with both the Federal Rules of Civil Procedure and Local Rules.  However, in the interest of fairness and given the liberal standard afforded pro se pleadings, the Court has reviewed and considered Plaintiff's Reply in conjunction with his Objections.  See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).

## II.      DISCUSSION

Preliminary injunctions are intended to prevent irreparable harm and preserve the status quo during the pendency of litigation. Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994). In deciding whether a preliminary injunction is warranted, the court should consider "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (these factors are commonly referred to as the "Dataphase Factors"). "While no single factor is determinative, the probability of success factor is the most significant." Home Instead, Inc. v. Florance, 721 F.3d 494, 497 (8th Cir. 2013) (quotations and citations omitted). The party seeking the preliminary injunction bears the burden of proof as to the Dataphase Factors. Chlorine Inst., Inc. v. Soo Line R.R., 792 F.3d 903, 914 (8th Cir. 2015).

Preliminary injunctive relief is considered an extraordinary remedy. Roudachevski v. All-Am. Care Centers, Inc., 648 F.3d 701, 705 (8th Cir. 2011). "Moreover, in the prison context, a request for injunctive relief must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995) (quoting Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982)). Federal courts are especially cautious with preliminary injunctions related to the operation of state prisons because of the deference due to those prison authorities.

12

Haggins v. MN Com'r of Corr., No. 10-cv-1002 (DWF/LIB), 2011 WL 4477320, at *2 (D. Minn. July 5, 2011) report and recommendation adopted, No. 10-cv-1002 (DWF/LIB), 2011 WL 4477319 (D. Minn. Sept. 27, 2011) (citing Turner, 482 U.S. at 85); see also Bell v. Wolfish, 441 U.S. 520, 562 (1979) (warning that courts should avoid, "in the name of the Constitution, becom[ing] enmeshed in the minutiae of prison operations")

The Magistrate Judge properly identified this legal standard when examining Plaintiff's Motions for Preliminary Relief. (See R & R at 17-18.) This Court similarly considers Plaintiff's objections in light of this standard.

### A. Objection: Factual Disputes With the R & R

Plaintiff disputes many of the factual findings on which the R & R is based. (See Objections at ¶¶ 1, 2, 3, 10, 11, 13, 14, 18, 22, 38; Pl. Reply at ¶ 5.) For instance, Plaintiff alleges he was never given a suppressive medication related to migraines despite the fact Defendants produced evidence to the contrary (See Objections at ¶ 2; Ex. 6 to Paulson Aff. at 3.) Similarly, Plaintiff repeatedly asserts there was no effort by Defendants to diagnosis his health issue despite considerable evidence in the record to the contrary. (See, e.g., Objections at ¶¶ 10, 13, 14; supra Part I(A).) At other times, Plaintiff simply alleges the Magistrate Judge got the Dataphase analysis wrong, (Objections at ¶ 22), or "completely overlooked the evidence already presented . . . ." (Id. at ¶ 18.)

As discussed above, Plaintiff bore the burden of showing the Dataphase Factors favored issuing his requested injunctive relief. See Chlorine Inst., Inc., 792 F.3d at 914.

Plaintiff was afforded ample opportunity to present evidence in support of his Motions for Preliminary Relief.   (<u>See</u> R & R at 11-18.)   The Magistrate Judge engaged in a thorough examination of the record, as has this Court, before concluding Plaintiff failed to carry his burden.   (<u>See generally</u> R & R.)   That the Plaintiff does not like or agree with the evidence presented by the Defendants is not a reason to reject the R & R, or grant Plaintiff's requested injunctive relief.   Moreover, simply restating arguments and facts already presented to the Magistrate Judge does not constitute a viable objection to a report and recommendation.   <u>See</u> <u>Carlone v. Heat & Frost Insulators & Allied Workers Local 34</u>, No. 14-cv-579 (SRN/JSM), 2014 WL 5438493, at *6 (D. Minn. Oct. 23, 2014) (finding objection which merely restated claims presented in complaint to be meritless). Plaintiff's objections regarding the factual basis of the R & R are overruled.

## B. Objection: Misconstruing the Case Law and the R & R's Findings and Recommendations

Plaintiff characterizes, then disputes, many of what he sees as the findings of the Magistrate Judge.   (<u>See</u> Objections at ¶¶ 5, 6, 12, 16, 26; Pl. Reply at ¶ 16.) Unfortunately, some of Plaintiff's characterizations misconstrue or mistake what the R & R found.   For instance, Plaintiff implies that the Magistrate Judge declared the relief he seeks to be moot because of his transfer from MCF-Oak Park Heights to MCF-Stillwater. (Objections at ¶ 5.)   However, the R & R plainly held that despite **potential** issues of mootness, Plaintiff's requests would be considered nonetheless.   (<u>See</u> R & R at 18, n.15.) <u>But see</u> <u>infra</u> Part II(I) (addressing mootness as to the Unnamed Defendants).   In another objection, Plaintiff claims the Magistrate Judge found his requested relief to be overly

broad.  (Objections at ¶ 26.)  The Magistrate Judge does describe the relief Munt seeks as "broad," but in no way suggests it is overly broad. (See R & R at 34.)  If anything, the Magistrate Judge's broad characterization of Plaintiff's requested relief stood to **benefit** him when considering the required connection between the relief sought and the conduct underlying Plaintiff's claims.   (See id.)   See infra Part II(C).   The Court carefully reviewed each of Plaintiff's objections in this category and found that they lacked merit. Thus, Plaintiff's objections are overruled.

Plaintiff also misconstrues case law.  (See Objections at ¶¶ 28, 30.)  For instance, the R & R concluded that injuries arising during litigation, **which are not connected to the conduct alleged in the Complaint**, cannot serve as the basis for a preliminary injunction.  (See R & R at 39 (quoting Becerra v. Doe, No. 07-cv-3414 (JMR/JJG), 2008 WL 4999251, at *1 (D. Minn. Nov. 19, 2008) and citing Hale v. Wood, 89 F.3d 840 (8th Cir. 1996).)  Plaintiff, citing Farmer v. Brennan, 511 U.S. 825 (1994), claims that "facts occurring after the commencement of the action" may serve as the basis for a preliminary injunction.   (Objections at ¶ 28.)   Plaintiff is correct that both inmates and prison officials, at the court's discretion, "may rely . . . on developments that postdate the pleadings and pretrial motions" when arguing for and against preliminary injunctions. Farmer, 511 U.S. at 846.  However, this does not negate the requirement that the post-pleading developments be sufficiently connected to the conduct underlying the plaintiff's claims.  See id. at 845-47 (prisoner's obligation to show ongoing threat of harm, related to his underlying claims of inhumane prison conditions, may warrant considering developments that postdate the pleadings); see also  Devose, 42 F.3d at 471 (denying pro

se prisoner's requested preliminary injunction because he failed to establish a connection between the relief and his underlying 42 U.S.C. § 1983 claim).  The Court reviewed each of Plaintiff's cited cases and finds that they fail to support the Plaintiff's associated objection.  Therefore, Plaintiff's objections are overruled.

