# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Joel Marvin Munt,

     Plaintiff,

v.

Nanette Larson, Kathy Reid, Shelly Monio,
Kim Ebeling, Doctors #1–6, Health Services
Workers #1–6, Opticians #1–4, and RN #1,

     Defendants.

**Case No. 15-cv-582 (SRN/SER)**

**ORDER AND
REPORT AND RECOMMENDATION**

Joel Marvin Munt, *pro se*, 236179, MCF–Stillwater, Bayport, Minnesota.

Timothy S. Christensen, Esq., Minnesota Attorney General's Office, St. Paul, Minnesota, for
Defendants Nanette Larson, Kathy Reid, Shelly Monio, and Kim Ebeling.

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Plaintiff Joel Marvin Munt's
("Munt") Request for Reconsideration of Motion to Appoint Counsel ("Motion to Appoint
Counsel") [Doc. No. 89], Motion to Amend Complaint ("Motion to Amend") [Doc. No. 91], and
Third Motion for Preliminary Relief [Doc. No. 96]. This matter has been referred for the
resolution of pretrial matters pursuant to 28 U.S.C § 636 and District of Minnesota Local Rule
72.1. For the reasons stated below, the Court denies without prejudice the Motion to Appoint
Counsel, grants in part and denies in part the Motion to Amend, and recommends that the Third
Motion for Preliminary Relief be denied.

## I.    BACKGROUND

Munt, an inmate at Minnesota Correctional Facility-Stillwater ("MCF-Stillwater"),
initiated this action *pro se* on February 25, 2015, pursuant to 42 U.S.C. § 1983, alleging

violations of his constitutional rights.[1] *See generally* (Compl.) [Doc. No. 1]. Munt also filed two motions for preliminary relief. (Mot. for Prelim. Relief) [Doc. No. 6]; (Second Mot. for Prelim. Relief) [Doc. No. 25]. Defendants Nanette Larson, Kathy Reid, Shelly Monio, and Kim Ebeling (collectively, "Defendants") answered the Complaint on April 27, 2015.[2] (Answer of Defs. Larson, Reid, Monio, & Ebeling) [Doc. No. 23]. After further briefing by the parties with respect to Munt's first and second motions for preliminary relief, this Court issued a Report and Recommendation recommending denial of both motions. (R&R Dated July 30, 2015, "July 2015 R&R") [Doc. No. 74]. The Honorable Susan Richard Nelson adopted the Report and Recommendation in part and denied Munt's first and second motions for preliminary relief.[3] (Sept. 2015 Order). Following Judge Nelson's ruling, Munt filed the motions now before the Court. *See* (Mot. to Appoint Counsel); (Mot. to Amend); (Third Mot. for Prelim. Relief).

A detailed discussion of the claims in Munt's Complaint and the factual basis for those claims is found in both the July 2015 R&R and the September 2015 Order. In essence, Munt's constitutional claims are based on his allegation that he suffers severe headaches when wearing glasses, his grievances related to this alleged problem, and Defendants' alleged inadequate response thereto. *See* (Sept. 2015 Order at 2–6).

## II.   DISCUSSION

---

[1]     When Munt initiated this action he was incarcerated at Minnesota Correctional Facility-Oak Park Heights ("MCF-OPH"), but was subsequently transferred to MCF-Stillwater. (Order on R&R Dated Sept. 23, 2015, "Sept. 2015 Order") [Doc. No. 87 at 2].

[2]     Defendants "are all personnel with the Minnesota Department of Corrections ('DOC')." (Sept. 2015 Order at 2). Munt has listed as defendants unnamed doctors, health services workers, opticians, and a nurse (collectively, "Unnamed Defendants"). No Unnamed Defendant has been served nor has any Unnamed Defendant made an appearance.

[3]     Judge Nelson declined to adopt this Court's reasoning that it could not issue a preliminary injunction as to the Unnamed Defendants in light of concerns about notice. (Sept. 2015 Order at 31–35). Instead, Judge Nelson concluded that Munt's "requested preliminary injunctive relief against the Unnamed Defendants [was] moot" in light of his transfer to MCF-Stillwater. (*Id.* at 34–35).

### A.      Motion to Amend

#### 1.      Legal Standard

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Parties do not, however, "have an absolute right to amend their pleadings, even under this liberal standard." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). "A district court appropriately denies the movant leave to amend if 'there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'" *Id.* (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005)). Futility may prevent an amendment when the claims "would not withstand a [m]otion to [d]ismiss for failure to state a claim upon which relief can be granted." *DeRoche v. All Am. Bottling Corp.*, 38 F. Supp. 2d 1102, 1106 (D. Minn. 1998) (Erickson, Mag. J.); *see also Cornelia I. Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778, 781–83 (8th Cir. 2008) (evaluating futility of asserted claims under Fed. R. Civ. P. 12(b)(6) standard).

