# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Joel Marvin Munt,                                    Civil No. 15-582 (SRN/SER)

           Plaintiff,

      v.                                              **MEMORANDUM OPINION**
                                                               **AND ORDER**

Nanette Larson, Kathy Reid, Shelly
Monio, Kim Ebeling, Doctors #1-6,
Health Services Workers #1-6, Opticians
#1-4, and RN#1,

          Defendants.

---

Joel Marvin Munt, *pro se*, 236179, MCF–Stillwater, 970 Pickett St. N., Bayport, MN 55003

Timothy S. Christensen, Minnesota Attorney General's Office, 445 Minnesota St., Suite 900, St. Paul, MN 55101, for Defendants Larson, Reid, Monio, and Ebeling

---

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Order and Report and Recommendation ("Order & R&R") of Magistrate Judge Steven E. Rau dated July 14, 2016 [Doc. No. 122]. In the Order & R&R, Magistrate Judge Rau denied in part and granted in part Plaintiff Joel Marvin Munt's Motion to Amend Complaint ("Motion to Amend") [Doc. No. 91], denied without prejudice Plaintiff's Request for Reconsideration of Motion to Appoint Counsel ("Motion to Appoint Counsel") [Doc. No. 89], and recommended that this Court deny Plaintiff's Third

Motion for Preliminary Relief [Doc. No. 96]. Plaintiff filed timely objections to the Order & R&R ("Objections") [Doc. No. 123].

For the reasons set forth below, this Court overrules Plaintiff's Objections in part, and sustains them in part, affirms the rulings in the Order & R&R, and adopts the magistrate judge's recommendation.

## I.   BACKGROUND

### A.   Factual Background

Plaintiff is an inmate currently incarcerated at the Minnesota Correctional Facility ("MCF")-Stillwater. (R&R of 7/30/15 at 2 [Doc. No. 74].) However, for most of the time relevant to this matter, he was incarcerated at MCF-Oak Park Heights, where he arrived in April 2012. (See id. at 2, 17-18.) Defendants Nanette Larson ("Larson"), Kathy Reid ("Reid"), Shelly Monio ("Monio"), and Kim Ebeling ("Ebeling") (collectively, "Defendants") are all personnel with the Minnesota Department of Corrections ("DOC"). (Id. at 2.) Larson is the Director of Health Services for the DOC. (Id.) Reid is the Health Services Administrator at MCF-Oak Park Heights. (Id.) Ebeling is a Grievance Coordinator at the DOC's "Central Office" while Monio holds the same title at MCF-Oak Park Heights.[1] (Id.)

In his Complaint, brought pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendants and Unnamed Defendants violated his Eighth Amendment rights. (Compl. ¶¶

---

[1] Plaintiff also listed several unnamed doctors, DOC Health Service workers, opticians, and an "RN" as defendants. Collectively, these persons are referred to as "Unnamed Defendants."

A, E.1-23 [Doc. No. 1].)  Plaintiff alleges that upon being transferred to MCF-Oak Park Heights, his spare contact lenses were confiscated pursuant to a DOC policy.  (Id. at ¶ D.3.) As previously noted in this Court's September 23, 2015 Order, the DOC policy states: "The [DOC] provides adaptive equipment [such as contact lenses] to an offender when the offender's health or functional ability would otherwise be adversely affected, as determined by a designated prescribing authority or nursing staff and approved by the facility health services administrator/designee."  (Order of 9/23/15 at 4, n.4 [Doc. No. 87]) (quoting DOC Policy 500.150).  The policy further provides, "Contact lenses are not on the DOC allowable property list and therefore a medical authorization is needed for an offender to have in his/her possession.  Authorizations are limited to medical necessity as deemed by the prescribing authority."  (Id.)  Munt contends that the use of contact lenses alleviates severe headaches; he asserts that the headaches are associated with wearing eyeglasses.  (Compl. ¶ D.2.)

Plaintiff informed DOC personnel "of the problem he experienced when wearing glasses." (Compl. ¶ D.4.)  Plaintiff met with an optometrist in April 2012 and received new glasses the following day.  (Order of 9/23/15 at 3.)   Over the next several years, Plaintiff filed various internal complaints regarding headaches and the DOC made numerous attempts to address these concerns.  (Id.)  Following an August 2012 visit with a doctor related to his "multiple-month history of headaches," Munt was diagnosed with a "potential migraine variant," was given a suppressive medication (Dilacor XR), and was told to use Tylenol as needed, and to inform the medical clinic if his headaches persisted.  (Id.)

Two months after this visit, Plaintiff again requested contacts, but was informed that

while an eye doctor would review his request "contacts were not allowed." (Compl. ¶ D.7.) In November 2012, Plaintiff received a letter from Defendant Larson. (Ex. 2 to Compl.) Larson acknowledged Plaintiff's request for contacts and his allegation that his medical condition was being ignored by the refusal to provide him with contacts. (Id.) However, Larson noted, "after reviewing your medical records, your history of headaches and their connection with eyeglasses is far from established to a degree that would support advocacy of your position." (Id.) Plaintiff was told to work with Health Services to "objectively address" his headaches. (Id.)