### C. Objection: Requiring A Connection Between the Conduct Underlying Plaintiff's Claims and the Preliminary Relief Sought Is Impermissible

Plaintiff takes issue with the requirement that the preliminary relief he requests be connected to the conduct underlying his claims.  (See Objections at ¶¶ 4, 24, 27, 29, 32, 35; Pl. Reply at ¶¶ 23, 24, 25.)  In essence, his objection is that requiring such a connection "exceed[s] the court's power by attempting to limit the power of courts to grant injunctive relief . . . ."[10]  (Objections at ¶ 4.)  Furthermore, Plaintiff claims he established the required connection because the Unrelated Requests regarding his "access to the courts" do relate to these underlying 42 U.S.C. § 1983 claims.  (Id.)

Preliminary injunctions are designed to preserve the status quo[11] and prevent irreparable harm until a decision on the merits of the underlying claims may be made.  Devose, 42 F.3d at 471.  For this reason, "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion

---

[10] Plaintiff also makes a passing assertion that the Dataphase Factors present a similarly impermissible limitation.  (See Objections at ¶ 4.)  Confusingly, Plaintiff later cites Dataphase, with seeming approval, in support of his objections.  (See id. at ¶ 4, 22, 29, 37.)  Given this record, and the fact the Court can find no legal support for Plaintiff's contention with regard to the Dataphase Factors, to the extent Plaintiff's objection is meant to challenge Dataphase, it is overruled.

[11] A fact the Plaintiff gives considerable attention to in his objections.  See infra Part II(D).

and the conduct asserted in the complaint." Id. This requirement is widely accepted in the Eighth Circuit. See Owens v. Severin, 293 F. App'x 425 (8th Cir. 2008); Hale, 89 F.3d 840 (8th Cir. 1996); Clark v. Roy, No. 13-cv-2849 (MJD/HB), 2015 WL 3937297, at *1 (D. Minn. June 24, 2015); Crow v. Severs, No. 12-cv-2216 (PJS/FLN), 2013 WL 5313535, at *3 (D. Minn. Sept. 20, 2013); Saldana v. Craane, No. 12-cv-573 (DWF/TNL), 2012 WL 4009582, at *2 (D. Minn. Aug. 22, 2012) report and recommendation adopted, No. 12-cv-573 (DWF/TNL), 2012 WL 4009572 (D. Minn. Sept. 12, 2012). Notably, this requirement is often not met when prisoners, who originally assert 42 U.S.C. § 1983 medical care claims, seek preliminary injunctive relief related to alleged retaliation or limited access to the courts. See Devose, 42 F.3d at 471; Owens, 293 F. App'x 425; Clark, 2015 WL 3937297; Crow, 2013 WL 5313535; Saldana, 2012 WL 4009582.

Plaintiff cites Jones v. Bock, 549 U.S. 199 (2007) in support of his position that this requirement is impermissible.[12] There, the Supreme Court found that the Sixth Circuit's procedural rules requiring that inmates specially plead or demonstrate exhaustion of the administrative grievance process could not serve as the basis for dismissing inmates' federal claims pursuant to the Prison Litigation Reform Act (PLRA). Jones, 549 U.S. at 203. The Court found that these procedural rules ran afoul of the Federal Rules of Civil Procedure related to pleadings, as well as the PLRA's own

---

[12] Plaintiff also cites Silva v. Mayes, No. C04-1885 (JLR/MAT), 2005 WL 2207013 (W.D. Wash. Sept. 8, 2005). Silva and its inapplicability to the Plaintiff's requested relief was thoroughly discussed by the Magistrate Judge. (See R & R at 36-39.) The Court agrees with that analysis and declines to address the matter again here.

standards.  Id. at 213-17.  The present matter, however, is distinguishable.

First, there is no controlling or relevant statute, like the PLRA, which this requirement might contradict.  In fact, 18 U.S.C. § 3626(a)(2) requires that preliminary injunctive relief directed at prison conditions be narrowly drawn, a fact that supports this requirement.  Second, the Court cannot see how this requirement violates any Federal Rule of Civil Procedure.  Lastly, the wide spread adoption of this requirement in the Eighth Circuit and elsewhere suggests it is an acceptable limitation on preliminary injunctive relief.  The Court can find no legal support for Plaintiff's contention that requiring that the preliminary injunctive relief sought be connected to the conduct underlying his claims is an impermissible restraint on the courts' ability to issue injunctive relief.

Plaintiff's argument that he did, in fact, demonstrate the connection between his Unrelated Requests and the conduct underlying his 42 U.S.C. § 1983 claims also fails.  Plaintiff asserts that the Unrelated Requests "are related to the complaint in that they affect the [P]laintiff's ability to litigate his underlying claims."[13]  (Objections at ¶ 4.)  However, Plaintiff later appears to acknowledge that his Unrelated Requests are "independent of the Complaint's subject matter."  (See Pl. Reply at ¶ 23.)  The R & R carefully detailed how the Unrelated Requests for preliminary relief do not relate to the

---

[13]  Plaintiff cites Lewis v. Casey, 518 U.S. 343 (1996) in support of his position.  (Objections at ¶ 4.)  That case dealt with a class action suit specifically alleging that state correctional officials unconstitutionally deprived prisoners of access to the courts by providing inadequate legal research facilities.  Lewis, 518 U.S. at 346-47.  Plaintiff did **not** assert an access to the courts claim in his complaint, see generally Compl., making the case at bar markedly different from Lewis.

conduct or claims set forth in Plaintiff's Complaint.  (See R & R at 31-34.)  "[Plaintiff's]

allegation in his Complaint regarding Defendants' interference with the grievance process

is entirely unrelated to the injuries claimed in [Plaintiff's Motions for Preliminary Relief],

such as limited access to the law library or retaliatory room searches and transfers [the

Unrelated Requests]."  (R & R at 34.)  Upon a complete review of the record, this Court

agrees with that analysis.