#### 2.      Analysis

In his Motion to Amend, Munt seeks to add a claim under the Americans with Disabilities Act ("ADA"). (Mot. to Amend at 1). Munt provides a statement of additional facts he seeks to add to his Complaint. (*Id.*). Specifically, Munt states that he

> has disabilities as defined by 42 USC § 12012. Without corrective eyewear [Munt] has a disability substantially limiting his ability to see, perform manual tasks, and work. With glasses [Munt] has a disability substantially limiting his ability to learn, concentrate, think, communicate, work and at its wors[t] even to sleep.

(*Id.*). Munt also seeks to add two requests for relief to his Complaint: (1) a request for injunctive relief requiring the Defendants to "reasonably and properly" accommodate his disability through contact lenses or corrective eye surgery, which he contends would have "no effect on the facility" and which would involve "de minimis expense"; and (2) a request for declaratory relief that his rights under the ADA have been violated. (*Id.* at 2–3). Defendants oppose the motion, arguing that Munt's proposed amendment is futile. (Defs. Larson, Reid, Monio and Ebeling's Mem. in Opp'n to Mot. to Amend) [Doc. No. 93].

As an initial matter, the Court notes that Munt's Motion to Amend does not comply with procedural requirements established under the Local Rules of this District, as he has not provided the Court with a proposed amended pleading, nor did he file a memorandum in support of his motion. *See* D. Minn. L.R. 7.1(b)(1) (noting that a moving party must file a memorandum of law simultaneously with a non-dispositive motion); D. Minn. L.R. 15.1 (requiring that any motion to amend a pleading be "accompanied by" a clean copy of the proposed amended pleading and a copy of the proposed amended pleading showing changes through underlining, strikeouts, or other similar means). Munt has been informed that he must comply with the Local Rules of this District. (Sept. 2015 Order at 11 n.9) ("[Munt] was previously warned to comply with the procedural rules governing the pursuit of his claims. **He is again instructed to comply with both the Federal Rules of Civil Procedure and Local Rules.**" (emphasis added) (citation omitted)). Nonetheless, the Court will consider the merits of Munt's Motion to Amend.

Munt cites two statutory provisions within the ADA, one regarding the statutory definition of disability and the other regarding state immunity, but does not cite to or otherwise explain the particular ADA provision on which his claim rests. Given Munt's status as a state prisoner, however, the Court understands his claim to be premised on 42 U.S.C. § 12132, which

provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." This protection afforded by the ADA extends to state prison inmates. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998).

> To establish an ADA claim, a plaintiff must
>
> demonstrate: (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the [prison's] services, programs, or activities, or was otherwise subjected to discrimination by the [prison]; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability.

*Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010). Qualified individuals with a disability are "entitled to meaningful access to" the benefits of the services, programs, or activities in state prison, and public entities are "required to make reasonable accommodations" when necessary to provide such access. *Mason v. Corr. Med. Servs., Inc.*, 559 F. 3d 880, 886 (8th Cir. 2009) (internal quotation marks omitted).

A "medical treatment decision[] . . . cannot form the basis of a claim under the . . . ADA." *Dinkins v. Corr. Med. Servs.*, 743 F.3d 633, 634 (8th Cir. 2014). In addition, the ADA does not authorize suits against individuals in their personal capacities, as the law "provides redress only from public entities." *Baribeau*, 596 F.3d at 484 (citing *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999)).

Presumably, Munt seeks to add an ADA claim against all defendants in this matter. *See* (Mot. to Amend at 2–3). Munt has sued all Defendants in their official and individual capacities. (Compl. Part C, ¶¶ 2–22). To the extent Munt seeks to add a claim against any defendant in their individual capacity, the Court denies the Motion to Amend as futile, as he cannot maintain such a claim under the ADA. *Baribeau*, 596 F.3d at 484 (citing *Alsbrook*, 184 F.3d at 1005 n.8).

Further, Defendants are correct that, to the extent Munt seeks to assert an ADA claim against any defendant based "on medical treatment decisions—including not properly diagnosing and treating" Munt's vision problems and/or headaches—his motion is futile because these allegations "cannot form the basis of a claim under the . . ADA." *Dinkins*, 743 F.3d at 634.