In April 2013, Plaintiff again complained of headaches related to his glasses and requested contacts. (Order of 9/23/15 at 4.)  No reviewing medical personnel determined that Plaintiff "needed another examination" at that time. (Id.) In addition, a nurse informed Plaintiff of the risks of contacts in prison due to "chemical use" and the possibility of infection related to the confined living space. (Id. at 4-5.)

In August 2013, Plaintiff again saw a physician concerning his complaint of headaches, but did not mention his belief that the headaches were caused by glasses. (Id. at 5.)  He was treated for "headaches, nonspecified" and "ethmoid sinusitis and maxillary sinusitis," after which Munt reported much improvement.  (Id.)  For nearly a year after this treatment, Plaintiff did not complain of headaches related to his glasses.  (Id.)

In August 2014, Plaintiff again began complaining of headaches which he attributed to the use of glasses.  (Id.)  Various medical personnel examined Plaintiff, but none found a medical connection between his headaches and eyewear, nor did they find contacts were

medically necessary.  (Id.)  Plaintiff also complained regarding the DOC policy related to contacts and the fact that no alternative to contacts had been investigated.  (Id.)  In response, DOC personnel repeatedly informed Plaintiff that he was not allowed contacts because DOC Policy 500.150 only provides for them when medically necessary (i.e., when a doctor prescribed contacts as medically necessary).  (Id.)  As noted in the September 2015 Order, no objective medical evidence connects Plaintiff's glasses to his headaches, nor is there any indication that Plaintiff has "an objective abnormality" causing the headaches.  (Id.)

In December 2014, Plaintiff filed a formal grievance related to his headaches and lack of contacts.  (Id. at 6.)  Shortly thereafter, Defendant Monio returned the grievance indicating that it was untimely and that some of Plaintiff's complaints had been addressed.  (Id.) Plaintiff filed a grievance appeal challenging these determinations.  (Id.)  Defendant Ebeling returned Plaintiff's appeal because he failed to attach the required documentation.  (Id.)

### B.    Procedural Background

Based on the aforementioned facts, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  (Compl. at ¶¶ E.2, E.16, E.20, E.21.)   Plaintiff emphasizes that the heart of his claims relate to Defendants' failure "to address a medical need rather than a particular solution [presumably, contacts] to it."  (Compl. at p. 16.)  Plaintiff also alleges that Defendants improperly interfered with his attempts to utilize the grievance process, (id.), which he alleges violates his First Amendment, due process, and equal protection rights.  (Compl. at ¶¶ E.2, E.16, E.20, E.21.)

Plaintiff previously filed two Motions for Preliminary Relief. (Mot. for Preliminary Relief [Doc. No. 6]; Second Mot. for Preliminary Relief [Doc. No. 25].) In a July 2015 R&R, the magistrate judge recommended denying both motions. (R&R of 7/30/15.) This Court adopted in part the July 2015 R&R and denied both of Plaintiff's Motions for Preliminary Relief. (See Order of 9/23/15.)

After the denial of Plaintiff's first two Motions for Preliminary Relief, Plaintiff subsequently filed the instant underlying motions: the Motion to Appoint Counsel, the Motion to Amend, and the Third Motion for Preliminary Relief. Munt's Motion to Appoint Counsel requests reconsideration of the Court's prior decision denying the appointment of legal counsel in this action. (Mot. to Appoint Counsel at 1.) In his Motion to Amend, Munt seeks to add a claim under the Americans with Disabilities Act ("ADA") (Mot. to Amend at 1-3), and in his Third Motion for Preliminary Relief, Munt requests an order requiring the DOC to ensure that he receives further evaluation from an independent, outside optical specialist with no connections to the DOC in order to attempt to diagnose the cause of his headaches. (Third Mot. for Preliminary Relief at 3.)

## C.    The Magistrate Judge's Findings and Recommendations

As to Plaintiff's motion to add a claim under the ADA, the magistrate judge first found that Plaintiff's motion failed to comport with the procedural requirements, as he did not provide a proposed amended pleading, nor did he file a memorandum in support of his motion. (Order & R&R at 4.) Nevertheless, the magistrate judge considered Plaintiff's argument on the merits. (Id.) He found that to the extent Plaintiff's proposed claim was

6

based on medical treatment decisions, any such amendment would be futile because a medical treatment claim cannot be maintained under the ADA.  (Id. at 5-6.)  Similarly, to the extent that Plaintiff sought to add a claim against Defendants in their individual capacities, Magistrate Judge Rau also found such a claim would be futile, as the ADA does not authorize suits against individuals. (Id.)  Magistrate Judge Rau therefore denied in part Plaintiff's motion to amend as to these theories of liability.  (Id.)  However, the magistrate judge found that Plaintiff plausibly alleged an ADA claim based on Plaintiff's assertion that his headaches affected his ability to conduct legal research.  (Id. at 6.)  Based on this single, limited theory of liability—Plaintiff's alleged denial of meaningful access to law library services due to his alleged disability—supported by an exhibit attached to the Complaint, Magistrate Judge Rau granted in part Plaintiff's Motion to Amend. (Id. at 7.)