The injury to be addressed by a preliminary injunction must be connected to the

conduct and claims of the moving party's complaint.  Devose, 42 F.3d at 471.  Plaintiff

failed to establish such a connection.  His objections to the contrary are overruled.

### D. Objection: Failure of the Court to Recognize the Purpose of Preliminary Injunctions to Maintain the Status Quo

Plaintiff alleges that the Magistrate Judge erred by failing to consider that a

"primary purpose" of preliminary injunctive relief is to preserve the status quo.  (See

Objections at ¶¶ 4, 19, 25, 27, 37, 40; Pl. Reply at ¶ 22.)  According to Plaintiff, granting

his Unrelated Requests is necessary to maintain the status quo here.  (See id.)  Plaintiff is

generally correct about the purpose of preliminary injunctions, but misconstrues its

applicability to his Unrelated Requests.

"A court issues a preliminary injunction in a lawsuit to preserve the status quo and

prevent irreparable harm until the court has an opportunity to rule on the lawsuit's

merits."  Devose, 42 F.3d at 471.  It is precisely because the purpose of a preliminary

injunction is to preserve the status quo **related to the underlying lawsuit** that there must

be a connection between the preliminary relief sought and the conduct asserted in the

complaint.  See id.; see also Owens, 293 F. App'x 425 (citing Devose with approval and noting that the required connection between the preliminary injunctive relief sought and the claims and conduct in the underlying complaint is related to preserving the status quo).

As an initial matter, the Magistrate Judge recognized that a purpose behind preliminary injunctions is to preserve the status quo.  (R & R at 18 (quoting Devose 42 F.3d at 471).)  Far from ignoring this purpose, it played a central, if not explicit, role in the R & R's analysis.  (See id. at 31-34 (discussing how Plaintiff's Unrelated Requests bear no connection to his underlying claims).)  The status quo that should be preserved by a preliminary injunction is that which relates to Plaintiff's claims and conduct alleged in his Complaint.   Granting Plaintiff's Unrelated Requests does nothing to preserve the relevant status quo because those requests are not connected to his claims.   Thus, Plaintiff's objections are overruled.

### E.  Objection: Plaintiff Established An Objectively Serious Medical Need

Plaintiff contends he established an objectively serious medical need (the headaches he attributes to his use of glasses) and that the Magistrate Judge erred in finding otherwise.  (See Objections at ¶¶ 6, 7; Pl. Reply at ¶¶ 7, 8.)  According to Plaintiff, "any lay person" would understand the need for some solution that addressed both Plaintiff's sight and headache issues.  (Objections at ¶ 6.)  Furthermore, Plaintiff alleges a lay person "could also deduce that if wearing the glasses triggers certain problems that the glasses are the cause of those problems."  (Id.)  In support of his

objection, Plaintiff later cited <u>Colwell v. Bannister</u>, 763 F.3d 1060 (9th Cir. 2014).[14]  (Pl.

Reply at ¶ 7.)

       "To establish a claim of deliberate indifference to serious medical needs under §

1983, [Plaintiff] must demonstrate that he suffered from an objectively serious medical

need and that [Defendants] actually knew of but deliberately disregarded the need."

<u>Turner v. Mull</u>, 784 F.3d 485, 490 (8th Cir. 2015) (quotations omitted).  An objectively

serious medical need is one a physician diagnosed as requiring treatment, or one so

obvious even a layperson would understand it required a doctor's attention.  <u>Schaub v.

VonWald</u>, 638 F.3d 905, 914 (8th Cir. 2011).  Headaches generally do not so obviously

necessitate a doctor's treatment so as to qualify for the layperson exception.  <u>See Hanks

v. Prachar</u>, No. 02-cv-4045 (MJD/RLE), 2009 WL 702177, at *15 (D. Minn. Mar. 13,

2009); <u>Bailey v. Cnty. of Kittson</u>, No. 07-cv-1939 (ADM/RLE), 2008 WL 906349, at *12

(D. Minn. Mar. 31, 2008) ("It would not have been obvious to a layperson that the

---

[14] <u>Colwell</u> is factually distinguishable from the present matter, lending little support to
Plaintiff's position.  There, the Ninth Circuit held "that blindness in one eye caused by a
cataract is a serious medical condition."  <u>Colwell</u>, 763 F.3d at 1063.  Multiple doctors
found the plaintiff's cataract and related vision loss "important and worthy of comment,"
indicating a serious medical need.  <u>Id.</u> at 1067.  However, the court did note that "[o]ther
courts have held that similar and even less severe losses of vision are serious medical
needs."  <u>Id.</u> at 1066.  As an initial matter, there is no evidence in the record that Plaintiff
is blind, or that glasses do not address his vision problems (despite allegedly causing him
headaches).  Furthermore, not a single medical professional found Plaintiff's headaches
constitute a serious medical need requiring contacts or other vision related treatment.  No
medical personnel have expressed an opinion that Plaintiff's use of glasses, or vision
problems generally, are connected to his headaches.  Here, unlike in <u>Colwell</u>, there is
significant disagreement as to whether Plaintiff's headaches constitute an objectively
serious medical need.

scratched eyeglasses caused Plaintiff to suffer headaches and visual impairment.").

Despite Plaintiff repeatedly raising the issue, and being examined by numerous medical personnel, there is no medical diagnosis attributing Plaintiff's headaches to his use of glasses.  (See R & R at 2-9, 21.)  Rather, it appears that the medical personnel who examined Plaintiff concluded his headaches were **not** caused by his glasses.  (See id.)  Moreover, Plaintiff's headaches were, at least for a year, successfully treated without changing his eyewear.  (See id. at 5.)  Whether visual impairment, less than blindness, and related headaches is a serious medical need is unsettled.  See Goodman v. Johnson, No. 1:11CV79 (GBL/IDD), 2015 WL 1401661, at *6 (E.D. Va. Mar. 23, 2015) (comparing cases).[15]

With no medical evidence of a serious medical need, and no legal precedent that his vision and headache issues qualify as a serious medical need, Plaintiff is left with showing his headaches would so obviously require medical attention that a layperson could make this determination.  Headaches in general, and especially those related to eyewear, typically do not meet this standard.  See Hanks, 2009 WL 702177 at *15; Bailey, 2008 WL 906349 at *12.  However, the Court need not resolve whether Plaintiff