Liberally construing Munt's pleadings and reading together his original Complaint and the allegations in his Motion to Amend, Munt appears to raise an ADA claim based on matters other than medical treatment decisions. *See id.*; *see also Kiir v. N.D. Pub. Health*, No. 16-1336, ___ F. App'x ___, 2016 WL 3160984, at *1 (8th Cir. 2016) (per curiam) (unpublished) ("It appears to us that Kiir's . . . requests to amend were intended to supplement, rather than to supplant, the original complaint, with the result that the original complaint and two amendments should have been read together as constituting Kiir's complaint."); (Pl.'s Reply to Defs.' Mem. in Opp'n to Pl.'s Motion to Amend) [Doc. No 94 at 5] (Munt noting that his "proposed amendment is an addition, NOT a substitution").

The exhibits attached to the original Complaint contain a grievance form in which Munt states that his headaches due to glasses are becoming "increasingly debilitating" and that this "**affects [his] legal research** and all areas of life". (Offender Kite Form, Ex. 4, Attached to Compl.) [Doc. No. 1-2 at 4]. As noted, qualified individuals with a disability are "entitled to meaningful access to" the benefits of the services, programs, or activities in state prison, and public entities are "required to make reasonable accommodations" when necessary to provide such access. *Mason*, 559 F. 3d at 886. "The prison law library . . . is a service (and the use of it an activity), which prisoners are free to take or leave." *Pa. Dep't of Corr.*, 524 U.S. at 211; *see also Dinkins*, 743 F.3d at 634 (noting denial of services such as meals and housing by reason of disability can form the basis of an ADA claim). Defendants do not acknowledge this viable

6

theory of liability under the ADA, nor do they present a futility argument with respect to this aspect of Munt's allegations. *See* (Defs. Larson, Reid, Monio and Ebeling's Mem. in Opp'n to Mot. to Amend).[4]

Arguably, Munt's ADA allegations present a close call. But given the Court's obligation to construe *pro se* pleadings liberally, Rule 15's command that leave to amend should be freely granted as justice requires, and the principle that a motion to amend "should be denied on the merits only if it asserts clearly frivolous claims or defenses," *Becker v. Univ. of Neb. at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999) (internal quotation marks omitted), the Court grants the Motion to Amend only to the extent that Munt asserts an ADA claim based on an alleged denial of meaningful access to law library services due to his alleged disability. The allegations in Munt's Motion to Amend are hereby incorporated into Munt's Complaint and, together, the Complaint and Motion to Amend are deemed Munt's amended complaint. *See* D. Minn. L.R. 15.1 ("**Unless the court orders otherwise**, any amended pleading must be complete in itself and must not incorporate by reference any prior pleading." (emphasis added)).[5] Defendants shall respond to the amended complaint within **twenty-one (21) days** of the date of this Order and Report and Recommendation.

### B.     Third Motion for Preliminary Relief

#### 1.     Legal Standard

---

[4]     Defendants' only opposition to Munt's Motion to Amend is their argument that the amendments are futile due to (1) Munt's attempt to assert an ADA claim against defendants in their individual capacities and (2) Munt's attempt to assert an ADA claim based on medical treatment decisions. (*Id.* at 3–5).

[5]     The Court orders this incorporation instead of requiring Munt to file an amended complaint that is complete in itself in the interests of efficiency. Any future motion to amend the pleadings in this case must be accompanied by a proposed amended pleading as described in Local Rule 15.1(b), and the proposed amended pleading must be "complete in itself" without reference to any prior pleading, as is generally required by Local Rule 15.1(a).

A preliminary injunction is issued to "preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). "'[W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict upon other parties litigant; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest.'" *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Dataphase Sys. v. C.L. Sys.*, 640 F.2d 109, 114 (8th Cir. 1981)). "The burden of proving that a preliminary injunction should be issued rests entirely with the movant." *Id.*

A preliminary injunction is an extraordinary remedy, and "in the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Id.* (internal quotation marks omitted); *see also Wickner v. Larson*, Civil No. 09-940 (DWF/JJK), 2010 WL 98940, at *2–3 (D. Minn. Jan. 11, 2010) (Keyes, Mag. J., as adopted by Frank, J.) (noting that reluctance to grant injunctive relief "is particularly pronounced where a state prisoner seeks relief in federal court").

### 2.    Analysis

In his Third Motion for Preliminary Relief, Munt seeks the following relief:

> That the MN DOC be ordered to see that [Munt] receives further evaluation from an independent, outside, optical specialist with no connections to the MN DOC or its medical provider[s] for the purposes of attempting to diagnose the issue that causes him . . . debilitating effects when he wears glasses and to determine possible treatments.