As to Plaintiff's Third Motion for Preliminary Relief, the magistrate judge found that Plaintiff failed to establish the requisite elements for such relief.  (Id. at 13–15.) Specifically, Magistrate Judge Rau determined that Plaintiff did not demonstrate a likelihood of success on the merits and that his arguments regarding irreparable harm, the balance of harms, and the public interest were fundamentally the same as those that had been previously rejected by this Court.  (Id.)  Pursuant to these findings, the magistrate judge recommended the denial of Plaintiff's Third Motion for Preliminary Relief.  (Id. at 16.)

Finally, regarding Plaintiff's Motion to Appoint Counsel, the magistrate judge noted that the appointment of counsel in civil litigation is limited and discretionary. (Id.) Magistrate Judge Rau found Plaintiff's arguments for appointment of counsel unpersuasive,

but denied the motion without prejudice.  (Id. at 19.)

## II.    DISCUSSION

### A.    Motion to Amend

Plaintiff asserts several objections related to his Motion to Amend which the Court groups into general categories, both procedural and substantive.  In Munt's first ground of procedural objections, he argues that the magistrate judge "should have issued [a] Recommendation rather than [an] Order on [an] issue where he attempts to dispose of part of Plaintiff's claim." (Pl.'s Obj. at 1.)  The Court sustains this ground of objection.  Before the magistrate judge were three motions; he issued a single decision on the motions, ruling on two of the motions (the Motion to Amend and the Motion to Appoint Counsel) in the form of an order and on one of the motions (the Motion for Preliminary Relief) in the form of a report and recommendation.  (Order & R&R at 19-20.)  Ordinarily, a district court reviews a magistrate judge's order on a nondispositive matter under an "extremely deferential" clearly erroneous or contrary to law standard.  Reko v. Creative Promotions, Inc., 70 F. Supp.2d 1005, 1007 (D. Minn. 1999); see also 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a).  However, when a motion to amend is denied as futile, as was Munt's motion, in part, it is reviewed de novo.  See United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa, 269 F.3d 932, 936 (8th Cir. 2001) (noting that the district court's denial of leave to amend based on futility was reviewed de novo on appeal).  Munt is therefore correct, that because the motion was partly denied on the basis of futility, the ruling on the Motion to Amend should have taken the form of a recommendation.  As a practical

8

matter, however, the distinction between a ruling in the form of an order or a report and recommendation is primarily relevant only as it relates to the standard of review here on appeal, i.e., how much deference this Court must give to the underlying ruling. Because the Court agrees that the ruling on Munt's Motion to Amend should have taken the form of a report and recommendation because the motion was denied, in part, on futility grounds, this Court applies a de novo standard of review.

Plaintiff also argues that he is not required to plead legal theories in his Complaint, apparently believing that the magistrate judge improperly required him to do so. (Pl.'s Obj. at 1.) Certainly, it is the "well-pleaded facts alleged in the complaint, not the legal theories of recovery" that a court examines when determining the plausibility of a claim. See Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d 843, 848 (8th Cir. 2014) (discussing standard of review on a motion to dismiss). But the factual allegations in Plaintiff's pleadings are precisely what Magistrate Judge Rau considered here. He did not deny Munt's motion based on any failure to properly plead a legal theory. This Court overrules any objection on this basis.

In addition, Plaintiff objects to Magistrate Judge Rau's comments on Plaintiff's failure to conform to certain procedural requirements. (Pl.'s Obj. at 2.) Plaintiff correctly observes that "a pro se complaint, however inartfully pleaded, [is held] to less stringent standards than formal pleadings drafted by lawyers," Jackson v. Nixon, 747 F.3d 537, 541 (8th Cir. 2014), and that pro se complaints are to be construed liberally. Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). Despite the more liberal pleading standard afforded to pro se litigants, pro

se litigants are not excused from complying with procedural rules, however.  <u>Brown v. Frey</u>,

806 F.2d 801, 804 (8th Cir. 1986).  Plaintiff did not comply with the procedural requirements

of providing a proposed amended pleading, nor did he file a memorandum in support of his

motion, in violation of Local Rules 7.1(b)(1) and 15.1.  (Order & R&R at 4.)  The magistrate

judge properly identified Munt's procedural failings.  Moreover, despite Plaintiff's

noncompliance with the rules, the magistrate judge nevertheless considered the merits of the

Motion to Amend.  Munt's objection on this procedural issue is therefore overruled as moot.

As to Munt's substantive objections, he argues that Magistrate Judge Rau

misconstrued his ADA claim and erroneously narrowed it to a claim based on the deprivation

of meaningful access to the prison law library.  (Pl.'s Obj. at 2-3.)  He claims that this was

an improper ruling, given that pro se pleadings should be given liberal construction. (<u>Id.</u>)

Plaintiff emphasizes that he has two disabilities as defined by 42 U.S.C. § 12102–his limited

vision and the debilitating effects glasses have on him–and that these disabilities affect his

ability to see, perform manual tasks, work, learn, concentrate, and sleep.  (<u>Id.</u>)

While leave to amend complaints should be freely given "when justice so requires,"

Fed. R. Civ. P. 15(a)(2), "parties do not have an absolute right to amend their pleadings."