---

[15] Goodman is remarkably similar to the case at bar.  There, a prisoner ("Goodman") brought a § 1983 claim against various prison officials and doctors for their alleged failure to treat his serious medical need by failing to prescribe him contacts instead of glasses.  Goodman, 2015 WL 1401661, at *1.  Goodman alleged his glasses caused him to suffer headaches.  Id. at * 2-3.  However, numerous medical personnel concluded the headaches were not connected to Goodman's eyewear, making contacts medically unnecessary.  Id. at *3-4.  The court ultimately concluded Goodman failed to show the deliberate indifference necessary to sustain his claim and denied his requested injunctive relief.  Id. at *7-8.  Although Goodman carries minimal precedential value as an unpublished case and is not binding authority, this Court finds it persuasive due to its factual similarities and well-reasoned legal analysis.

has an objectively serious medical need because, as described below, Plaintiff failed to show the required subjective deliberate indifference by the Defendants.  (See R & R at 21-22.)  Thus, Plaintiff's objections are overruled.

### F.  Objection: Plaintiff Established Defendants' Deliberate Indifference

Plaintiff alleges he has shown that Defendants exhibited deliberate indifference towards his objectively serious medical need.  (See Objections at ¶¶ 8, 12, 14, 15, 39, 41; Pl. Reply at ¶¶ 10, 12)  Specifically, he claims to have made a "prima facie case" as to Defendants' deliberate indifference.   (Objections at ¶ 8.)   "The issue here is not difference of opinion on treatment, it is that [Defendants] refuse any treatment or to even try and diagnose the issue."  (Id.)  Plaintiff argues that Defendants, in their supervisory roles, failed in their duty to ensure his "medical issues with glasses" were "looked into." (Id.)

"To prevail on a claim of constitutionally inadequate medical care, the inmate must show that the prison officials' conduct amounted to 'deliberate indifference to [the prisoner's] serious medical needs.'"  Dulany v. Carnahan, 132 F.3d 1234, 1237-38 (8th Cir. 1997) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  Deliberate indifference requires a showing of more than negligence, or even gross negligence; the plaintiff must "establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health."  Thompson v. King, 730 F.3d 742, 746-47 (8th Cir. 2013).   Even unreasonable acts in response to a known risk do not prove deliberate indifference.  Id. at 747.

Prison officials who are not medical personnel still have a constitutional duty to

see that prisoners receive the medical care they need.  Crooks v. Nix, 872 F.2d 800, 804 (8th Cir. 1989).   However, administrative prison personnel, who are not medical professionals, may not substitute their judgment for that of medical personnel, and cannot be liable for medical staff's diagnostic decisions when it comes to prisoner medical care. Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002).  "A prison official may rely on a medical professional's opinion if such reliance is reasonable."  McRaven v. Sanders, 577 F.3d 974, 981 (8th Cir. 2009).

The record does not support Plaintiff's claims of deliberate indifference. Defendants Larson, Reid, Monio, and Ebeling are administrative prison officials, not medical professionals.  Over the course of three years, Plaintiff was examined by medical professionals, both optometrists and physicians, at least six times in relation to his complaints about headaches and eyewear.  (See R & R at 3-9.)  Defendants Larson and Reid responded to Plaintiff's complaints regarding his headaches and the care he received.  (See R & R at 23-26.)  They reasonably relied on the conclusions of the various medical professionals who examined Plaintiff to deny his requests for contacts because there was no objective evidence connecting his headaches to his eyewear.  (See id. at 24-25.)  The fact Plaintiff desires a different diagnosis and treatment (i.e., contacts, Lasik surgery, or something other than glasses), and disagrees with the treatment he has received does not establish deliberate indifference.  See Dulany, 132 F.3d at 1241 (8th Cir. 1997) ("The existence of a possible alternate course of treatment, which 'may or may not' have been successful, is not sufficient to raise an inference of deliberate indifference where the prison officials acted reasonably but ultimately failed to avert the harm.");

Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996) ("Prisoners do not have a constitutional right to any particular type of treatment."); Dyer v. Farley, 9 F.3d 114 (8th Cir. 1993) ("[M]ere dis-agreement with a diagnosis or course of medical treatment is insufficient to state a claim under § 1983."); Goodman, 2015 WL 1401661, at *7 ("Although plaintiff disagrees with the defendants' conclusions [about his medical issues related to headaches from glasses and the proper treatment], this disagreement does not amount to deliberate indifference.").

Defendant Monio's and Ebeling's involvement with Plaintiff's diagnosis and treatment is even more limited.  They refused to process Plaintiff's grievance based on his failure to comply with certain procedural requirements.  (See R & R at 27.)  Plaintiff presents only his conclusory allegation that these refusals were part of an effort to deny him medical treatment as evidence of deliberate indifference.  (Id.)  Such conclusory statements are not enough to state a claim, let alone show the likelihood of success on the merits necessary for issuing a preliminary injunction.  See Jones v. Norris, 310 F.3d 610, 612 (8th Cir. 2002) (prisoner's failure to show deliberate indifference, besides his own conclusory allegations, warranted dismissal of his complaint as frivolous); Barakat v. Fisher, No. 13-cv-1296 (JNE/SER), 2013 WL 6058932, at *12-13 (D. Minn. Nov. 18, 2013) appeal dismissed, 564 F. App'x 866 (8th Cir. 2014) (denying prisoner preliminary injunctive relief when underlying complaint dismissed as frivolous).

Plaintiff failed to show deliberate indifference on the part of any of the Defendants.  Without this showing, he has not established any likelihood of success on the merits of his 42 U.S.C. § 1983 claim, let alone the "fair chance of prevailing"

25

required for preliminary injunctive relief.  See Planned Parenthood Minn., N.D., S.D. v.

Rounds, 530 F.3d 724, 732 (8th Cir. 2008).  His objections to the contrary are overruled.