(Third Mot. for Prelim. Relief at 3). He requests that the expense of this independent evaluation be placed as "an obligation" on his spending account, but that if the evaluation leads to a diagnosis, "reimbursement for these costs to be added to his relief." (*Id.*).

Munt argues that the Court should order this relief because, without it, he would be "denie[d] the . . . proof of his case" and because the relief he seeks is "essential for ensuring" that the Court has "all relevant facts in order to make a decision." (*Id.* at 2). Munt states that he "lack[s] the means to obtain any outside medical services or opinions. Thus the only ones available are those of the people who will be the defendants." (*Id.*); *see also* (*id.* at 1) (stating that Munt does not have counsel and is "dependent on the MN DOC for his medical care"). Munt states that he "has a life sentence and if the courts deny him relief the remainder of his life will be spent with seriously impaired vision and/or with severe headaches and debilitating mental effects. This was not part of [Munt's] sentence and the Defendants have made it clear he can expect no treatment." (*Id.* at 2).[6] Munt also states that the Court denied him preliminary relief "that would have granted him access to Federal District and Circuit Court cases, preventing him from seeking relevant precedent" for his current request for relief. (*Id.*).

---

[6]     In the Third Motion for Preliminary Relief, Munt states that the Court denied him preliminary relief that would have prevented his transfer from MCF-OPH to MCF-Stillwater and "other acts that have crippled" his "ability to perform discovery [and] collect depositions and affidavits" from individuals to establish "the effects glasses have on him and the effect this has had on his life," his ability to interview witnesses, his ability to "meaningfully research his pleadings, obstructing his ability to plead," as well as "other" unspecified "irreparable harm." (*Id.* at 1–2). It is not clear to the Court how these allegations regarding his inability to conduct research and his inability to gather evidence from witnesses about how the wearing of glasses affects his life relate to his current request for an independent medical evaluation. Moreover, to the extent Munt seeks to re-litigate his previous requests for preliminary relief, his arguments are improper, and Judge Nelson's September 2015 Order denying relief forecloses those arguments. *See* (Sept. 2015 Order at 16–19) (overruling Munt's objections to the July 2015 R&R's recommendation that his requests for preliminary relief related to his access to legal materials and alleged retaliation be denied because they were unrelated to the conduct or claims alleged in Munt's Complaint).

Defendants responded to the Third Motion for Preliminary Relief, arguing that Munt failed to show that he is entitled to preliminary relief under the *Dataphase* factors.[7] (Defs. Larson, Reid, Monio and Ebeling's Mem. in Opp'n to Third Mot. for Prelim. Relief, "Mem. in Opp'n") [Doc. No. 107 at 3–9]. Defendants argue that each *Dataphase* factor weighs against ordering the preliminary injunctive relief Munt seeks. (*Id.* at 4–9). With respect to the balance of harms, Defendants note that the "DOC has implemented a policy that allows offenders 'access to health evaluation other than department provided health care, if the offender is willing and able to assume all financial responsibility associated with the request.'" (*Id.* at 5) (quoting Policy 500.135, Ex. 4, Attached to Second Aff. of David Paulson, MD, MBA. [Doc. No. 108-1 at 27–28]). The policy requires that the financial resources necessary for outside health care be available before an appointment for such care is made. (*Id.*). Defendants contend that Munt's requested relief, which would provide Munt with outside care before he has the financial resources available, is inconsistent with this policy. (*Id.*) (noting that Munt asks that the cost of any medical evaluation be placed as "an obligation" on his "spending account"). Thus, Defendants argue, granting Munt relief would create "an arbitrary exception to DOC policy," "interfere with the DOC's ability to uniformly enforce its policies," and lead to other special requests from other inmates. (*Id.* at 6).

Munt filed a lengthy reply, arguing for the first time that he is entitled to relief under *Dataphase*. (Pl.'s Reply to Defs.' Mem. in Opp'n to Pl.'s Third Mot. for Prelim. Relief, "Reply") [Doc. No. 110 at 7–17]. With respect to his likelihood of success on the merits, Munt argued that he is likely to succeed on the merits of his ADA claim (though his Motion to Amend to add this

_____

[7]      The Unnamed Defendants have not responded to the Third Motion for Preliminary Relief. For the same reasons articulated by Judge Nelson in her September 2015 Order, Munt's current request for preliminary injunctive relief with respect to the Unnamed Defendants is moot. (Sept. 2015 Order at 33–35).