<u>Sherman v. Winco Fireworks, Inc.</u>, 532 F.3d 709, 715 (8th Cir. 2008).  It is well established

that "futility is a valid basis for denying leave to amend."   <u>United States. ex rel. Roop v.</u>

<u>Hypoguard USA, Inc.</u>, 559 F.3d 818, 822 (8th Cir. 2009); <u>see</u> <u>also</u> <u>Sherman</u>, 532 F.3d at 715

("A district court appropriately denies the movant leave to amend if 'there are compelling

reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'"). "The denial of leave to amend based on futility means that the court found that the amended complaint failed to state a claim . . . ." Gaudineer & Comito, 269 F.3d at 936.

Of the three titles of the ADA addressing discrimination against the disabled in different contexts, Munt failed to identify the particular provision upon which he bases his proposed ADA claim. The Court agrees with the magistrate judge that Munt's only possible ADA theory is premised on Title II of the ADA, 41 U.S.C. § 12132.[2] (Order & R&R at 4-5.) Under this provision, which is applicable to state prison inmates, Penn. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998), "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 41 U.S.C. § 12132.

To assert a valid ADA claim, Plaintiff needs to demonstrate that: "(1) he is a person with a disability as defined by statute; (2) he is otherwise qualified for the benefit in question; and (3) he was excluded from the benefit due to discrimination based on disability." Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999) (citations omitted). Regarding the

---

[2] Title I of the ADA prohibits employment discrimination, 42 U.S.C. § 12112, and Title III prohibits discrimination by public accommodations involved in interstate commerce, such as hotels, restaurants, and privately owned transportation services, 42 U.S.C. §§ 12182, 12184. See Gorman v. Bartch, 152 F.3d 907, 911 (8th Cir. 1998). Because Plaintiff is not an employee of Defendants, Title I is inapplicable. Likewise, because state prisons are not private entities providing public accommodations, Title III is inapplicable, leaving only Title II.

first element, the Court will assume without deciding at this time, that Munt is a person with a disability as defined by statute.   Plaintiff generally alleges in his Motion to Amend that his purported disability substantially limits his ability to see, perform manual tasks, work, learn, concentrate, think, communicate, and sleep.  (Mot. to Amend at 1.)   Regarding the second element, the Court will likewise assume that, as an inmate, Munt is otherwise qualified for the use of the prison law library.

As to the third element, Plaintiff did not point to the denial of any specific service, program, or activity.  The magistrate judge scoured Plaintiff's previous pleading and exhibits for a viable claim, finding, in one of Plaintiff's internal grievance forms attached to his original Complaint, that Plaintiff alleged his headaches were affecting his legal research. (Order & R&R at 6.)   The prison law library is a service, the denial of which could support a valid ADA claim.  Yeskey, 524 U.S. at 211.  Particularly in light of Munt's pro se status, the magistrate judge generously construed Plaintiff's proposed ADA claim to allege the denial of the prison law library.  That is the only allegation, found in an exhibit to the Complaint, that even remotely relates to the denial of a specific service.  Contrary to Plaintiff's Objections, the magistrate judge did not erroneously narrow Plaintiff's ADA claim. Rather, the magistrate judge read Plaintiff's Complaint, exhibits to the Complaint, and the allegations in his Motion to Amend together, giving them a broad and liberal construction, in order to find a plausible ADA claim.  (Order & R&R at 6.)  The magistrate judge "turned to a line in a grievance," (Pl.'s Obj. at 3), because, in all of Plaintiff's filings, that line provided the only fact to support a plausible claim under the ADA.  (Order & R&R

at 6–7.)  Given the liberal reading to be given to pro se pleadings, the Court, with significant reservations, will permit the amendment of the ADA claim, as limited by the magistrate judge to the denial of access to law library services.

Plaintiff also objects to the magistrate judge's denial of Plaintiff's Motion to Amend to the extent that Plaintiff alleges an ADA claim based on medical treatment decisions.  (Pl.'s Obj. at 4.)  Plaintiff argues that he did not intend to assert a claim based on medical treatment decisions but rather asserts a claim based on his denial of access to services and benefits because of his alleged disability.  (Id.)  As the magistrate judge correctly noted, "medical treatment decisions . . . cannot form the basis of a claim under the . . . ADA."  Dinkins v. Corr. Med. Servs., 743 F.3d 633, 634 (8th Cir. 2014).  Medical treatment decisions include improper diagnosis or treatment.  Id.  To the extent that Plaintiff's ADA claim is based on medical treatment decisions, including improper diagnosis and treatment, it is denied. Insofar as Munt disavows that his ADA claim is based on medical treatment decisions, his objection is overruled as moot.  However, what Munt's claim actually consists of will become clearer as the case proceeds.

Plaintiff further objects to the magistrate judge's ruling that denied amending the complaint to include an ADA claim against Defendants in their individual capacities.  (Pl.'s Obj. at 4-5.)  Munt states in his Objections, "Complaint was already for both official and individual capacity.  Plaintiff simply added an additional official capacity claim."  (Id. at 4.) The magistrate judge acknowledged that Plaintiff had sued all Defendants in their official and individual capacities. (Order & R&R at 5.)  In Plaintiff's Motion to Amend, however,

13

Plaintiff did not specify which Defendants he wished to bring his ADA claim against, nor did he specify whether the claim was against Defendants in their individual or official capacities. (See generally Mot. to Amend.)  Applying a liberal construction to Plaintiff's pro se motion, the magistrate judge understandably assumed that Plaintiff sought to assert an ADA claim against all Defendants.  He proceeded to analyze the proposed ADA claim against them in both their official and individual capacities.   The Court finds nothing improper about this approach.