### G. Objection: Plaintiff Has and Will Continue to Suffer Irreparable Harm

Plaintiff contends the Magistrate Judge erred in finding he did not demonstrate

irreparable harm.  (See Objections at ¶¶ 17, 19, 20, 40; Pl. Reply at ¶¶ 14, 15.)  In

support, Plaintiff offers new claims that his ability to perform work as a unit janitor[16] was

due to the fact he had "friends to help cover for him" and that staff "overlooked" his

inability to perform satisfactorily.  (Objections at ¶ 17.)  The prospective harm he faces at

MCF-Stillwater "is even greater," he argues, due to the fact this facility is loud and he

continues to have limited law library access, cannot get a job, and other limitations.  (Id.

at ¶¶ 19, 20.)  "[Plaintiff is] afraid of what might result from those issues in this

environment."  (Id. at ¶ 19.)  Furthermore, Plaintiff claims he "need not provide

'competent medical evidence' for irreparable harm."[17]  (Pl. Reply at ¶ 14.)  Lastly,

Plaintiff asserts that "any violation of a [c]onstitutional right constitutes irreparable

harm."[18]  (Id. at ¶ 15.)

---

[16] A fact considered by the Magistrate Judge when conducting the irreparable harm analysis.  (See R & R at 28.)

[17] The Magistrate Judge never required that Plaintiff produce "competent medical evidence" to establish irreparable harm.  (See R & R at 29-30, 37-38.)  Nor has this Court held Plaintiff to such a standard.  Plaintiff's objection to this supposed requirement is thus meritless and overruled.

[18] Plaintiff cites Elrod v. Burns, 427 U.S. 347 (1976) in support of this contention.  (Pl. Reply at ¶ 15.)  However, Plaintiff misconstrues the case and misapplies it to the instant matter.  "The loss of **First Amendment freedoms**, for even minimal periods of time, unquestionably constitutes irreparable injury."  Elrod, 427 U.S. at 373 (emphasis added).

"A party must also show . . . that a cognizable danger—more than a 'mere possibility'—exists of a future violation," to be entitled to injunctive relief.  C.H. v. Sullivan, 718 F. Supp. 726, 730 (D. Minn. 1989) aff'd, 920 F.2d 483 (8th Cir. 1990) (citing Rogers v. Scurr, 676 F2.d 1211, 1214 (8th Cir. 1982)).  The speculative threat of harm is not an appropriate basis for an injunction.  Cargill, Inc. v. Hartford Acc. & Indem. Co., 531 F. Supp. 710, 715 (D. Minn. 1982).  "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003).

---

The Supreme Court noted that "[t]he timeliness of political speech [which was the focus of the First Amendment claims] is particularly important."  Id. at 374, n.29.  It also recognized that the parties moving for the preliminary injunction had demonstrated a probability of success on the merits.  Id. at 374.  Here, Plaintiff has not shown any likelihood of success on the merits.  See supra Part II(F).  Moreover, the deprivation of constitutional rights related to the Eighth Amendment and medical treatment does **not** necessarily constitute irreparable harm under circumstances similar to the case at bar. See Wheatley v. Smith, No. 12-cv-880 (DWF/AJB), 2012 WL 5930665, at *2 (D. Minn. Oct. 25, 2012) report and recommendation adopted, No. 12-cv-880 (DWF/AJB), 2012 WL 5931544 (D. Minn. Nov. 27, 2012) (denying prisoner's claim of irreparable harm in the form of deprivation of a constitutional right to medical treatment where the record showed the prisoner was "examined and treated on numerous occasions"); see also Rhinehart v. Scutt, 509 F. App'x 510, 514 (6th Cir. 2013) (finding no irreparable harm where a prisoner "has not shown a continuing violation of his Eighth Amendment rights" and requiring "more than his allegation of a constitutional violation" to find irreparable harm); Boretsky v. Corzine, No. CIVA 08-2265 (GEB), 2009 WL 1357233, at *4 (D.N.J. Jan. 16, 2009) report and recommendation adopted as modified, No. CIV 08-2265 (GEB/DEA), 2009 WL 1312701 (D.N.J. May 11, 2009) (holding that simply asserting a deprivation of Eighth Amendment rights, without more, does not establish irreparable harm); Chambers v. Warden, New Hampsire State, No. CIV.A 02-331-JD, 2002 WL 1790586, at *6, n.4 (D.N.H. Aug. 5, 2002) subsequently aff'd sub nom. Chambers v. Coplan, 82 F. App'x 710 (1st Cir. 2003) (finding that a prisoner's failure to demonstrate that his Eighth Amendment rights were violated and lack of support for the idea that deprivation of Eighth Amendment rights constitutes irreparable harm as a matter of law (distinguishing Elrod) supported denying prisoner's preliminary injunction).

The irreparable harm Plaintiff faces related to his headaches and eyewear is speculative at best. Plaintiff has pursued his claims with a remarkable degree of persistence, especially considering his pro se status. (See R & R at 28.) His objections to the R & R show a similar degree of adeptness, despite his transfer to MCF-Stillwater and the alleged impediments he faces. (See generally Objections; Pl. Reply) Plaintiff was also able to physically perform as a janitor and the record contains no evidence that his headaches or vision problems were the reason he was fired from that position. (See R & R at 28.) Besides his general allegation that "[h]e cannot get a job, cannot participate in activities," Plaintiff presents no evidence that these limitations are related to the medical issues forming the basis of his claims.[19] (See Objections at ¶ 20.) Furthermore, Plaintiff has never alleged that he is not receiving medical care, only that he is not receiving the diagnosis and associated treatment he desires. (See Objections at ¶¶ 3, 4, 8, 12, 13, 14, 39; Pl. Reply at ¶ 4, 5, 6, 9, 10.)

Plaintiff has not shown the irreparable harm necessary to warrant the extraordinary measure of issuing preliminary injunctive relief. Plaintiff's objections are overruled.

_____

[19] The Court notes with some concern that Plaintiff now alleges he is suffering injuries, presumably related to his vision issues, at MCF-Stillwater. (See Pl. Reply at ¶ 14.) However, these claims are still not enough to show irreparable harm. "The [petitioner] must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." Packard Elevator v. I.C.C., 782 F.2d 112, 115 (8th Cir. 1986) (alteration original). Plaintiff has provided no evidence he suffered injuries related to his vision issues in the past. Nor has he provided anything other than his conclusory allegations about the environment at MCF-Stillwater to support the idea that such injuries are likely to occur again. (See Pl. Reply at ¶ 14.) Moreover, because Plaintiff has not demonstrated any likelihood of success on the merits, even if the irreparable harm factor weighed in his favor, issuing his requested preliminary relief would be improper. See infra Part II(K).