claim was pending), his Eighth Amendment claim, and a claim based on *Turner v. Safley*, 482

U.S. 78 (1987).[8]

Having considered the parties' submissions, the Court recommends that Munt's Third

Motion for Preliminary Relief be denied. This Court's July 2015 R&R and Judge Nelson's

September 2015 Order thoroughly discuss the *Dataphase* standard, make clear that Munt bears

the burden to establish that he is entitled to preliminary relief, and address the importance of a

moving parties' obligation to demonstrate a likelihood of success on the merits. (July 2015 R&R

at 18–20); (Sept. 2015 Order at 12–13). The parties' submissions related to the July 2015 R&R

and the September 2015 Order also address, at length, the *Dataphase* standard that applies to

motions for preliminary relief. *See, e.g.*, (Second Mot. for Prelim. Relief at 2) (Munt discussing

factors to be considered when evaluating a request for preliminary relief); (Defs. Larson, Reid,

Monio, and Ebeling's Mem. in Opp'n to Second Mot. for Prelim. Relief) [Doc. No. 35 at 3, 5–

18] (Defendants addressing relevant factors); (Pl.'s Reply to Defs.' Mem. in Opp'n to Second

Mot. for Prelim. Relief) [Doc. No. 59 at 6–22] (Munt addressing relevant factors). Yet, in

---

[8]        *Turner* involves consideration of four factors to determine "whether a prison regulation [restricting constitutional rights] is reasonably related to a legitimate penological interest." *Roe v. Crawford*, 514 F.3d 789, 794–95 (8th Cir. 2008) (citing *Turner*, 482 U.S. at 89–91). Under *Turner*, courts consider "(1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) the existence, or absence of obvious, easy alternatives . . . that fully accommodate[] the prisoner's rights at *de minimis* cost to valid penological interests." *Id.* (omission in original) (internal quotation marks omitted). Munt asserts that there is no legitimate penological interest justifying a DOC policy restricting the use of contact lenses and suggests that other factors are irrelevant or demonstrate that he is likely to succeed on the merits of a *Turner* claim. (Reply at 15–16); *see also* (Sept. 2015 Order at 4 n.4) (discussing relevant policy).

moving for a third time for preliminary relief, Munt did not address the *Dataphase* standard, instead addressing the controlling legal standard for the first time on reply.[9]

Generally, federal courts do not consider arguments made for the first time in a reply brief. *Bruska v. Bunting Bearings, LLC*, No. 13-cv-3076 (PJS/FLN), 2015 WL 7253730, at *2 n.6 (D. Minn. Nov. 17, 2015) (Schiltz, J.) (citing *Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd.*, 491 F. Supp. 2d 871, 878 (D. Minn. 2007) (Schiltz, J.) ("[F]ederal courts do not, as a rule, entertain arguments made by a party for the first time in a reply brief.")). Munt asserts that this Court's previous denial of preliminary relief has "prevent[d] him from seeking relevant precedent" for his current request for relief." (Third Mot. for Prelim. Relief). But Munt's assertion that he lacked relevant precedent cannot be viewed in a vacuum. Given the extensive previous discussion of the *Dataphase* factors that has already occurred in this matter, there is no doubt that Munt was aware of the *Dataphase* standard, his burden thereunder, as well as the importance of whether he demonstrated a likelihood of success on the merits.

As noted, Munt's Third Motion for Preliminary Relief addresses, at most, the issue of irreparable harm, but does not address any other *Dataphase* factor. Indeed, it is not clear from the motion what claim—and the likelihood of success thereon—Munt relies on in pursuing his current request for preliminary relief. *See generally* (Third Mot. for Prelim. Relief); *see also* (Mem. in Opp'n at 6) (addressing Munt's likelihood of success on the merits of his Eighth Amendment claim); (Reply at 11–16) (Munt arguing for first time on reply likelihood of success on the merits of his Eight Amendment claim, a *Turner* challenge to the DOC's contacts policy, and an ADA claim). Munt's arguments under the *Dataphase* factors that were made for the first

---

[9]    Liberally construed, the Court understands the arguments in Munt's Third Motion for Preliminary Relief as addressing the irreparable harm factor, but it is plain that Munt did not address any other *Dataphase* factor in his motion, including the highly important factor of his likelihood of success on the merits. *See* (Third Mot. for Prelim. Relief).

time on reply will not be considered by the Court, and, given the minimal argument that is properly before the Court, Munt has failed to carry his burden of establishing that he is entitled to the extraordinary remedy of preliminary injunctive relief. *See Goff*, 60 F.3d at 520 ("The burden of proving that a preliminary injunction should be issued rests entirely with the movant."); *Wickner*, 2010 WL 98940, at *2–3 ("'[A]n injunction cannot issue if there is no chance of success on the merits.'" (quoting *Mid-Am. Real Estate Co. v. Iowa Realty Co.*, 406 F.3d 969, 972 (8th Cir. 2005))).