The magistrate judge correctly held that any ADA claim Plaintiff wished to make against Defendants in their individual capacities would be futile, as claims against persons in their individual capacities are not allowed under the ADA.  (Order & R&R at 5);  Baribeau v. City of Minneapolis, 596 F.3d 465, 484 (8th Cir. 2010) ("Title II . . . provides redress only from public entities.").  To the extent Plaintiff contends that he never intended to bring an ADA claim against Defendants in their individual capacities, his objection is overruled as moot.  The magistrate judge, in trying to effectuate a broad reading of Plaintiff's Motion to Amend, analyzed a claim that may not have been necessary, according to Plaintiff.  The Court agrees with the magistrate judge's approach.

For all of these reasons, under a de novo review, the Court adopts the magistrate judge's findings on Plaintiff's Motion to Amend.  Plaintiff's Motion to amend is therefore granted in part, only to the extent that Munt asserts an ADA claim based on an alleged denial of meaningful access to law library services due to his alleged disability.  His Motion to Amend is denied in part, in all other respects.

14

**B.     Third Motion for Preliminary Relief**

Under the standard of review for a dispositive motion such as the underlying motion for preliminary relief, the Court again conducts a de novo review of the portion of the magistrate judge's opinion to which specific objections are made.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); D. Minn. L.R. 72.2(b).  Based on that de novo review, and for the reasons set forth below, the Court overrules Plaintiff's Objections and adopts the magistrate judge's recommendation.

As the magistrate judge noted, Munt requested the following relief in his Third Motion for Preliminary Relief:

> That the MN DOC be ordered to see that [Munt] receives further evaluation from an independent, outside, optical specialist with no connections to the MN DOC or its medical provider[s] for the purposes of attempting to diagnose the issue that causes him . . . debilitating effects when he wears glasses and to determine possible treatments.

(See Order & R&R at 8.)  Plaintiff asked that the expense of this independent evaluation be considered "an obligation" on his spending account, but if the evaluation leads to a diagnosis, he requested reimbursement for these costs.  (Id.)

In the R&R portion of the Order & R&R, Magistrate Judge Rau first found that Munt failed to address the applicable standard for preliminary relief set forth in Dataphase Systems, Inc. v. CL Systems, Inc., 640 F.2d 109, 114 (8th Cir. 1981), despite the fact that two prior orders in this case addressed the Dataphase factors.  (Id. at 11-12.)  Instead, in the underlying motion here, Munt discussed the Dataphase factors for the first time in his reply

memorandum.  (Id. at 13.)  The magistrate judge found this procedurally improper.  (Id.)

Despite this procedural failing, the magistrate judge nevertheless considered on the merits

the arguments that Munt raised in his reply memorandum.  (Id.)

This Court must consider four factors to determine whether preliminary injunctive

relief is warranted:  (1) the movant's likelihood of success on the merits; (2) the threat of

irreparable harm to the movant in the absence of relief; (3) the balance between that harm

and the harm injunctive relief would cause to the other litigants; and (4) the public interest.

Dataphase, 640 F.2d at 114.  A party seeking the extraordinary remedy of preliminary relief

bears the burden of establishing entitlement to that relief.  Watkins, Inc. v. Lewis, 346 F.3d

841, 844 (8th Cir. 2003).  Moreover, "in the prison context, a request for injunctive relief

must always be viewed with great caution because 'judicial restraint is especially called for

in dealing with the complex and intractable problems of prison administration.'"  Goff v.

Harper, 60 F.3d 518, 520 (8th Cir. 1995) (quoting Rogers v. Scurr, 676 F.2d 1211, 1214 (8th

Cir. 1982)).

Munt asserts general arguments regarding the standard by which his motion is to be

considered.  For example, he argues that the Rules of Civil Procedure are to be liberally

construed to effectuate a policy to disregard technicalities in order to determine issues on the

merits. (Pl.'s Obj. at 5) (citing Holley Coal Co. v. Globe Indemn. Co., 186 F.2d 291 (4th Cir.

1950)).  That is precisely what the magistrate judge did here.  Despite the fact that Munt

failed to comply with the rules by addressing the Dataphase factors only in his reply brief,

the magistrate judge nevertheless determined the question of preliminary relief on the merits.

16

Munt's objection on this basis is overruled as moot.

The Court agrees with the magistrate judge's analysis of the <u>Dataphase</u> factors.  As to the likelihood of success on the merits, the magistrate judge correctly found that Munt failed to demonstrate success with respect to his Eighth Amendment claim, as this Court had previously determined, (Order & R&R at 13) (citing Order of 9/23/15 at 23-26), and that he likewise failed to demonstrate success regarding a challenge to the DOC's contact lens policy based on <u>Turner v. Safley</u>, 482 U.S. 78 (1987).  Regarding irreparable harm, Magistrate Judge Rau properly observed that Munt's arguments in support of his Third Motion for Preliminary Relief were fundamentally the same as those rejected by this Court with respect to his previous motions for preliminary relief.  (Order & R&R at 13) (comparing Munt's Reply at 7-9 with the 9/23/15 Order at 26-28).  Similarly, to the extent that Munt argued that the balance of harms weighed in his favor, the magistrate judge further noted that that argument failed and had been previously rejected by the Court, citing the September 2015 Order: "[T]here is no case law to support [Munt's] contention that his constitutional rights necessarily outweigh the DOC's policy interests."  (<u>Id.</u> at 15, n.12) (citing order of 9/23/15 at 30).  Magistrate Judge Rau found that the same was true regarding the public interest <u>Dataphase</u> factor, noting the reasoning in this Court's September 2015 ruling that the public interest is served through effective prison operations.  (<u>Id.</u> at 15.)  Again, the Court agrees with all of the magistrate judge's findings under the <u>Dataphase</u> factors.