**H. Objection: Defendants Do Not Have A Viable Interest to Consider in Balancing the Harms Associated With Preliminary Relief**

Plaintiff alleges the DOC policies regarding contacts do not constitute an interest which can be harmed because those policies are not consistently applied[20] and have "no [c]onstitutional basis and cannot compete with [Plaintiff's] [c]onstitutional rights." (Objections at ¶ 21; see also Objections at ¶¶ 1, 34; Pl. Reply ¶¶ 17, 18.)  Plaintiff also appears, for the first time, to bring a Turner challenge against the DOC's policies related to limitations on contacts.  (See Objections at ¶ 21 ("And yes, the validity of the policy [regarding medical necessity and contacts] is questioned.")

Courts must give "substantial weight" to any adverse impact on the "operation of a criminal justice system caused by the preliminary relief . . . ."   18 U.S.C. § 3626(a)(2). Allowing prisoners to bypass correctional facility policies and medical protocol is harm entitled to such substantial weight.  Rivera v. Kalla, No. 12-cv-1479 (MJD/FLN), 2012 WL 7761498, at *5 (D. Minn. Dec. 12, 2012) report and recommendation adopted, No. 12-cv-1479 (MJD/FLN), 2013 WL 1104786 (D. Minn. Mar. 18, 2013); see also Goff, 60 F.3d at 520 (cautioning courts to use restraint when issuing injunctive relief directed at prisons).

---

[20] Plaintiff cites Holt v. Hobbs, 135 S. Ct. 853 (2015) in support of this contention.  (Pl. Reply at ¶ 17.)  However, Holt is entirely distinguishable from and inapplicable to this case.  Holt dealt with a prisoner's religious accommodation claim under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). Holt, 135 S. Ct. at 859.  Thus, Holt's analysis is necessarily limited to religious exercise claims in the prison context.  Plaintiff made no claims regarding his religious exercise under the First Amendment or RLUIPA.

Defendants claim an interest in implementing the DOC policy that prohibits contacts unless they are deemed medically necessary.  (See R & R at 29.)  Granting Plaintiff the right to wear contacts would allow him to bypass this policy, interfering with the DOC's uniform application and enforcement of the same.  (See id.)  Moreover, the record evidences other interests, such as the risk of infection and the use of chemicals, which favor the general disallowance of contacts in a prison environment.  (See id. at 30, n.19.)

Plaintiff offers no evidence, other than his alleged personal experience, that the DOC's contacts policy is not uniformly enforced.  (See, e.g., Objections at ¶¶ 1, 21; Pl. Reply at ¶ 17.)  Furthermore, there is no case law to support Plaintiff's contention that his constitutional rights necessarily outweigh the DOC's policy interests.   Given the substantial weight due to Defendants' interests and the lack of harm Plaintiff faces without the requested relief, the balance of harms weighs in favor of denying Plaintiff's preliminary relief.  Plaintiff's objections to the contrary are overruled.

Lastly, Plaintiff's attempt to raise a Turner challenge to the DOC's contacts policy through his objections must fail.  When presenting arguments to the magistrate judge, a party must put forth "not only their 'best shot' but all of their shots."  Ridenour v. Boehringer Ingelheim Pharm., Inc., 679 F.3d 1062, 1067 (8th Cir. 2012) (quotations and citations omitted).  "A party cannot, in his objections to an R & R, raise arguments that were not clearly presented to the magistrate judge."  Hammann v. 1-800 Ideas.com, Inc., 455 F. Supp. 2d 942, 947-48 (D. Minn. 2006).  New claims or arguments, presented for the first time in the objections to an R & R, will not be reviewed.  See Britton v. Astrue,

622 F. Supp. 2d 771, 776 (D. Minn. 2008); <u>Nhut Le v. Wells Fargo Bank, N.A.</u>, No. 13-cv-1920 (SRN/JJK), 2014 WL 1672353, at *3 (D. Minn. Apr. 28, 2014) <u>aff'd,</u> 595 F. App'x 661 (8th Cir. 2015).   Plaintiff's <u>Turner</u> claim was not clearly presented to the Magistrate Judge.   (<u>See</u> R & R at 29-30.)   It will not be considered here.   Plaintiff's related objections are overruled.

## I.   Objection: Plaintiff May Seek Preliminary Relief Against the Unnamed Defendants

Plaintiff asserts § 1983 claims against the various Unnamed Defendants.   (<u>See</u> Compl. at ¶¶ E.3-15, 17-19, 22.)   <u>See</u> <u>supra</u> n.1.   He claims, without offering any evidence, these Unnamed Defendants are employed by the DOC.   (<u>See</u> <u>id.</u> at ¶¶ C. 3-16, 18, 21-22.)   Defendants assert that at least some of the "doctors and medical professionals" constituting the Unnamed Defendants are not employed by the DOC. (Defendants Larson, Reid, Monio and Ebeling's Memorandum in Opposition to Plaintiff's Motion for Preliminary Relief ("Defs' Opp. Memo.") at 1 [Doc. No. 49].) There is no evidence that any of the Unnamed Defendants were served in this matter. (<u>See</u> [Doc. Nos. 18, 19, 20] (evidencing executed summons only for Defendants Larson, Ebeling, Monio, and Reid).)   None of the Unnamed Defendants have made an appearance.

Plaintiff asserts the Magistrate Judge erred by finding a preliminary injunction could not issue against the Unnamed Defendants.   (Objections at ¶ 23; <u>see</u> R & R at 31, n.20.)   Plaintiff implies that because the Unnamed Defendants are "employees, contractors, etc." of the DOC, a preliminary injunction against the DOC would be

31

effective as to the Unnamed Defendants.  (See Objections at ¶ 23.)

"The court may issue a preliminary injunction only on notice to the adverse party."
Fed. R. Civ. P. 65(a)(1).  Orders for preliminary injunctive are binding on those who
receive actual notice including:

> (A) the parties;
> (B) the parties' officers, agents, servants, employees, and attorneys; and
> (C) other persons who are in active concert or participation with anyone
> described in Rule 65(d)(2)(A) or (B).

Fed. R. Civ. P. 65(d)(2)(A)-(C).  One cannot be bound by a judgment from litigation to
which he/she "is not designated a party or to which he has not been made a party by
service of process."  Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 110,
(1969).  Thus, an unnamed party cannot be subject to a preliminary injunction until it is
determined he/she is on actual notice of the preliminary injunction and is an officer,
agent, or employee of a named party, or is in "active concert or participation" with a
named party.  See id. at 112 (holding that a party may not be held in contempt of an
injunction until a determination is made that he is subject to said injunction).