Even if the Court were to consider Munt's arguments on reply, Munt would not be entitled to preliminary relief. For reasons similar to those addressed in Judge Nelson's order, Munt has not carried his burden to demonstrate an entitlement to preliminary relief under *Dataphase*. First, the Court has already determined that Munt has failed to demonstrate a likelihood of success on the merits with respect to his Eighth Amendment claim, and nothing submitted to the Court in conjunction with Munt's Third Motion for Preliminary warrants a new or different analysis. *See* (Sept. 2015 Order at 23–26). Munt also failed to demonstrate a likelihood of success on the merits based on a *Turner* challenge to the DOC's policy regarding contacts, as these arguments are conclusory and incomplete. *See* (Reply at 15–16).[10]

As for irreparable harm, Munt's arguments in his Third Motion for Preliminary Relief are fundamentally the same as those rejected with respect to Munt's previous motions for preliminary relief. *Compare* (Reply at 7–9) (conclusory allegations that Munt has established irreparable harm because the relief he seeks is the "only way to prove" deliberate indifference, he

---

[10]     To the extent Munt seeks to establish a likelihood of success on the merits based on an ADA claim, his arguments are also conclusory. *See* (Reply at 11–12). Moreover, the Court is not aware of any authority that would permit the Court to grant a preliminary injunction based on the likelihood of success on the merits of a claim that was, at the time the motion for preliminary relief was filed, the subject of a pending motion to amend the complaint.

"suffers frequent injuries as a result of his poor vision at [MCF-Stillwater] and that it is "only a matter of time before [he] suffers more serious harm," and because, if he does not obtain an independent evaluation, he will be "suffering through [the headache and/or vision] problems for the rest of his life") *with* (Sept. 2015 Order at 26–28, 28 n.19) (noting that Munt argued that he faced various harms and injuries at MCF-Stillwater, concluding that "[t]he irreparable harm [Munt] faces related to his headaches and eyewear is speculative at best," and further noting that Munt provided no evidence of injury and provided only conclusory allegations "to support the idea that such injuries are likely to occur again").[11]

The same can be said for Munt's argument regarding the balance of harms. *Compare* (Reply at 8–11) (arguing that balance of harms supports preliminary injunctive relief because the court need not defer to correction officials' judgment regarding the restrictions imposed on inmates, the DOC will not be harmed if its policies are not uniformly enforced because the DOC already fails to uniformly enforce its policies, any deviation from the DOC policy requiring finances to be available before outside care is provided is inconsequential because Munt "will . . . end up paying the entire" cost of care and the DOC prevents him from earning money to "pay up front" for outside medical care) *with* (Sept. 2015 Order at 29–31) (rejecting Munt's argument that "DOC policies . . . do not constitute an interest which can be harmed because those policies are not consistently applied," noting that courts should give substantial weight to

---

[11]     The Court notes that Munt's irreparable harm argument also appears to be premised on his assertion that he will be irreparably harmed if denied an independent medical examination because the "Court and Defendants have frequently criticized [Munt] for his failure to produce 'objective' medical evidence of his condition." (Reply at 7). Munt does not cite to any document or otherwise explain the context in which such criticism was leveled. Moreover, his assertion is in direct contradiction to the September 2015 Order. In the order, Judge Nelson overruled Munt's objection that the July 2015 R&R erroneously required him to provide competent medical evidence to demonstrate irreparable harm. (Sept. 2015 Order at 26, 26 n.17) ("The Magistrate Judge never required that [Munt] produce 'competent medical evidence' to establish irreparable harm. Nor has this Court held [Munt] to such a standard." (citation omitted)).

harm caused by allowing prisoners to "bypass correctional facility policies," and reasoning that Munt offered only "his alleged personal experience" with respect to the DOC's failure to uniformly enforce its policies).[12]

Likewise, Munt's current arguments regarding the public interest *Dataphase* factor were rejected previously. *Compare* (Reply at 16–17) (arguing that the "interest of the public is always in upholding the Constitution," that there is no public interest in uniform enforcement of correctional policy, and that there is no public interest in denying him a diagnosis or medical care) *with* (Sept. 2015 Order at 38–39) (rejecting Munt's argument that the "interest of the public is always in upholding the Constitution," noting the public interest in effective prison operations, and reasoning that because Munt failed to demonstrate likelihood of success on the merits, the Court could not conclude his constitutional rights were violated, such that the public interest did not weigh in Munt's favor) *and* (*id.* at 28) (noting that Munt "has never alleged that he is not receiving medical care, only that he is not receiving the diagnosis and associated treatment he desires").