Munt raises several grounds of objection to the magistrate judge's recommendation.  (Pl.'s Obj. at 5-8.)  First, he states that the magistrate judge was apparently "confused by

statements necessary to show [that the] court hampered Plaintiff's ability to prove [his] case," as reflected in the Order & R&R on page 9, footnote 6. (Id. at 5.)  In that footnote, the magistrate judge addressed Plaintiff's claim that the Court previously denied him preliminary relief that would have prevented a prison transfer as well as "other acts that have crippled" his "ability to perform discovery [and] collect depositions and affidavits." (Order & R&R at 9, n.6.)  The magistrate judge stated, "It is not clear to the Court how these allegations regarding his inability to conduct research and his inability to gather evidence from witnesses about how the wearing of glasses affects his life relate to his current request for an independent medical evaluation." (Id.)  Plaintiff's "objection" to a mere observation in the Order & R&R does not alter the Court's analysis.  Moreover, to the extent that Munt seeks to re-litigate his prior requests for preliminary relief, any such argument is improper. (Id.)

Munt lodges additional, similar objections in which he contends that the decisions of this Court and the actions of the DOC have prevented him from effectively prosecuting his case and obtaining evidence. (Pl.'s Obj. at 5-8.)  For example, Munt argues that in evaluating the Dataphase factors, Magistrate Judge Rau failed to consider the DOCs' control of Munt's access to legal resources. (Id. at 5-7.)  He argues that had he had sufficient access to legal resources, his motion and reply would have been "more meaningfully plead." (Id.)  Further, Munt argues that he was hindered in his advancing his position because this Court has denied legal counsel and the ability to obtain an expert witness. (Id. at 6) (citing Dewitt v. Corizon, Inc., 760 F.3d 654, 657 (7th Cir. 2014)).  He contends that this Court's prior rulings, denying his claims for relief, illustrate that his "inability to produce medical evidence (controlled

100% by Defendants) has and will continue to harm him in this case." (Id. at 7.)

Munt appears to argue that all of this constitutes irreparable harm. The Court disagrees. As to the Court's previous denial of appointment of counsel or legal resources, unlike the prisoner in the Seventh Circuit case to which Plaintiff cites, Dewitt, 760 F.3d at 654, it is clear that Munt is literate, possesses an education, and has experience in litigating multiple lawsuits. In fact, based on his past motion practice, Munt is familiar with the Dataphase factors, having raised them in his reply memorandum. In addition, Munt's contention that Defendants' "control" of his medical records causes him harm or constitutes irreparable harm is utterly speculative. The Court likewise rejects Munt's contention that the prior rulings of this Court constitute "irreparable harm."

Munt also contends that the magistrate judge erred by "ignoring" his ADA claim when considering Munt's request for preliminary relief. (Pl.'s Obj. at 7.) To the extent that Munt attempted to base his Third Motion for Preliminary Relief on his proposed ADA claim, the magistrate judge found that any such argument failed. (Order & R&R at 13, n.10.) Not only did Magistrate Judge Rau find such an argument conclusory, he was unaware of any authority that would permit a court to grant a preliminary injunction based on the likelihood of success on the merits of a claim that was, at the time of the filing of the motion for preliminary relief, the subject of a pending motion to amend the complaint. (Id.) The Court agrees with the magistrate judge. Plaintiff cites no authority to the contrary.

Munt also objects to the magistrate judge's analysis of the balance of harms, essentially arguing that the balance of harms tips in his favor because he asserted a

19

constitutional harm, while Defendants' harm would be incurred from a policy deviation. (See Pl.'s Obj. at 7.)   The magistrate judge observed that this Court has previously rejected Munt's argument in Munt's earlier motion practice. (Order & R&R at 15, n.12) (citing Order of 9/23/15 at 30).   Munt argues that in reaching this conclusion, both the magistrate judge and the undersigned judge have "violated [their respective oaths] to uphold the Constitution." (Pl.'s Obj. at 7.)  Plaintiff's arguments are both procedurally and substantively lacking.  Munt may not challenge the September 2015 Order through his Objections here.   And, on the merits, there is nothing improper, let alone constitutionally infirm, about requiring a party who seeks the extraordinary remedy of preliminary relief to meet the requirements for such relief.   This ground of objection is rejected.