There is no indication the Unnamed Defendants were served or otherwise have
actual notice of Plaintiff's claims or motions for preliminary injunctive relief.
Defendants contend at least some of the Unnamed Defendants are not DOC employees.
Precisely what connection the Unnamed Defendants have with the DOC, or what notice
they have of Plaintiff's claims and motions, is unclear on the present record.  Thus, the
Magistrate Judge's concerns about notice and issuing preliminary injunctive relief are
well-founded.  (See R & R at 31, n.20.)  However, resolving these issues is unnecessary

because Plaintiff's requested preliminary relief is moot as to the Unnamed Defendants.

Transfer of a prisoner to a new facility can render that prisoner's claims for injunctive relief moot. See Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999); Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985). This is especially true where the transfer takes the prisoner outside the authority and care of the allegedly offending prison officials. See Randolph v. Rodgers, 253 F.3d 342, 345-46 (8th Cir. 2001) (denying prisoner's requested prospective injunctive relief as to several employees of a correctional facility the prisoner was no longer incarcerated at because those employees had no authority to enact any granted injunctive relief at the prisoner's present facility); Anderson v. United States, No. 11-cv-1486 (DWF/LIB), 2013 WL 1173948, at *7, n.11 (D. Minn. Jan. 25, 2013) report and recommendation adopted, No. 11-cv-1486 (DWF/LIB), 2013 WL 1173901 (D. Minn. Mar. 20, 2013) aff'd, 564 F. App'x 865 (8th Cir. 2014) cert. denied, 135 S. Ct. 1184 (2015) ("However, Plaintiff cannot be granted injunctive relief [related to receiving medical care] against the individual Defendants employed at FMC–Rochester, because his prison transfer has effectively mooted any claims for injunctive relief against those Defendants."); see also Abdul-Jabbar v. West, No. 05-CV-0373F, 2009 WL 2762270, at *9 (W.D.N.Y. Aug. 26, 2009) (prisoner could not seek to enjoin medical personal who did not have contact with or authority over him, or prison officials not a party to the underlying action); Davis v. Caruso, No. 07-11740, 2008 WL 878878, at *4 (E.D. Mich. Mar. 28, 2008) ("Because plaintiff is no longer subject to the care of the officials he claims were denying him his ability to send legal mail and receive the treatment prescribed by his treating oncologist [because he was

transferred to a new facility], his requests for preliminary injunctive relief are moot.").

The preliminary injunctive relief Plaintiff seeks as to the Unnamed Defendants is moot now that Plaintiff is no longer incarcerated at MCF-Oak Park Heights. By Plaintiff's own account, the Unnamed Defendants are all employed at or by MCF-Oak Park Heights. (See Compl. at ¶¶ C. 3-16, 18, 21-22 (listing the address for each Unnamed Defendant as MCF-Oak Park Heights).) Unlike Defendants Larson, Reid, Ebeling, and Monio, who Plaintiff alleges have supervisory positions, (see id. at ¶¶ C.2, 17, 19, 20), Plaintiff does not allege the Unnamed Defendants occupy any supervisory role, have the ability to direct his care at MCF-Stillwater, or have any authority to change DOC policy. (See id. at ¶¶ C. 3-16, 18, 21-22.) Presumably, non-supervisory medical and Health Services personnel at one DOC facility do not have the ability to dictate the treatment Plaintiff receives at a different facility. Because Plaintiff's transfer to MCF-Stillwater took him outside the care and control of the Unnamed Defendants, his requests for preliminary relief as to those individuals are moot.[21] See Randolph, 253 F.3d at 345-46; Anderson, 2013 WL 1173948 at *7, n.11.

---

[21] But see supra Part II(B) (noting that the Magistrate Judge considered Plaintiff's claims against Defendants Larson, Reid, Monio, and Ebeling despite potential issues of mootness). The Court's mootness holding applies only to the Unnamed Defendants. Although doubtful that Defendants Reid and Monio, who occupy supervisory roles only at MCF-Oak Park Heights, have any ability to direct the care Plaintiff receives at MCF-Stillwater, it is at least plausible. Defendants Larson and Ebeling, who work for "central" DOC may have such abilities. However, deciding whether Defendants Larson, Ebeling, Reid, and Monio in fact have the ability to direct the care Plaintiff receives at MCF-Stillwater, or change DOC policy, is unnecessary. Plaintiff's requested relief must be denied for a myriad of reasons, as detailed in the R & R and this Order. Thus, the Court declines to resolve Plaintiff's claims as to those specific Defendants on mootness grounds. (See R & R at 18, n.15 (reaching a similar conclusion).)

For these reasons, the Court respectfully declines to adopt the Magistrate Judge's reasoning related to the Unnamed Defendants. (See R & R at 31, n.20.) Instead, the Court finds Plaintiff's requested preliminary injunctive relief against the Unnamed Defendants is moot. Plaintiff's objections are overruled.

### J. Objection: Failure to Construe Plaintiff's Claims Liberally

Plaintiff contends the Magistrate Judge erred by not liberally construing his pleadings. (See Objections at ¶¶ 30, 36.) Specifically, Plaintiff claims "precedent indicates" the Magistrate Judge should have construed Plaintiff's pleadings "to reflect any possible claim under which federal relief could be granted . . . ." (Id. at ¶ 36.)

Pro se pleadings are to be liberally construed. Haines, 404 U.S. at 520; Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004).

> When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework. That is quite different, however, from requiring the district court to assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint.

Stone, 364 F.3d at 915. Nor is a court required to "construct a legal theory" for a pro se plaintiff based on facts which were not plead. Sneh v. Bank of New York Mellon, No. 12-cv-954 (MJD/JSM), 2012 WL 5519690, at *5 (D. Minn. Oct. 30, 2012) report and recommendation adopted, No. 12-cv-954 (MJD/JSM), 2012 WL 5519682 (D. Minn. Nov. 14, 2012) (quoting Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989)). Deference to a pro se party does not require that the court "'assume the role of advocate for the pro se litigant.'" Id. (quoting Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999)).

Moreover, pro se litigants still must comply with substantive and procedural law.  Brown, 806 F.2d at 804.

The Court finds no indication that the Magistrate Judge did not afford Plaintiff's various pleadings the appropriate liberal construction.  Neither the Magistrate Judge, nor this Court, is required to supply Plaintiff with the facts and arguments which would allow him to prevail on his Motions for Preliminary Relief.  Plaintiff's contention that his pleadings should have been construed to reflect "any possible claim" is untrue and entirely unsupported by case law.  Plaintiff's objections are overruled.