---

[12]    To the extent Munt intends to argue that the balance of harms tips in his favor because he asserts harm due to the violation of his constitutional rights while Defendants discuss harm incurred due to deviation from correctional policy, his argument has also been rejected. *Compare* (Reply at 10) (stating that the "the Constitution is the Supreme Law" and is "superior to DOC Policy (which does not even rise to the level of law)") *with* (Sept. 2015 Order at 30) ("[T]here is no case law to support [Munt's] contention that his constitutional rights necessarily outweigh the DOC's policy interests.").
       Furthermore, Munt cites *Holt v. Hobbs*, 135 S. Ct. 853 (2015), to suggest that Defendants' allegation of harm posed by deviation from DOC policy should be rejected because the "Supreme Court has rejected the argument 'If I make an exception for you, I'll have to make one for everybody, so no exceptions.'" (Reply at 11). Once again, Judge Nelson's previous analysis explains why Munt's argument is unavailing: "*Holt* is entirely distinguishable from and inapplicable to this case. *Holt* dealt with a prisoner's religious accommodation claim under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). *Holt*, 135 S. Ct. at 859. Thus, *Holt's* analysis is necessarily limited to religious exercise claims in the prison context. [Munt] made no claims regarding his religious exercise under the First Amendment or RLUIPA." (Sept. 2015 Order at 29 n.20).

For all of the foregoing reasons, the Court recommends that Munt's Third Motion for Preliminary Relief be denied.

### C.     Motion to Appoint Counsel

Once a *pro se* litigant is permitted to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(1) provides that a "court may request an attorney to represent any person unable to afford counsel." Litigants in civil cases, however, do not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013) (citing *Edgington v. Mo. Dep't of Corr.*, 52 F.3d 777, 780 (8th Cir. 1995), *abrogated on other grounds*, *Doe v. Cassel*, 403 F.3d 986, 989 (8th Cir. 2005)). Rather, appointing counsel under § 1915(e) is discretionary. *See Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984). "A district court is to decide whether the plaintiff and the court will substantially benefit from the appointment of counsel." *Plummer v. Grimes*, 87 F.3d 1032, 1033 (8th Cir. 1996). The decision to appoint counsel involves weighing "the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments." *Phillips v. Jasper County Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

Munt seeks appointment of counsel because: (1) he lacks paper and funds to purchase paper, pens, and envelopes and to "pay for copies"; (2) his transfer from MCF-OPH to MCF-Stillwater "eliminated" his "access to most witnesses (guards and inmates) who witnessed both the effect the glasses had on him and the changes to his lifestyle since the loss of his contacts"; (3) he has "no means by which he can obtain independent medical testimony as he is completely reliant on the DOC for his health care"; (4) he has "less law library time" at MCF-Stillwater in that he gets "0-7.5 hours per week," yet has "more actions demanding [his] time"; (5) he has "no ability to

search Federal District or Circuit cases"; (6) the system he must use to request case law involves

a significant turn-around time and is therefore inadequate "even when a considerable extension

has been granted"; (7) he does not have access to e-filing, which causes his filings to be

untimely; and (8) he must "use his limited law library time and resources (money, paper, pens,

envelopes) for his federal habeas case . . . , a state habeas case . . . , and a state post-conviction

petition and [a] second 1983 suit." (Mot. to Appoint Counsel at 1–3). Munt further states that this

Court's failure to grant his previous requests for preliminary relief has "crippled" his "ability to

pursue redress for violation of his Constitutional rights" because he "has only 35 pages of paper,

2 standard envelopes, 1 manuscript envelope, and 2 small flex pens available each week." (*Id.* at

3); *see also* (*id.* at 4) (stating that Munt no longer has sufficient time and resources to "produce

adequately formed pleadings"). Finally Munt states that he will be "unable to see at trial," cannot

"effectively utilize[]" his law library time, and does not have "any practical trial experience or

training." (*Id.* at 4).