Also in the context of the balance of harms, Munt takes issue with this Court's discussion of Holt v. Hobbs, 135 S. Ct. 853 (2015).  (Pl.'s Obj. at 7-8.)  Munt cited Holt in support of his argument that Defendants' allegation of harm posed by deviation from DOC policy is a weak argument, as the "Supreme Court has rejected the argument 'If I make an exception for you, I'll have to make one for everybody, so no exceptions.'"  (Order & R&R at 15, n.12.)  The magistrate judge correctly observed, quoting this Court's September 2015 Order, that Holt is entirely distinguishable because it arises under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA) and is limited to religious exercise claims in the prison context.   (Id.) (quoting Order of 9/23/15 at 29, n.20). In his Objections, Munt argues that this constitutes an "unreasoned distinction," and that "[p]recise factual correspondence with precedent" is not required.   (Pl.'s Obj. at 7-8) (citing

Latimore v. Widseth, 7 F. 3d 709, 713 (8th Cir. 1993).   He also argues that Holt is relevant because "ADA protection [is] very similar to RLUIPA," as the law may require certain accommodations under both statutes, although on different bases.  (Id. at 8.)  While it is true that precedent need not precisely correspond factually, the problem here is that Holt fails to correspond both factually and legally. Moreover, as noted above, an analogy between the ADA and RLUIPA would be inapt because no ADA claim was in Plaintiff's case at the time of his Third Motion for Preliminary Relief.

In discussing the  Dataphase public interest factor, the magistrate judge quoted from the September 2015 Order, stating that Munt "has never alleged that he is not receiving medical care, only that he is not receiving the diagnosis and associated treatment he desires." (Order & R&R at 15) (quoting 9/23/15 Order at 28).  In his Objections, Munt argues that the magistrate judge erred in finding that Munt does not claim a lack of medical care.  (Pl.'s Obj. at 8.)  He states, "No treatment [is] possible without diagnosis.  Defendants do not claim issues are currently being addressed."  (Id.)  The record belies any claim that Munt has received no treatment.  (See Order of 9/23/15 at 5) (discussing successful treatment of headaches for nearly a year, starting in approximately August 2013). This ground of objection is rejected.

For all of the foregoing reasons, the Court overrules Plaintiff's Objections to the magistrate judge's recommendations regarding Munt's Third Motion for Preliminary Relief.

## C.      Motion to Appoint Counsel

The standard of review applicable to a nondispositive motion such as Munt's Motion

to Appoint Counsel is highly deferential; this Court will only reverse the ruling of the magistrate judge if it is clearly erroneous or contrary to law. See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. L.R. 72.2(a).  Munt argues that the ruling on his Motion to Appoint Counsel should have taken the form of a Report and Recommendation, as opposed to an Order.  He is incorrect, as a motion for appointment of counsel is not dispositive of any claim or defense and may be determined by a magistrate judge on the basis of an order. See id.

The magistrate judge correctly observed that civil litigants do not have a constitutional or statutory right to appointed counsel.  (Order & R&R at 16) (citing Ward v. Smith, 721 F.3d 940, 942 (8th Cir. 2013)).  Rather, appointment of counsel for indigent litigants is discretionary under 28 U.S.C. § 1915(e). As Magistrate Judge Rau noted, courts are to consider the following criteria in determining whether to appoint counsel:  the factual and legal complexity of the underlying issues, the existence of conflicting testimony, and the ability of the indigent plaintiff to investigate the facts and present his claims. (Id.) (citing Phillips v. Jasper Cnty. Jail, 437 F.3d 791, 794 (8th Cir. 2006)).

The magistrate judge observed that Munt sought appointment of counsel because:  (1) he lacks paper and funds to purchase paper, pens, and envelopes, and to pay for copies; (2) his prison transfer to MCF-Stillwater "eliminated" his "access to most witnesses (guards and inmates) who witnessed both the effect the glasses had on him and the changes to his lifestyle since the loss of his contacts"; (3) he has "no means by which he can obtain independent medical testimony as he is completely reliant on the DOC for his health care"; (4) he has

"less law library time" at MCF-Stillwater, where he is permitted "0-7.5 hours per week," yet he has "more actions demanding [his] time"; (5) he has "no ability to search Federal District or Circuit cases"; (6) the system he must use to request case law involves significant turn-around time and is therefore inadequate "even when a considerable extension has been granted"; (7) he does not have access to e-filing, which causes his filings to be untimely; and (8) he must "use his limited law library time and resources (money, paper, pens, envelopes) for his federal habeas case . . . , a state habeas case . . . , and a state post-conviction petition and [a] second 1983 suit." (Order & R&R at 16-17) (citing Mot. to Appoint Counsel at 1-3.) In addition, Munt further argued in his motion that the Court's failure to grant his prior requests for preliminary relief has harmed his ability to seek redress due to his limited resources, that he will be unable to see at trial, that he cannot effectively utilize library time, and that he lacks any practical trial experience or training. (Id. at 17.)