### K. Objection: Failure to Consider All Dataphase Factors as to Plaintiff's Unrelated Requests

Plaintiff alleges the Magistrate Judge erred by not addressing all four Dataphase Factors when considering Plaintiff's Unrelated Requests.  (See Objections at ¶ 37.) Plaintiff asserts all four factors must be considered as no one factor is determinative. (Id.)

No one Dataphase Factor is, by itself, determinative of whether preliminary injunctive relief should be granted.  United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998).  However, the probability of success on the merits factor is the most significant.  Home Instead, 721 F.3d at 497.  An injunction "cannot issue if there is no chance of success on the merits . . . ."  Mid-Am. Real Estate Co. v. Iowa Realty Co., 406 F.3d 969, 972 (8th Cir. 2005); see also CDI Energy Servs. v. W. River Pumps, Inc., 567 F.3d 398, 402 (8th Cir. 2009) ("With no likelihood of success on the merits, there is little justification for granting a preliminary injunction . . . .").  "If a party's likelihood of

succeeding on the merits is sufficiently low, a court may deny a preliminary injunction **even if** the other three factors—irreparable harm, balance of harms, and the public interest—weigh in the party's favor." <u>McMahon v. Delta Air Lines, Inc.</u>, 830 F. Supp. 2d 674, 688 (D. Minn. 2011) (emphasis added).

The Magistrate Judge, setting aside the lack of connection between Plaintiff's Complaint and the Unrelated Requests, concluded that Plaintiff failed to establish any likelihood of success on the merits of any "grievance-process related claim" in his Complaint.  (<u>See</u> R & R at 35-36.)  According to the R & R, Plaintiff failed because he offered nothing more than conclusory statements in support of his contention that his constitutional rights related to the grievance process were violated.  (<u>Id.</u> at 35.)  Thus, to the extent any of Plaintiff's Unrelated Requests connect to his grievance processing claims, he is not entitled to such relief because he failed to establish any likelihood of success on the merits.  (<u>See id.</u> at 35-36.)  The Magistrate Judge went on to note that even if Plaintiff's Unrelated Requests were related to a claim regarding Plaintiff's access to the court (which his Complaint does not in fact contain), a preliminary injunction was not warranted because there was no showing of irreparable harm.  (<u>See id.</u> at 37-38 (detailing Plaintiff's regular filings and ability to pursue his claims).)

Even making assumptions providing Plaintiff with the missing "link" between his Unrelated Requests and the claims in his Complaint, Plaintiff failed to show he is entitled to preliminary injunctive relief.  The Court agrees with the Magistrate Judge that Plaintiff did not establish any likelihood of success on the merits of his claims.  This alone, especially in the context of preliminary relief directed at a state prison system, warrants

denying Plaintiff's requested injunctions.  See Mid-Am. Real Estate Co., 406 F.3d at 972;

Goff, 60 F.3d at 520; Haggins, 2011 WL 4477320, at *2.  Even if the other three

Dataphase Factors weighed in Plaintiff's favor[22] he would still not be entitled to the

Unrelated Requests.  See McMahon, 830 F. Supp. 2d at 688.  Plaintiff's objection is

overruled.[23]

### L. Objection: Public Interest Weighs In Favor of Granting Plaintiff Preliminary Injunctive Relief

Lastly, Plaintiff claims the Magistrate Judge erred by finding the public interest

did not favor granting Plaintiff preliminary relief.  (See Pl. Reply at ¶¶ 20, 21.)  Plaintiff

contends "[t]he interest of the public is always in upholding the Constitution."  (Id. at ¶

20.)  Notably, Plaintiff previously presented a nearly identical argument, which the

Magistrate Judge considered.  (See R & R at 30-31.)

"Strong public interests exist both in protecting the constitutional rights of inmates

and in the safe and effective operation of prisons."  Williams v. Ehlenz, No. 02-cv-978

(JRT/JSM), 2003 WL 22076582, at *4 (D. Minn. Aug. 24, 2003).  However, where there

is not a strong showing that a prisoner's rights have been or are in danger of being

infringed, it cannot be said public interest necessarily favors issuing the prisoner

preliminary injunctive relief.  See id.; Rivera, 2012 WL 7761498, at *6 (finding that

---

[22] There is little likelihood of this being the case since, as the Magistrate Judge noted, Plaintiff also failed to establish irreparable harm.

[23] To be clear, because Plaintiff failed to establish the required connection between his Unrelated Requests and the claims and conduct asserted in his Complaint, it is doubtful that **any** Dataphase analysis of the Unrelated Requests was necessary.  See Devose, 42 F.3d at 471 (engaging in no Dataphase analysis where prisoner failed to establish necessary connection between the preliminary relief sought and his underlying claims).

where a prisoner fails to show a violation of the law, public interest favors courts exercising restraint and rejecting preliminary injunctions directed at prison systems).

Plaintiff failed to demonstrate any likelihood of success on the merits and this Court cannot conclude, at this time, that any of the Defendants violated Plaintiff's rights. See supra Part II(F). This, along with the judicial restraint to be exhibited when considering preliminary relief in the state prison context, means public interest does not weigh in Plaintiff's favor. Furthermore, even if public interest favored issuing Plaintiff his requested relief, such relief should not issue because Plaintiff failed to establish any likelihood of success on the merits. See Mid-Am. Real Estate Co., 406 F.3d at 972 (an injunction "cannot issue if there is no chance of success on the merits"); McMahon, 830 F. Supp. 2d at 688 (low probability of success on the merits warrants denial of preliminary injunction even if all three other Dataphase Factors weigh in favor of issuing the injunction); supra Part II(K). Plaintiff's objections are overruled.

## III. ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Objections to the Magistrate Judge's Report and Recommendation [Doc. No. 76] are **OVERRULED**;

2.  The R & R [Doc. No. 74] is **ADOPTED IN PART**;

3.  Plaintiff's Motion for Preliminary Relief [Doc. No. 6] is **DENIED**; and

4.  Plaintiff's Second Motion for Preliminary Relief [Doc. No. 25] is **DENIED**.

Dated: September 23, 2015          s/ Susan Richard Nelson
                                   SUSAN RICHARD NELSON
                                   United States District Judge