      The Court first notes, as it noted in its July 2015 R&R,

> Munt has been an active litigant. Munt timely paid his initial partial filing fee and
> filed a motion to appoint counsel, two motions for preliminary relief, a reply to
> Defendants' answer, a motion for extension of time, three reply briefs, and two
> motions for discovery. *See* [Doc. Nos. 3, 6, 9, 15, 25, 26, 54, 58, 59, 66, 69].
> Several of these documents include appendices or other supplemental materials.
> *See* [Doc. Nos. 4, 7, 60]. Munt has also filed numerous letters to the Court and the
> Clerk's Office. *See* [Doc. Nos. 13, 22, 27, 62, 64, 65, 72, 73]. In addition, while
> Munt complains of insufficient access to federal case law, his briefing and letters
> refer to appropriate legal standards and, at times, cite to and quote extensively
> from federal authority. *See, e.g.*, (Second Mot. for Prelim. Relief at 2) (accurately
> stating factors relevant to consideration of request for preliminary injunction);
> (Reply Re: First Mot. for Prelim. Relief at 10–11) (including citations to and
> quotations of various federal cases); (July 10 Letter at 1) (arguing that his
> "transfer would not have happened 'but for' [his] exercise of [his] protected
> rights").

While the above observations were made in the context of Munt's earlier motion for preliminary relief, these facts bear on Munt's ability to articulate his claims and communicate with the Court. *See Phillips*, 437 F.3d at 794 (noting the Court's should consider an indigent person's ability to present his claims when evaluating a request for counsel). Since the July 2015 R&R, and despite Munt's allegations of limited time and other resources, Munt has been an active litigant, filing objections to the R&R, motions, and memoranda. *See, e.g.*, (Pl.'s Objs. to Magistrate's R&R Regarding Pl.'s Reqs. for Prelim. Relief) [Doc. No. 76].

Munt's request for counsel is based in part on Munt's assertions that he lacks paper and similar supplies and lacks sufficient law library time. But Munt has access to "35 pages of paper, 2 standard envelopes, 1 manuscript envelope, and 2 small flex pens available each week" and up to seven and a half hours of law library time per week.[13] (Mot. to Appoint Counsel at 2–3). Munt's concerns that these resources are insufficient, and therefore require appointment of counsel, are premised on the fact that he is pursuing other lawsuits in addition to this one that require his library time and resources. *See* (*id.* at 1–3). The Court is not persuaded that Munt's pursuit of other lawsuits warrants appointment of counsel in this case. In addition, to the extent Munt's request for counsel is based on delays caused by his lack of access to electronic filing and delays in obtaining relevant case law, the Court is not inclined to appoint counsel when Munt has not asked the Court for any extensions of time since the Court earlier advised Munt to seek extensions as needed if faced with problematic time constraints or delays. *See* (July 2015 R&R at 38). In addition, to the extent Munt's request for counsel is based on issues related to trial, his request is premature.

---

[13]    The Court acknowledges that Munt states that his law library time ranges from "0-7.5 hours per week," but Munt does not explain how often and under what circumstances he has zero hours of law library time per week. *See* (Mot. to Appoint Counsel at 2).

18

The Court is concerned about Munt's allegations that suggest a limited ability to investigate the facts and secure discovery related to his claims. *See* (Mot. to Appoint Counsel at 1–2); *Phillips*, 437 F.3d at 794 (noting that courts should consider "the ability of the indigent person to investigate the facts" when considering whether to appoint counsel). Munt's allegations in this regard, however, are rather speculative. For instance, Munt states that his transfer from MCF-OPH to MCF-Stillwater "eliminated" his access to witnesses, but he has not explained whether he has in fact tried to obtain information from such witnesses and, if so, why those efforts were unsuccessful or insufficient.

In light of the above, the Court denies Munt's Motion to Appoint Counsel without prejudice. Munt and Defendants shall each file a status report with the Court within 21 days of their receipt of this Order that addresses the status of discovery in this case, including a summary of the discovery efforts undertaken thus far and specific details, if any, regarding difficulties that Munt's incarceration at MCF-Stillwater poses to his ability to obtain discovery. The Court may reevaluate Munt's request for counsel based on those submissions.

## III.   CONCLUSION AND RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.   Plaintiff Joel Marvin Munt's ("Munt") Request for Reconsideration of Motion to Appoint Counsel [Doc. No. 89] is **DENIED without prejudice**; and

2.   Munt's Motion to Amend Complaint [Doc. No. 91] is **GRANTED in part** and **DENIED in part** as provided in this Order.

Furthermore, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Munt's Third Motion for Preliminary Relief [Doc. No. 96] be **DENIED**.

Dated: July 14, 2016

s/Steven E. Rau
STEVEN E. RAU
United States Magistrate Judge

**Notice**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.