Magistrate Judge Rau considered the factors noted in Phillips for determining whether appointment of counsel is appropriate for an indigent civil litigant, finding that Munt's lack of various resources and pursuit of other lawsuits did not warrant appointment of counsel. (Id. at 18.) The magistrate judge stated that to the extent that Munt's request for counsel was based on delays due to his lack of access to electronic filing and delays in obtaining relevant case law, the magistrate judge was not inclined to appoint counsel when Munt had not asked for any extensions of time. (Id.) To the extent that Munt's motion was based on issues related to trial, the magistrate judge denied it as premature. (Id.) However, Magistrate Judge Rau expressed concern regarding Munt's allegations that suggested a limited ability to

investigate facts and obtain discovery related to his claims.  (<u>Id.</u> at 19.)  But finding Munt's allegations in that regard to be speculative, Magistrate Judge Rau denied without prejudice Munt's Motion to Appoint Counsel.  (<u>Id.</u>)  The magistrate judge then directed the parties to file a status report within 21 days addressing "the status of discovery in this case, including a summary of discovery efforts undertaken thus far and specific details, if any, regarding difficulties that Munt's incarceration at MCF-Stillwater poses to his ability to obtain discovery."  (<u>Id.</u>)  The magistrate judge indicated that he might reevaluate Munt's request for counsel based on those submissions.  (<u>Id.</u>)

Again, while Munt asserts several bases of objection, the essence of his Objections is that his past motion practice, and this Court's rulings on his motions, demonstrate the many deficiencies and failings in his pleadings and filings.  (Pl.'s Obj. at 9-14.)  He argues that he would substantially benefit from the appointment of counsel, as counsel would apparently remedy many of these deficiencies.  (<u>Id.</u>)

The fact that the Court has identified deficient arguments or pleadings or that Munt has been denied relief previously does not demonstrate that Munt would benefit from the appointment of legal counsel.  It may simply mean that Munt has presented losing arguments–arguments that would have fared no better if Munt had had the assistance of legal counsel.  Moreover, as the magistrate judge found, Munt has managed to advocate for himself in several different proceedings.  (<u>See</u> Order & R&R at 17) (quoting R&R of 7/30/15 at 28.)  He possesses sufficient education and intellect to represent himself.  His filings include numerous citations to federal law and he has filed many documents with attached

appendices or supplemental materials.  (Id.)  Despite Munt's argument in his Objections that his multiple lawsuits impede his ability to proceed, (Pl.'s Obj. at 9-10), the Court disagrees. Munt has initiated these proceedings himself and best knows the limits of his time and resources.

In his Objections to the magistrate judge's ruling on appointment of counsel, Munt provides additional details, apparently in response to the magistrate judge's comment about the speculative  nature of Munt's allegations regarding his limited ability to investigate the facts and secure discovery related to his claims.  (Id. at 10) (citing Order & R&R at 19.) Munt now provides greater details about how he lacks certain information regarding inmates and guards.  (Id.)  This greater level of detail, however, was not before the magistrate judge when he ruled on the instant motion.  The Court finds no error in the magistrate judge's ruling, as he gave Munt the benefit of the doubt by inviting more information in the form of a status report and denying Munt's motion for appointment of counsel without prejudice.

Munt also takes issue with the magistrate judge's observation that Munt has not requested any extensions of time.  (Id.)  (referring to Obj. [Doc. No. 115] to the Pretrial Sched. Order [Doc. No. 113]).  In "Objections" filed on February 20, 2016, Munt argued that the issuance of a pretrial scheduling order was "premature."  (Obj. to Sched. Order at 1 [Doc. No. 115].)  Munt presented general objections, similar to the arguments that he presents in the instant motion, and argued that it was "unlikely" that he would be able to comply with the various deadlines.  (See id. at 1.)  For instance, Munt found it "unlikely that Plaintiff will have even been able to begin discovery by September 1, 2016 "; that "it is highly unlikely

that discovery will be completed by September 1, 2017 "; that "[i]t is unlikely that [he] will be able to add parties by July 1, 2016."  (See id. at 1-3.)

A blanket objection to a pretrial scheduling order, filed only a week after the order's issuance, rife with speculation about the inability to meet the deadlines, containing no alternative dates or deadlines, is of little assistance to Munt.  To the extent that Munt has been unable to comply with a deadline or an impending deadline, he is free to seek an extension of time, explaining his need for the extension, with specific facts.  Accordingly, his Objections to the Pretrial Scheduling Order are denied without prejudice.  The fact that the magistrate judge simply noted in the Order & R&R that Munt has not requested extensions, as one of several bases for denying without prejudice Munt's Motion to Appoint Counsel, does not constitute clear error.

For all of the foregoing reasons, the Court affirms the findings of Magistrate Judge Rau and adopts his rulings and recommendations.

**THEREFORE, IT IS HEREBY ORDERED** that:

1.   Plaintiff's Objections to the Magistrate Judge's Order and Report and Recommendation [Doc. No. 123] are **OVERRULED in part and SUSTAINED in part**;

2.   Magistrate Judge Rau's July 14, 2016 Order and Report and Recommendation [Doc. No. 122] is **ADOPTED** and **AFFIRMED**;

3.   Plaintiff's Motion to Amend the Complaint [Doc. No. 91] is **GRANTED in part and DENIED in part**, as discussed in this Order;

4.      Plaintiff's Request for Reconsideration of Motion to Appoint Counsel [Doc.

No. 89] is **DENIED without prejudice**;

5.      Plaintiff's Third Motion for Preliminary Relief [Doc. No. 96] is **DENIED**; and

6.      Plaintiff's Objections to the Pretrial Scheduling Order [Doc. No. 115] are

**DENIED without prejudice**.


Dated:   August 19, 2016                           s/Susan Richard Nelson
                                                   SUSAN RICHARD NELSON
                                                   United States District Judge