# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Joel Marvin Munt,                                      **Case No. 15-cv-582 (SRN/SER)**

       Plaintiff,

v.                                                     **REPORT AND RECOMMENDATION**

Nanette Larson, Kathryn Reid, Shelli Monio,
Kim Ebeling, Doctors #1–6, Health Services
Workers #1–6, Opticians #1–4, and RN #1,

       Defendants.[1]

---

STEVEN E. RAU, United States Magistrate Judge

       The above-captioned case comes before the undersigned on Plaintiff Joel Marvin Munt's ("Munt") Second Motion to Amend Complaint ("Second Motion to Amend") [Doc. No. 129] and Defendants Nanette Larson, Kathryn Reid, Shelli Monio, Kim Ebeling, Doctors Nos. 1–6, Health Services Workers Nos. 1–6, Opticians Nos. 1-4, and RN No. 1's (collectively, the "Defendants") Motion for Summary Judgment.[2] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B)–(C) and District of Minnesota Local Rule 72.1 for a report and recommendation. For the reasons stated below, the Court recommends denying Munt's Second Motion to Amend, granting in part and denying in part Defendants' Motion for Summary Judgment, and dismissing the case.

---

[1]      The caption incorporates spellings provided by Defendants, which are used throughout this Report and Recommendation. *See* (Motion for Summ. J.) [Doc. No. 140 at 1].

[2]      This Court also stated in a Text Only Order that it would revisit its provisional grant of Defendants' Motion to File Documents Under Seal [Doc. No. 135] as part of this Report and Recommendation. *See* (Text Only Order Dated Oct. 31, 2016) [Doc. No. 139]. Because the documents filed under seal include information regarding Munt's private medical history, the Court finalizes its provisional grant to file documents under seal and leaves its previous Order undisturbed.

## I.    BACKGROUND

The factual and procedural background underpinning this case is extensive. For clarity and brevity, the Court only addresses the factual and procedural background relevant to the Court's analysis of the issues before it. For example, this Court does not provide in-depth discussion of Munt's various Motions for Preliminary Relief [Doc. Nos. 6, 25, 96], Motions for Appointment of Counsel [Doc. Nos. 3, 89, 146],[3] or various letters to the Court [Doc. Nos. 13, 22, 27, 62, 64–65, 72–73, 95, 105, 132, 179].

### A.    Factual Background

Previously incarcerated at Minnesota Correctional Facility at Oak Park Heights ("MCF-OPH") under the supervision of the Minnesota Department of Corrections ("DOC"), Munt is now incarcerated at the DOC's Minnesota Correctional Facility at Stillwater ("MCF-STW"). *See* (Civil Rights Compl. Pursuant to 42 USC § 1983, "Compl.") [Doc. No. 1 ¶ C.1] (stating Munt is a prisoner of MCF-OPH);[4] (Third Aff. of David Paulson, M.D., M.B.A, "Paulson Aff.") [Doc. No. 142 ¶ 28] (stating that Munt was transferred to MCF-STW on July 6, 2015).[5]

---

[3]    In its Order and Report and Recommendation, this Court considered Munt's Motion for Reconsideration of Motion to Appoint Counsel [Doc. No. 89] as a separate motion grounded on new reasons for the appointment of counsel. *See* (Order & R. & R. Dated July 14, 2016, "July 2016 Order & R. & R.") [Doc. No. 122 at 16–19].

[4]    On October 15, 2015, Munt filed a motion to amend his complaint. *See* (Mot. to Amend Compl., "First Motion to Amend") [Doc. No. 91]. The Court granted Munt's motion and incorporated Munt's ADA claim based on denial of meaningful access to law library services with his original Complaint effectively generating an amended complaint, but not requiring that Munt file an amended complaint with the Court. (July 2016 Order & R. & R. at 7). In this way, the Court's ordered amended complaint avoided the need for Munt to refile a pleading that was complete in itself. *See* (*id.* n.5) ("The Court orders this incorporation instead of requiring Munt to file an amended complaint that is complete in itself in the interests of efficiency."). Because there is no physical copy of the Amended Complaint, the Court references Munt's Complaint and attached exhibits when describing the factual background, as they fully incorporated into the Amended Complaint. *See* (*id.* n.5)

[5]    Portions of certain filings, including Defendants Memorandum in Support of Their Motion for Summary Judgment ("Memorandum in Support of Summary Judgment") [Doc. No.

Prior to his incarceration, Munt "learned glasses gave him severe headaches," notwithstanding having a proper prescription. (Compl. ¶ D.1). Munt asserts that these headaches are made worse by "[a]ny movement," and he experienced this problem with every pair of glasses he has owned. (*Id.*). Must also asserts that he has "worn contacts for many years and no such problem occurs." (*Id.* ¶ D.2). Munt's "spare contact lenses, contact fluid, and contact case" were confiscated "[u]pon arriving at [MCF-OPH] in April 2012." (*Id.* ¶ D.3). To comply with DOC policy after the confiscation of his contact lenses, and "[a]s directed by staff," Munt requested eyeglasses but "notified Health Services of the problem he experienced when wearing" them. (Compl. ¶ D.4); (Ex. 1, Attached to Compl., "Ex. 1 to Compl.") [Doc. No. 1-2];[6] *see also* (Ex. 8, Attached to Paulson Aff., "Ex. 8 to Paulson Aff.") [Doc. No. 142-2, C.4.h] (stating than an inmate who "enters the system with contacts lenses" should be scheduled for an optometrist appointment to "determine a need for eyeglasses"). Health Services told Munt that he was "placed on eye Dr. list – you can address your concerns at that time." (Ex. 1 to Compl.). Based on his request—also known as a kite—Munt was seen by an optometrist on April 11, 2012, and he "was issued new eyeglasses" on April 23, 2012. (Paulson Aff. ¶ 15). There is no record memorializing what was discussed during the April 11, 2012, visit. *See* (*id.*) ("Aside from documentation indicating that the visit occurred, the DOC has been unable to locate a corresponding optometrist's note for the visit.").

---

141], Paulson Affidavit, and exhibits attached to the Paulson Affidavit, were filed under seal. As stated in a prior Report and Recommendation, "[t]he sealed exhibits include Munt's medical records, including medical records that are unrelated to Munt's headaches. The Court refers only to those portions of Munt's medical records that are necessary to an analysis of Munt's claims." *See* (R. & R. Dated July 30, 2015, "July 2015 R. & R.") [Doc. No. 74 at 3 n.3].

[6]     The Court references numerous exhibits attached to Munt's Complaint, all of which were filed as Document Number 1-2. For ease of reference, the Court cites to these documents as "Ex. ___ to Compl.".

Munt further alleges that he filed numerous kites in an attempt to address his complaints of headaches. (Compl. ¶ D.6). In this respect, Munt further asserts that not "all complaints about headaches [were] recorded . . . despite care to mention the issue each time he signed up for sick call." (*Id.*). Nevertheless, on August 9, 2012, Munt was evaluated for a "multiple-month history of headaches." (Ex. 6, Attached to Paulson Aff., "Ex. 6 to Paulson Aff.") [Doc. No. 142-2 at 4].[7] There is no indication the source of the headaches was discussed; however, it was noted that Munt "has tried a variety of medications . . . including ibuprofen, naproxen, and Excedrin Migraine . . . without significant improvement." (*Id.*). Based on the physical examination conducted by the attending physician, Munt was diagnosed as having a "potential migraine variant." (*Id.*). Munt was prescribed a "[t]rial of Dilacor XR . . . as a suppressive medication" and "Tylenol on an as-needed basis as an interceptive medication." (*Id.*). The consultation concluded when Munt verbalized an understanding of the prescription and the need "to notify the medical clinic should he experience further difficulties." (*Id.*).

On October 4, 2012, Munt submitted another kite "requesting contact lenses," and was informed that "contacts are not authorized, but will have eye doctor evaluate [the] request." (Ex. 5, Attached to Paulson Aff., "Ex. 5 to Paulson Aff.") [Doc. No. 142-2 at 5]; *see also* (Compl. ¶ D.7) (alleging that contacts "were not allowed"). On November 2, 2012, Defendant Larson—Director of Health Services—acknowledged Munt's belief "that [his] medical condition [was] being ignored because [he was] being told that contact lenses are disallowed by policy." (Ex. 2 to Compl.). Larson further stated:

> You say that your migraine-associated headaches are aggravated when wearing glasses and that policy should not override your medical needs.

---

[7]    The exhibits to the Paulson Affidavit that have been filed under seal are not paginated. In the interest of clarity, the Court has assigned page numbers to those exhibits and refers to them accordingly.

I somewhat agree with your position on the policy. However, after reviewing your medical record, your history of headaches and their connection with eyeglasses is far from established to a degree that would support advocacy of your position.

Please work with Health Services to objectively address your headache pain. Perhaps some clarity can be obtained with that strategy.

(*Id.*).

Munt's next complaint of headaches allegedly caused by eyeglasses occurred on April 19, 2013. (Compl. ¶ D.9); *see also* (Paulson Aff. ¶ 16); (Ex. 5 to Paulson Aff. at 4). On this occasion, Munt again requested contacts, but was informed "that his request would be reviewed by a provider, eye doctor, and the Health Services Administrator." (Paulson Aff. ¶ 16); *see also* (Ex. 5 to Paulson Aff. at 4). Munt was also told of the risks related to contact lenses including "chemical use," and the possibility of "infection [due to] confined living quarters." (Ex. 5 to Paulson Aff. at 4). Subsequently, no "ophthalmologist, optometrist, or physician determined that Munt needed another examination in April 2013 as no examination was scheduled." (Paulson Aff. ¶ 16).

"On July 29, 2013, Munt again complained of headaches and alleged that they were caused by eyeglasses." (Paulson Aff. ¶ 17); *see also* (Compl. ¶ D.10); (Ex. 5 to Paulson Aff. at 3, 4). Munt "was seen by a . . . practitioner on August 1, 2013, and again on August 15, 2013." (Paulson Aff. ¶ 17); *see also* (Ex. 6 to Paulson Aff. at 2, 3). Notes from the August 1, 2013, consultation demonstrate that Munt described his history of headaches. (Ex. 6 to Paulson Aff. at 3). But nothing suggests that Munt mentioned headaches caused by the use of eyeglasses. (*Id.*). Notes from the August 15, 2013, consultation demonstrate that Munt was being treated for "ethmoid sinusitis and maxillary sinusitis" and that a combination of antibiotics and Prednisone used to treat the sinusitis caused his headaches "to be much improved." (*Id.* at 2).

5

Approximately one year passed before Munt again complained of headaches due to his glasses. *See* (Compl. ¶ D.12); *see also* (Paulson Aff. ¶¶ 17–18). Allegedly, this coincided with the expiration of the pair of contact lenses that Munt was wearing at the time of in-take and allowed to keep pursuant to section C.4.h of the DOC Policy 500.150, Adaptive Equipment/Medical Authorizations (the "Contact Lenses Policy"). (Compl. ¶ D.11) ("8/1/2014 Plaintiff's final pair of contacts died."); *see also* (Paulson Aff. ¶ 18); (Ex. 8 to Paulson Aff. § C.4.h] (Contact Lenses Policy). Munt asserts he "made a good faith effort, wearing the glasses frequently over the next several weeks despite the increasingly severe headaches that persisted weeks after he stopped wearing them." (Compl. ¶ D.11); *see also* (Ex. 3 to Compl.).

On August 12, 2014, Munt was referred to an "MD to assess his eyes" based on complaints of "headaches when putting on his glasses." (Ex. 5 to Paulson Aff. at 2–3). Munt was evaluated by Stephen Craane, MD ("Dr. Craane"), ten days later. (Ex. 6 to Paulson Aff. at 1). During the appointment with Dr. Craane, Munt reported with "certainty" that his headaches were "due to the fact that he is now wearing eyeglasses instead of contact lenses," and reported experiencing "similar headaches in the past when converting between contact lenses and eyeglasses." (*Id.*). Munt also explained he had "tried a variety of medications . . . for these headaches, without relief." (*Id.*). He reported "no chest pain, dyspnea, nausea, focal motor weakness, sensory loss, or paresthesia." (*Id.*). Munt's physical examination was normal. *See* (*id.*). Dr. Craane's objective assessment was that Munt was experiencing "[h]eadache, potentially related to [his] correctional eyewear." (*Id.*). He referred Munt "to the facility optician for reevaluation and potential rewriting of [his] eyeglass prescription." (*Id.*). Munt "verbalize[d] understanding and agreement with this plan" and was told to "notify medical staff should he experience further difficulties." (*Id.*).

In early September 2014, Munt filed several kites asserting that his complaints of headaches caused by eyeglasses were not being addressed adequately. *See* (Compl. ¶¶ D.15–D.19); (Exs. 3–5 to Compl.). As a result of these kites, Munt was seen by an optometrist on September 10, 2014, and new eyeglasses were ordered. (Compl. ¶ D.20); (Paulson Aff. ¶ 19). At this appointment, Munt alleges that he was informed that the "DOC would not approve contacts." (Compl. ¶ D.20).[8] Munt also asserts that the eyeglasses were prescribed "despite no reason to believe this would resolve the issue, nor any attempt to even diagnose the issue." (*Id.*).

Munt filed numerous kites throughout September 2014. (Compl. ¶¶ D.21–D.22, D.24). For example, Munt inquired into the Contact Lenses Policy, complained that health service professionals had not investigated alternatives to contact lenses to address his headaches, inquired whether a procedure such as "Lasik" eye surgery could be a viable alternative in addressing his headaches, and accused administration of lying to him about the Contact Lenses Policy because contacts are allowed "if there is a medical reason." *See* (Exs. 6–12 to Compl.). Repeatedly, Munt was informed that he was not authorized contact lenses under the Contact Lenses Policy because a medical professional had not prescribed contact lenses as medically necessary. *See, e.g.*, (Exs. 9–10 to Compl.). Additional responses to Munt's kites demonstrated that Munt had been scheduled for additional eye exams, and stated that alternatives to contact lenses had not been explored because "no other options have been requested." *See* (Exs. 7, 11 to Compl.).

As a result of the scheduled eye exams, Munt received new glasses on September 29, 2014. (Compl. ¶ D.30). On October 9, 2014, Munt submitted a kite asserting that the glasses "did nothing to resolve the problem. They continue to cause increasingly severe headaches, loss of

---

[8]    The DOC has been "unable to locate a contemporaneous record of this visit." (Paulson Aff. ¶ 19).

cognitive ability and other issues." (Ex. 13 to Compl.); *see also* (*id.* ¶ D.31). A copy of the kite was forwarded to an eye doctor. (Ex. 13 to Compl.). In an October 27, 2014, kite to Larson, Munt continued to complain of "debilitating headaches and loss of cognitive ability when wearing glasses." (Ex. 14 to Compl.). Munt also raised his concern that "no alternative solution nor consideration for the problem" has been offered by medical staff. (*Id.*).

Munt was next seen by optometrist Michelle Taylor, OD ("Dr. Taylor"), on November 5, 2014. (Ex. 7, Attached to Paulson Aff., "Ex. 7 to Paulson Aff.") [Doc. No. 142-2 at 2, 5]; *see also* (Compl. ¶ D.34); (Paulson Aff. ¶ 20). At the consultation with Dr. Taylor, Munt reported "repeated [headaches]" caused by his eyeglasses and "disorientation when he removes them." (Ex. 7 to Paulson Aff. at 5). On November 20, 2014, Munt received a new pair of eyeglasses and reported that his headaches were not resolved by these eyeglasses that same day. (Ex. 7 to Paulson Aff. at 7); (Paulson Aff. ¶ 20). On December 3, 2014, Dr. Taylor requested a "contact lens fitting [and] supply" after indicating a "[n]ormal eye exam." (Ex. 7 to Paulson Aff. at 8). Dr. Taylor's notes also included a diagnosis of "myopia/astigmatism," and stated that her request was "[b]ased on subjective complaints—he wants it in writing that contacts are not allowed for basic myopia." (*Id.*); *see also* (*id.* at 5) (outpatient note stating Dr. Taylor "will request [contact lenses] due to subjective complaints of headaches"). "In accordance with the Utilization Review Process, [Dr. Taylor's] request was reviewed by a . . . nurse and a . . . physician, who denied the request and recommended alternative treatment." (Paulson Aff. ¶ 22).

Munt filed a formal grievance on December 1, 2014. (Compl. ¶ D.36); (Ex. 15 to Compl.). On December 5, 2014, Munt received notification from Defendant Monio—Grievance Coordinator—that Munt's grievance was not "entered as a formal grievance" because Munt did not "obtain and file [his] grievance within 45 calendar days of the occurrence of the issue being

grieved." (Ex. 17 to Compl.); *see also* (Compl. ¶¶ C.19, D.38). Monio also noted that "some kites were not responded to." (Compl. ¶ D.38); *see also* (Ex. 17 to Compl.) ("Some of your copies are responded on and some are not."). On December 8, 2014, Munt appealed Monio's decision, arguing that the DOC policy governing medical grievances does not mention that the grievances must be filed with 45 days of the occurrence. (Ex. 18 to Compl.). Furthermore, Munt argued that his November 5 appointment was "clearly within 45 days" of his December 1, 2014, grievance. (*Id*). Munt also asserted that the reason he did not respond to certain kites—as Monio contends—is because staff "didn't respond" to those kites and Munt's response was not warranted. *See* (*id.*). On December 16, 2014, Munt's grievance appeal was returned because he "did not attach a copy of [the] original facility grievance/response and/or documentation that the grievance was addressed informally. The requirements of Policy 303.1001 Procedure – Medical have the same standards as Policy 303.100 Grievance Procedure." (Ex. 19 to Compl.) (Letter from Ebeling to Munt).

While pursuing his formal grievance, Munt received a letter from Larson on December 6, 2014, in which she stated:

> You have written a letter . . . to continue lobbying for contact lenses. You say that wearing eyeglasses causes you to experience debilitating headaches. You suggest that in denying contact lenses to you, medical staff is demonstrating deliberate indifference.
>
> The controlling policy on contact lenses is 500.150, Adaptive Equipment/Medical Authorizations. The policy reads, in part, "Authorizations are limited to medical necessity as deemed by the prescribing authority[."] Your practitioners have not made such a determination, despite several examinations. You have been provided this information in kite responses.
>
> Absent a practitioner's opinion that contact lenses are medically indicated to address a medical condition, you are unlikely to be successful in obtaining contact lenses.
>
> If you continue to have headaches, please address that issue with Health Services.

(Ex. 20 to Compl.).[9]

On January 7, 2015, Dr. Taylor responded to a kite Munt sent her on December 23, 2014. (Ex. 21 to Compl.). Dr. Taylor informed Munt that she made his contact lense request, but that she had "never gotten approval for this type of request in the past. In fact, I've been denied for guys with triple your prescription [and] headaches, and I know of no medical insurance on the street that would consider contacts in your case." (*Id.*); *see also* (Compl. ¶ D.43). Dr. Taylor also informed Munt in her response that the request had been denied and that Munt could "go without the glasses, pulling them out only when [he] need[s] to see details . . . . There are also medications available on the canteen that can help" with headaches. (Ex. 21 to Compl.); *see also* (Compl. ¶ D.43). In light of Munt's medical history, Dr. Paulson is of the opinion that "there is no objective evidence that [Munt's] eyeglasses are causing headaches." (Paulson Aff. ¶ 26). Further, "[t]here is no indication in Munt's medical record" that suggests Munt has "an objective abnormality" that is causing his headaches, "such as a brain tumor or hemorrhage." (*Id.* ¶ 24).

### B.    Procedural Background

Munt filed his Complaint on February 25, 2015, alleging violations under 42 U.S.C. § 1983 on the basis that Defendants violated his Eighth Amendment rights. (Compl. ¶¶ A, E.1–23). Specifically, Munt alleges that Defendants deliberately disregarded his serious medical condition because he experiences debilitating headaches when he wears eyeglasses and Defendants have not granted him a medical exception to wear contact lenses or otherwise allay his pain. *See, e.g.*, (Compl. ¶¶ A, D.1, D.4, D.11, D.20).

In a prior Report & Recommendation, this Court noted:

---

[9]    Exhibit 16 contains substantially similar language in a letter dated October 25, 2014. (Ex. 16 to Compl.). Munt alleges, however, the he did not receive Larson's first letter until December 4, 2014. (*Id.*); (Compl. ¶ 37).

Munt alleges that Defendants have been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. (Compl. ¶¶ E.2, E.16, E.20, E.21). Munt alleges that almost three years have passed with "no attempt having been made to address . . . [his] problem" and that Health Services has simply told him that contact lenses are not permitted in order to discourage "something [the] policy does allow and with no legitimate penological interest in doing so." (Compl. at 15–16). Munt states that "while contacts are an effective solution to the issue, this suit is about the failure of [H]ealth [S]ervices to address a medical need rather than a particular solution to it." (*Id.* at p.16). Munt further asserts that Defendants have "interfered with their own administrative process as he attempted to" resolve his medical issues and "refused to follow the administrative process for grievances, interfering with [Munt's] progress in" the grievance process. (*Id.*). Munt therefore alleges that Defendants violated his "[F]irst [A]mendment right to redress in so much as [they] impeded the administrative process" and his "right to Due Process and . . . Equal Protection." (*Id.* ¶¶ E.2, E.16, E.20, E.21).

(July 2015 R. & R. at 9–10) (alterations in original). And this Court characterized Munt's

Complaint to allege the following claims for relief:

(1) judgment declaring the actions of Defendants unconstitutional; (2) an order requiring the DOC to "address [Munt's] medical issue, [by] either providing contact lenses, Lasik Surgery (if possible for his eyes) or some alternative option that allows [Munt] to see without subjecting him to the headaches he must endure with glasses," and an order requiring the DOC to provide Munt with contact lenses until one of the above "permanent" solutions is implemented; (3) an order preventing the DOC, "it's [sic] employees, contractors and anyone else operating on its behalf, from transferring or otherwise retaliating against" Munt "to prevent future harm to him and a multiplicity of actions"; (4) an order requiring the DOC to "change its policy to allow reasonable alternatives to glasses as the current policy is without [a] legitimate penological interest and is leveraged to ignore the serious medical needs of inmates"; (5) an order requiring the DOC to "begin addressing the medical needs of inmates . . . and to provide such care as is required"; (6) an order requiring "the employees, contractors and anyone else operating on behalf of the [DOC] to clearly write their names on kites in addition to signing them for increased accountability and less opportunity for officials to impede the use of the process by inmates"; and (7) compensatory and punitive damages.

(*Id.* at 10–11) (citations omitted).

On February 22, 2016, this Court issued its Pretrial Scheduling Order [Doc. No. 113]. In

relevant part, the Court established: amended pleadings were due by July 1, 2016, non-dispositive

motions were due by October 1, 2016, and dispositive motions were due by November 1, 2016.
(Pretrial Scheduling Order at 2–3). Munt objected to the Pretrial Scheduling Order on February
29, 2016, claiming he would be unable to meet those deadlines. *See generally* (Objections to
Pretrial Scheduling Order) [Doc. No. 115]. Judge Nelson denied these objections without
prejudice. (Order Dated August, 19, 2016, "Aug. Order") [Doc. No. 127 at 25–26]. In particular,
Judge Nelson stated:

> A blanket objection to a pretrial scheduling order, filed only a week after
> the order's issuance, rife with speculation about the inability to meet the
> deadlines, containing no alternative dates or deadlines, is of little assistance to
> Munt. To the extent that Munt has been unable to comply with a deadline or an
> impending deadline, **he is free to seek an extension of time, explaining his need
> for the extension, with specific facts**.

(*Id.* at 26) (emphasis added).

On October 6, 2016, Munt filed his Second Motion to Amend. (Second Mot. to Amend.).
In his proposed amended complaint, Munt includes the ADA claims already incorporated into
Munt's operative pleading by the Court in his First Motion to Amend and adds an additional
claim for relief pursuant to an as-applied challenge to the DOC's Contact Lenses Policy. *See*
(Pl.'s Proposed Second Amend Compl., "Proposed Second Amended Compl.," Attached to
Second Motion to Amend) [Doc. No. 129-1 ¶ E.24] (adding claims for relief premised on his
access to the law library and the courts generally under the ADA); (*id.* ¶ E.25) (adding an as-
applied constitutional challenge to the DOC's Contact Lenses Policy). Defendants filed their
memorandum in opposition to Munt's Second Motion to Amend on October 17, 2016. *See* (Defs.
Larson, Reid, Monio, and Ebeling's Mem. in Opp'n to Pl.'s Second Mot. to Amend Compl.,
"Mem. in Opp'n to Second Mot. to Amend Compl.") [Doc. No. 134].

On November 1, 2016, Defendants filed their Motion for Summary Judgment. (Mot. for
Summ. J.). Thereafter, Munt filed two motions for extension of time [Doc. Nos. 152 and 156],

requesting additional time to respond to Defendants' Motion for Summary Judgment. Noting that Munt had already filed a response and that the Defendants had replied, this Court nevertheless granted Munt's request in the interest of justice and provided Defendants an opportunity to submit a new reply. *See generally* (Order Dated Jan. 13, 2017, "Jan. Order") [Doc. No. 178] (granting Munt's requested extension). The January Order was modified on the basis of Munt's objection with respect to amount of time in which to respond, but was otherwise left undisturbed. (Letter Dated Feb. 8, 2017) [Doc. No. 179] (objection to the extension as being inadequate under the circumstances); (Order Dated Feb. 16, 2017, "Feb. Order") [Doc. No. 180] (extending the amount of time Munt had to respond in the interest of justice but otherwise affirming the January Order).

On March 31, 2017, Munt filed his Memorandum in Opposition to Defendants' Motion for Summary Judgment – Amended ("Memorandum in Opposition to Motion for Summary Judgment") [Doc. No. 185]. On April 14, 2017, Defendants filed their reply. *See* (Defendants Larson, Reid, Monio, and Ebeling's Reply Mem. to Pl.'s Opp'n Mot., "Reply") [Doc. No. 188].

Based on the above, Munt's Second Motion to Amend and Defendants' Motion for Summary Judgment are now fully briefed and ripe for consideration.

## III.    DISCUSSION[10]

### A.    Second Motion to Amend

As an initial matter, the Court notes that Munt's Second Motion to Amend was not timely filed under the operative Pretrial Scheduling Order. *Compare* (Pretrial Scheduling Order) (stating that all amended pleadings must be received by July 1, 2016), *with* (Second Mot. to Amend)

---

[10]    Because a decision granting Munt's Second Motion to Amend arguably impacts the analysis of Defendants' Motion for Summary Judgment, this Court issues recommendations for both the Second Motion to Amend and Motion for Summary Judgment.

(filed on October 6, 2016). Munt's objections to the Pretrial Scheduling Order were denied without prejudice and he was instructed to file motions for extension as needed. (Aug. Order at 25–26) ("To the extent that Munt has been unable to comply with a deadline or an impending deadline, **he is free to seek an extension of time, explaining his need for the extension, with specific facts**.") (emphasis added).

Munt demonstrated that he understood the need to approach the Court for extensions when he filed motions for extension of time to answer Defendants' Motion for Summary Judgment. *See* (Certificate of Service, "First Request for an Extension") [Doc. No. 152]; (Second Request for an Extension) [Doc. No. 156]. Munt made no such effort regarding his Second Motion to Amend. Regardless, Munt's "pro se status [does] not entitle him to disregard the Federal Rules of Civil Procedure, even without affirmative notice of the application of the rules to his case." *Bennett v. Dr. Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002) (internal quotation marks omitted). In other words, Munt cannot assert his pro se status or his lack of understanding as excuses for his failure to comport with the rules and Pretrial Scheduling Order.

Typically, when a party fails to timely submit a motion to the Court, the Court may only entertain the motion on a showing of good cause. *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) ("To permit district courts to consider motions to amend pleadings under Rule 15(a) without regard to Rule 16(b) would render scheduling orders meaningless and effectively . . . read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." (internal quotation marks omitted)); *see also Leary v. Daeschner,* 349 F.3d 888, 909 (6th Cir. 2003) ("Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a).").

Construing Munt's submissions in support of his Second Motion to Amend liberally, Munt has not provided a persuasive showing of good cause. *See* (Mem. in Supp. of Pl.'s Second Mot. to Amend Compl., "Mem. in Supp. of Second Mot. to Amend Compl.") [Doc. No. 130 at 1]; (Pl.'s Reply to Defs.' Resp. to his Second Mot. to Amend his Compl., "Reply to Second Mot. to Amend") [Doc. No. 148 at 3]; *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (instructing courts to construe pro se submissions liberally). Liberally construed, Munt argues that good cause is met because of his status as a prison inmate and because Defendants' actions reduced the time in which he has to meet deadlines. *See* (Mem. in Supp. of Second Mot. to Amend Compl. at 1) ("'Strict time limits ought not to be insisted upon, where restraints resulting from pro se plaintiff's incarceration prevent him from timely complying with court deadlines for filing amended complaint.'" (quoting *Eldridge v. Black*, 832 F.3d 1132, 1133 (9th Cir. 1987))); (Reply to Second Mot. to Amend at 3) (arguing that Defendants allow "him to utilize only a tiny fraction of the time a nonprisoner could devote to legal pleadings," and that he "already objected to the scheduling order").

Munt's arguments are unpersuasive for a number of reasons. First, his supporting case law is not precedent in this Circuit. *See Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006) (holding that plaintiff's status as a prisoner cannot by itself "constitute good cause"), *overruled on other grounds by Avichail ex rel. T.A. v. St. John's Mercy Health Sys.*, 686 F.3d 548 (8th Cir. 2012). Second, and perhaps more importantly, none of Munt's arguments address why— assuming allegations of limited time and access to resources are true—he did not timely file for an extension of time as required by the Court when it overruled Munt's speculative objections to the Pretrial Scheduling Order. *See* (Aug. Order at 25–26) (stating that Munt is free to file motions for extension of time as needed). Munt filed extensions of time for other submissions

15

(which were granted), but did not do so for his Second Motion to Amend. *See* (Aug. Order at 25–26); *see also* (Feb. Order) (granting Munt's requested extension for additional time to respond to Defendants' Motion for Summary Judgment).

This is not a situation where Munt missed a deadline in a manner that might be excusable by his status as an inmate (due to, e.g., delays in the receipt and sending of mail). Here, Munt filed his Second Motion to Amend more than two months after the deadline for amending the pleadings. *See* (Pretrial Scheduling Order) (stating that all amended pleadings must be received by July 1, 2016). In the past, the Court has expressed some amount of sympathy regarding Munt's status as an inmate. *See* (Feb. Order at 2) ("The Court recognizes that Munt's incarceration places special burdens on his ability to promptly reply to certain filings made in this matter. It also recognizes that Munt's objection raises reasonable concerns about the practical value of the Extension Order in light of those special burdens."). But this does not require that the Court countenance Munt's failure to abide by both the Federal Rules of Civil Procedure and the Court's Pretrial Scheduling Order. *See Bennett*, 295 F.3d at 808.

As a result, Munt's failure to timely file his Second Motion to Amend could support this Court's recommendation that Munt's motion be denied. In the interest of thoroughness, however, this Court also analyzes Munt's Second Motion to Amend under the more deferential standard under Rule 15(a) and recommends—even under this standard—that Munt's Second Motion to Amend be denied.

Under Rule 15(a), a court should "freely give leave" to amend a pleading when justice so requires. Nonetheless, leave to amend should not be given when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, [or] **futility of amendment**[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis added).

If a claim or theory of recovery advanced in a proposed amendment cannot survive under a motion to dismiss analysis pursuant to Rule 12(b)(6), it is considered futile and a court does not abuse its discretion for denying leave to add such a claim. *See*, *e.g.*, *DeRoche v. All Am. Bottling Corp.*, 38 F. Supp. 2d 1102, 1106 (D. Minn. 1998) (Erickson, Mag. J.); *see also Lunsford v. RBC Dain Rauscher, Inc.*, 590 F. Supp. 2d 1153, 1158 (D. Minn. 2008) (Doty, J.). That is, "[d]enial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (internal quotation marks omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Munt did not provide a version of his Proposed Second Amended Complaint that comports with the Local Rules. *See* Local Rule 15.1(b) (requiring that a party provide "a version of the proposed amended pleading that shows—through redlining, underlining, strikeouts, or other similarly effective typographic methods—how the proposed amended pleading differs from the operative pleading"). Nevertheless, based on this Court's review of Munt's Proposed Second Amended Complaint, he adds a number of factual assertions and alleges additional claims for relief. *See* (Proposed Second Amended Compl. ¶¶ D.44–D.54) (adding new factual assertions); (*id.* at 17) (stating that it is now close to four years (changed from three years) without Munt's

condition being addressed); (*id.* ¶¶ E.24–E.25) (adding claims for relief under the ADA and as-applied challenges to the Contact Lenses Policy). In support of his motion, Munt argues that he is entitled to amend his complaint under Rule 15 because he is attempting to cure a lack of specificity regarding his ADA claim and an as-applied challenge to the Contact Lenses Policy. *See* (Mem. in Supp. of Second Mot. to Amend Compl. at 1). In opposition to Munt's Second Motion to Amend, Defendants argue that leave to amend should not be granted because: Munt's motion was untimely; Munt did not meet and confer as required under the Local Rules; and Munt's amendments are futile. *See* (Mem. in Opp'n to Second Mot. to Amend Compl. at 2–3).[11]

### 1. ADA Claims

As described elsewhere, the Court has already allowed the inclusion of Munt's ADA claims to the limited extent that he "allege[s] denial of meaningful access to law library services due to his alleged disability." (Aug. Order at 14); *see also* (July 2016 Order & R. & R. at 7). Defendants, in their Motion for Summary Judgment address these claims. *See* (Defendants Larson, Reid, Monio, and Ebeling's Mem. in Supp. of Their Mot. for Summ. J., "Mem. in Supp. of Summ. J.") [Doc. No. 141 at 5–7]. Thus, Munt's allowable ADA claims are already being considered in the context of the dispositive motion before the Court.

To the extent, therefore, that Munt's proposed amendments add ADA claims that were allowed and incorporated into the Amended Complaint, Munt's Second Motion to Amend should be denied as moot, as the Court has already construed the ADA claim to be part of the operative pleading in this respect. *See* (Aug. Order at 8–14); *see also* (July 2016 Order & R. & R. at 7).

---

[11]    Defendants' argument regarding timeliness was addressed above. Furthermore, because the Court recommends that Munt's Second Motion to Amend be denied on the basis of mootness and futility, this Court does not address Defendants' additional argument grounded on Munt's failure to follow the Local Rules.

Likewise, to the extent that Munt's proposed amendments attempt to add additional ADA claims beyond the scope of what the Court previously allowed, Munt's Motion to Amend should be denied grounded on futility. The Court has already adjudicated the ADA claims for which it determined could survive a motion to dismiss under Rule 12(b)(6). *See* (Aug. Order at 8–14); (July 2016 Order & R. & R. 5–7); *see also Zutz*, 601 F.3d at 850.

### 2.      As Applied Challenge

Pro se pleadings must be construed liberally. *See, e.g.*, *Estelle*, 429 U.S. at 106; *Spencer v. Haynes*, 774 F.3d 467, 471 (8th Cir. 2014); *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004); *Miller v. Norris*, 247 F.3d 736, 739 (8th Cir. 2001). Munt's Proposed Second Amended Complaint is silent with respect to which alleged constitutional violations are implicated by his as-applied challenge. *See* (Proposed Second Amended Compl. ¶ E.25). Applying a liberal construction to Munt's proposed amendments, this Court concludes that the only reasonable interpretation of Munt's claims are an as-applied challenge under the Eighth Amendment for constitutionally inadequate medical care and an as-applied challenge to the Equal Protection Clause under the Fourteenth Amendment. *See* (*id.*). The Court addresses each in turn.

### a.      Under the Eighth Amendment

The Eighth Amendment requires "prison officials to provide inmates with medical care." *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997). "To prevail on a claim of constitutionally inadequate medical care, the inmate must show that the prison officials' conduct amounted to 'deliberate indifference to [the prisoner's] serious medical needs.'" *Id.* at 1237–38 (alteration in original) (quoting *Estelle*, 429 U.S. at 104).

> An Eighth Amendment claim that prison officials were deliberately indifferent to the medical needs of inmates involves both an objective and a subjective component. The plaintiff[] must demonstrate (1) that [he] suffered objectively

19

serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.

*Id.* at 1239 (citations omitted). "This is an onerous standard." *Martinson v. Leason*, 22 F. Supp. 3d 952, 960 (D. Minn. 2014) (Kyle, J.) (internal quotation marks omitted). "The plaintiff 'must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not . . . rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct.'" *Id.* (quoting *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008)).

### i.        Objectively Serious Medical Needs

It is Munt's burden to assert sufficient facts to demonstrate "that [he] suffered objectively serious medical needs." *Dulany*, 132 F.3d at 1239; *see also Iqbal*, 556 U.S. at 678. A medical condition is "objectively serious" for Eighth Amendment purposes when the need "has been diagnosed by a physician as requiring treatment, or is one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (internal quotation marks omitted). Construed liberally, there are essentially two medical needs at issue: Munt's vision impairment generally, and the onset of headaches caused by wearing eyeglasses. *See, e.g.*, (Proposed Second Amend Compl. ¶¶ D.44, D.47) (alleging various injuries sustained by Munt's "very poor vision"); (*id.* ¶¶ D.45–D.47) (alleging various "severe debilitating effects" caused by wearing eyeglasses). As pleaded, Munt's vision impairment is arguably objectively serious because it was diagnosed by a physician and treated with prescription eyeglasses. *See, e.g.*, (*id.* ¶¶ D.4, D.31, D.34-D.35, D.49) (alleging that prescription of "new" eyeglasses on various occasions to treat Munt's vision impairment).

20

Munt's other complained of medical ailment (headaches allegedly caused by wearing eyeglasses) is a subjective ailment that is difficult to verify objectively. *Cf. Goodman v. Johnson*, No. 1:11cv79, 2015 WL 1401661, at *6 (E.D. Va. Mar. 23, 2015) ("[W]hether the medical need in this case is framed as . . . plaintiff's headaches, or . . . headaches causes by eyeglasses, it is unclear whether the need is 'serious'"). For example, Munt's complains that: wearing "glasses [gives] him severe headaches"; "[w]hen wearing glasses Plaintiff suffers severe debilitating effects that are cumulative;" and "[t]he effects include severe headaches that make migraines look tame." *See* (Proposed Second Amend Compl. ¶¶ D.1, D.45). These complaints are not supported by anything other than Munt's own conclusory statements and are not afforded the same deference as other, better-supported allegations. *See* (*id.*); *Cf. Iqbal*, 556 U.S. at 681 (finding certain "allegations . . . conclusory and not entitled to be assumed true").

Even if the Court assumes as true all of Munt's allegations regarding the debilitating effects of his headaches, this does not necessarily establish that he has pleaded sufficient facts demonstrating that his medical condition is objectively serious. Importantly, Munt pleaded no facts and provides no supporting exhibits to suggest that he was diagnosed with a condition that caused headaches when wearing eyeglasses.

Furthermore, with respect to the obviousness of his condition, aspects of Munt's factual allegations further undermine a determination that his headaches are objectively serious under the law. For example, Munt's Proposed Amended Complaint demonstrates lapses in seeking medical care for his condition, some longer than a year. *See, e.g.*, (Proposed Second Amended Compl. ¶ D.9) (alleging receiving medical services on April 19, 2013); (*Id.* ¶ D.10) (alleging receiving medical services on July 29, 2013); (*Id.* ¶ D.12) (alleging submitting a kite complaining of headaches from eyeglasses on August 1, 2014). Likewise, Munt provides no

21

allegations in his Proposed Second Amended Complaint that he continued to seek medical treatment for his headaches after he was transferred to MCF-STW (which occurred on July 6, 2015). As pleaded, therefore, Munt's intermittent medical care with respect to his headaches does not suggest a medical condition "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos*, 73 F.3d at 176 (internal quotation marks omitted).

As a result, Munt has not pleaded facts that would allow this Court to draw a reasonable inference that Munt's condition (headaches while wearing eyeglasses) was "diagnosed by a physician as requiring treatment, or is one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *See Camberos*, 73 F.3d at 176 (internal quotation marks omitted). The failure to allege or show an objectively serious medical condition is a sufficient basis for denying Munt's proposed amendments raising an as-applied challenge to the Contact Lenses Policy under the Eighth Amendment. *Cf. Iqbal*, 556 U.S. at 678. Nevertheless, in the interest of thoroughness, the Court will assume for the purposes of its analysis that Munt's complained of headaches were objectively serious and address a more fundamental failure in Munt's pleading: a failure to plead sufficient facts demonstrating Defendants' deliberate disregard of his serious medical needs.

### ii.     Deliberate Disregard

Munt must assert sufficient facts that allow this Court to draw a reasonable inference that Defendants deliberately disregarded his medical needs. *Dulany*, 132 F.3d at 1239; *see also Iqbal*, 556 U.S. at 678. Munt has not pleaded sufficient facts alleging that Defendants deliberately disregarded either Munt's alleged vision impairment or his alleged headaches caused by

eyeglasses. Instead, the facts suggest the contrary conclusion: Defendants have been diligent in addressing Munt's medical needs.

To the extent that Munt alleges that Defendants' deliberately disregarded his vision impairment, the Proposed Second Amended Complaint clearly demonstrates that Defendants attempted to treat his vision impairment by prescribing him eyeglasses. *See, e.g.*, (Proposed Second Amended Compl. ¶¶ D.4, D.31, D.34–D.35, D.49). To the extent that Munt alleges that contact lenses should have been provided as an appropriate means to address his vision impairment, this does not allege a colorable claim. *See Dulany*, 132 F.3d at 1239 ("[I]nmates have no constitutional right to receive a particular or requested course of treatment"). Thus, on the basis of Munt's Proposed Second Amended Complaint, there is nothing to suggest that Munt has a colorable claim for relief based on allegations that Defendants deliberately disregarded his vision impairment.

Likewise, Munt's Proposed Second Amended Complaint does not provide sufficient facts to allow this Court to draw a reasonable inference that Defendants deliberately disregarded headaches that were allegedly caused by eyeglasses. For example, Munt asserts that "[o]nly standard vision tests were done" and that "no specialized testing was done to determine whether movement related problem makes it impossible for [Munt] to wear glasses." (Proposed Second Amended Compl. ¶ D.49). To that end, Munt alleges that Defendants Larson and Reid "ignored the failure of Health Services to address [his] headaches caused by the use of glasses." (*Id.* ¶¶ E.2, E.16).[12] Munt also asserts that Defendants Larson and Reid "supported and tolerated a

---

[12]    The amendments presented in Munt's Second Proposed Amended Complaint reasonably allege claims against Defendants Larson and Reid only. *See* (Proposed Second Amended Compl. ¶¶ D.44–D.54, E.24–E.25). The remaining claims against the Defendants in Munt's operative complaint will be addressed in the Court's analysis of Defendants' Motion for Summary Judgment.

culture . . . which ignored the medical needs of inmates and where doctors were discouraged from recommending treatments." (*Id.*). But Munt's exhibits do not support this general allegation.

> When Munt continued to report that new glasses did not resolve his headaches and requested alternative solutions, Larson, copying Reid, informed Munt that contact lenses were prohibited unless they are deemed a medical necessity by a prescribing authority and that his 'practitioners have not made such a determination, despite several examinations.' (Ex. 20 to Compl.). Larson further informed Munt that should he continue to experience headaches, he should 'address that issue with Health Services.' (*Id.*). Similarly, in response to Munt's complaints and questions about the scope of DOC policy regarding contacts, Reid scheduled Munt for a repeat eye exam, explained that contacts had not been determined to be 'medically necessary' in his case and that no alternatives had been requested by Munt. (Exs. 9–11 to Compl.).

(July 2015 R. & R. at 24–25). Contrary to Munt's assertions, the exhibits demonstrate that Defendants Larson and Reid did not ignore Munt's medical needs; instead they heeded the opinion of the medical professionals that contact lenses are not medically necessary. Relying on the medical opinion of a treating medical service provider does not by itself establish or suggest a colorable claim for relief. *See McRaven v. Sanders*, 577 F.3d 974, 981 (8th Cir. 2009) ("A prison official may rely on a medical professional's opinion **if such reliance is reasonable**.") (emphasis added). That is, Munt has failed to plead sufficient facts to lead to an inference that reliance on the medical professionals' opinions was unreasonable. On numerous occasions, Defendants Larson and Reid explained to Munt that contacts needed to be diagnosed as medically necessary by a consulting medical processional before Larson or Reid could authorize the issuance of contact lenses under the Contact Lenses Policy. *See, e.g.*, (Ex. 20 to Compl.). At each visit, no healthcare provider determined that contacts were medically necessary, despite Munt's complaints. *See* (*id.*). Furthermore, as described above, Munt's intermittent

24

medical care with respect to his headaches supports the diagnosis from the medical professionals that contacts are not medically necessary. As alleged, therefore, it was objectively reasonable for Defendants Larson and Reid to rely on the medical professionals' opinions. *See, e.g.*, (Proposed Second Amended Compl. ¶¶ D.4, D.31, D.34–D.35, D.49).

In light of the above, the only claim that can be supported based on the factual allegations contained in Munt's proposed amendments is that the medical professionals were negligent or otherwise dilatory in their obligations to diagnose Munt, and even this claim seems dubious. *See* (*id.* ¶¶ D.44–D.54). Under this construction of Munt's allegations, Munt essentially asserts that Larson and Reed allegedly acted unreasonably for not holding the medical professionals accountable for their own negligence in failing to diagnose Munt with a condition that medically necessitates the prescription of contact lenses. *See* (*id.* ¶ E.25). But these allegations cannot establish a colorable claim under the Eighth Amendment because, "acting unreasonably in failing to take particular measures does not suffice because reasonableness is a negligence standard and . . . negligence"— even gross negligence—cannot "give rise to a deliberate indifference claim." *Martinson*, 22 F. Supp. 3d at 961 (internal quotation marks omitted).

As described, the Contact Lenses Policy does not impinge on a constitutional right. Importantly, the policy in question is not a complete prohibition against the issuance of contact lenses or other related medical care. Instead, the Contact Lenses Policy prevents inmates from obtaining contact lenses unless they are deemed medically necessary. But this prohibition does not in itself impinge on a constitutional right. *See Dulany*, 132 F.3d at 1239 ("[I]nmates have no constitutional right to receive a particular

or requested course of treatment"). Furthermore, as described above, the application of the challenged policy has not impinged on Munt's right to adequate medical care. As a result, an analysis under *Turner v. Safley* is not warranted. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) (stating that only "when a prison regulation impinges on inmates' constitutional rights" does a court need to consider whether "the regulation . . . is reasonably related to legitimate penological interests"). In further support, the Court notes that *Turner* is typically applied in the context of policies allegedly impinging on First Amendment rights (where the plain language of policy arguably impinges on an inmate's fundamental right to freedom of expression or freedom of religion). *Cf. Wickner v. Thorson*, No. 09-cv-966 (DWF/JJK), 2010 WL 3385088, at *6–7 (D. Minn. July 28, 2010) (Keyes, Mag. J) (citing cases), *adopted by* 2010 WL 3385098 (Aug. 23, 2010) (Frank, J.). Similarly, this Court could not identify any controlling case law that applies *Tuner* in an as-applied challenge under the Eighth Amendment to a policy preventing the issuance of contact lenses or other similar corrective medical devices, unless those devices are deemed medically necessary.

Consequently, Munt's Second Motion to Amend should be denied with respect to his Eighth Amendment claims because those proposed claims are futile.

### b.    Under the Fourteenth Amendment

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "Thus, the first step in an equal protection case is determining whether the plaintiff has demonstrated that [he] was treated

differently than others who were similarly situated to [him]." *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994). Munt has failed to allege that he was treated differently than others similarly situated to him. For example, Munt has not pleaded any facts demonstrating other inmates presenting similar medical symptoms were granted contact lenses under the challenged Contact Lenses Policy or were otherwise provided with different or more effective medical care. In fact, the medical record demonstrates that Munt was treated like every other inmate on the basis of the Contact Lenses Policy. *See* (Proposed Second Amended Compl. ¶ D.25) (stating that Munt was informed that he was denied contact lenses because it was determined that they were not medically necessary); (Ex. 9 to Compl.) (kite response stating that contacts were not medically necessary); (Ex. 21 to Compl.) (Dr. Taylor stating that other inmates "with triple Munt's prescription" and complaining of headaches have not been authorized for contact lenses).

Because Munt has not pleaded sufficient facts to establish disparate treatment under the Fourteenth Amendment, Munt's claims directed thereto fail as a matter of law. *See Klinger*, 31 F.3d at 733; *see also Johnson v. City of Minneapolis*, 152 F.3d 859, 862–63 (8th Cir. 1998) (affirming district court's determination that "plaintiffs neither describe the classification at issue nor identify any differential treatment to which they have been subjected" and district court's dismissal of claims under the Fourteenth Amendment for failure to state a claim upon which relief could be granted). In this regard, Munt's proposed amendments are futile and leave to amend should be denied as such.

In sum, Munt's proposed amendments directed to claims arising under the ADA, Eighth Amendment, and Fourteenth Amendment are either moot or futile and this Court recommends denying Munt's Second Motion to Amend.

### B.  Motion for Summary Judgment

### 1.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis omitted). "[A] dispute about a material fact is genuine if a reasonable jury could return a verdict in favor of either party." *White v. Farrier*, 849 F.2d 322, 325 (8th Cir. 1988). The court views the evidence and makes all reasonable inferences in favor of the nonmoving party. *Sallis v. Univ. of Minn.*, 408 F.3d 470, 474 (8th Cir. 2005).

To support its argument, the moving party must cite to record materials or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). "Once the moving party has made and supported their motion, the nonmoving party must proffer admissible evidence demonstrating a genuine dispute as to a material fact." *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011).

### 2.    Analysis

Defendants argue that Munt's claims against the unnamed defendants must be dismissed because they have not been timely served under the Federal Rules of Civil Procedure 4(m). *See* (Mem. in Supp. of Summ. J. at 5). With respect to Munt's ADA claim, Defendants argue that Munt has not made a prime facie showing that he has been discriminated against on the basis of his disability and that the record suggests that Munt has not been denied access to the law library in any appreciable way. *See* (*id.* at 5–6). Defendants next assert that Munt's First and Fourteenth

Amendment claims fail because Munt has failed to support those allegations beyond conclusory statements, and—alternatively—what has been alleged fails as a matter of law. *See* (*id.* at 7–8). With respect to Munt's Eighth Amendment Claims, Defendants assert that Munt failed to demonstrate an objectively serious medical need or that Defendants deliberately disregarded the objectively serious medical need. *See* (*id.* at 8–11). Defendants also argue that Munt's claims should be dismissed because Defendants are shielded by qualified immunity, Munt's claims for damages are barred by the Eleventh Amendment, and Munt's claims for injunctive relief against Reid and Monio are moot in light of Munt's transfer to MCF-STW.[13] *See* (*id.* at 11–13).

In his opposition, Munt raises numerous arguments. With respect to his ADA claims, Munt asserts that Defendants arguments based on the amount of time spent in the law library or "the alleged adequacy of time or resources" is irrelevant. (Mem. in Opp'n to Mot. for Summ. J. at 8). Instead, Munt argues that he is "greatly impeded" in his ability to utilize the law library based on his disability. (*Id.*); *see also* (First Aff. of Joel Munt – Amended, "Munt Aff.") [Doc. No. 186 ¶ 5] (describing the reasons why not wearing eyeglasses in the law library slows down his research and drafting efforts). Furthermore, Munt argues that the failure to diagnose and treat his medical condition was not a medical decision, but a policy decision, and therefore the cases cited by Defendants in support of their position are inapposite to this case. *See* (Mem. in Opp'n to Mot. for Summ. J. at 15–16). Additionally, Munt points to the Court's various statements about the alleged inconsistent quality of his submissions to the Court to demonstrate that he has been impeded in his access to law library services. *See* (*id.* at 17). Munt also argues about whether he has subjectively been given "ample" time at law library. *See* (*id.* at 17–18). In

---

[13]    Because this Court finds no reasonable jury could find Defendants violated Munt's constitutional rights on the basis on the record before the Court, this Court does not address Defendants additional arguments grounded on qualified immunity.

particular, Munt asserts that "[w]here [sic] it up to me, I would be devoting considerably more time each week to legal work." (*Id.* at 17).

      With respect to his Eighth Amendment claims, Munt argues that he has demonstrated that his medical needs were serious on the basis of his statements contained in his affidavit attached to his Memorandum in Opposition to the Motion for Summary Judgment. *See* (*id.* 20–21). In other words, he argues that "the Court has no choice but to find either [Munt's] medical need was serious or that this is a disputed fact that must be decided by the jury." (*Id.* at 21). With respect to deliberate indifference, Munt argues at length that expert testimony is not required because his medical need was so obvious "as to lie within the common knowledge of the jury." (*Id.* at 21–24) (internal quotation marks omitted). Munt also asserts that deliberate indifference is a fact issue and by its very nature precludes summary judgment. *See* (*id.* at 24).

      Munt also argues that qualified immunity is not appropriate because Defendants violated a federal right that was clearly established at the time of the violation. *See* (*id.* at 31–35). With respect to the dismissal of claims against the unnamed Defendants, Munt argues that his status as a prisoner and his lack of access to the courts provide the necessary showing of good cause. *See* (*id.* at 37–38). With respect to his First and Fourteenth Amendment claims, Munt argues that he has not alleged claims arising under the First and Fourteenth Amendments, and that it is improper for Defendants to add them in an attempt to submarine similar claims in a pending litigation. *See* (*id.* at 38–40).

      Finally, Munt raises many additional arguments, some of which the Court mentions briefly: Dr. David Paulson ("Dr. Paulson") cannot be considered as an expert witness and his assertions cannot support Defendants Motion for Summary Judgment; injunctive relief against Defendants who do not work at MCF-STW is not moot because Munt's "Complaint affects [him]

wherever [he] may reside, now or in the future, so long as he remains in the legal custody of the Minnesota Department of Corrections;" and damages are not barred by the Eleventh Amendment in part because "the 14th Amendment effectively repealed the 11th Amendment" and because Munt has sued Defendants in their individual capacities. *See* (*id.* at 9, 36, 40).

In light of the above arguments, the Court first addresses Defendants' arguments that arguably do not give rise to a decision on the merits, namely: dismissing claims against the unnamed Defendants due to Munt's failure to serve them; dismissing claims against Defendants Reid and Monio for injunctive relief as moot; and barring claims for damages under the Eleventh Amendment. Based on its analysis, this Court recommends that Munt's claims against the unnamed Defendants be dismissed, Munt's claims for injunctive relief against Reid and Monio in their official capacities be dismissed as moot, and Munt's claims for damages against Defendants in their official capacities be dismissed as barred under the Eleventh Amendment.

The Court next analyzes Munt's remaining claims under the Eighth Amendment, ADA, and First and Fourteenth Amendments on the merits. In accordance with its analysis on the merits, this Court recommends that summary judgment be granted on Munt's claims arising under the ADA and First, Eighth, and Fourteenth Amendments. In sum, this Court recommends that Defendants' Motion for Summary Judgment be granted in part and denied in part.

### a.      Claims Against Unnamed Defendants

Under the Federal Rules of Civil Procedure, "the court . . . must dismiss the action without prejudice" against defendants that were "not served within 120 days after the complaint is filed," unless Munt can show good cause. Fed. R. Civ. P. 4(m) (2015).[14] As Defendants correctly note, Munt filed his Complaint on February 25, 2015. *See* (Compl.). There is no

---

[14]      Munt filed his Complaint before the amendment changing Rule 4(m). *See* Fed. R. Civ. P. 4(m) (stating the new timeframe in which to serve defendants is 90 days).

indication that the unnamed Defendants have ever been served or that service was even attempted.

Munt contends that his status as a prisoner and the limitations of that status are good cause. *See* (Mem. in Opp'n to Mot. for Summ. J. at 37–38) (asserting that because Defendants cannot "demonstrate how Plaintiff could print the needed additional motion to amend to name the unnamed defendants despite the 50 page per week limit and cover copying costs so each could be served on [Munt's] income . . . then good cause is automatically met"). As noted above, Munt's status as a prisoner does not automatically "constitute good cause." *See Rahn*, 464 F.3d at 822. Furthermore, Munt's voluminous filing activity in this case demonstrates that he was capable of serving the unnamed Defendants if he was so inclined. *See, e.g.*, [Doc. Nos. 6, 25, 96] (motions for preliminary relief); [Doc. Nos. 3, 89, 146] (motions for appointment of counsel); [Doc. Nos. 13, 22, 27, 62, 64–65, 72–73, 95, 105, 132, 179] (various letters to the court); [Doc. Nos. 54, 152, 156] (motions for extensions of time); [Doc. No. 175] (motion to recuse Magistrate Judge Rau); [Doc. Nos. 158, 167, 186] (affidavits filed in support of Munt's motions). In other words, Munt's lapse of more than two years in serving the unnamed Defendants is inexcusable in light of the diligence he has shown litigating this case in every other respect; his status as a prisoner cannot support a finding of good cause under these circumstances. *See Rahn*, 464 F.3d at 822 (holding that "the district court was well within its discretion in denying Mr. Rahn's motions to extend the time that he had to amend his pleadings, join additional parties, and conduct discovery" because "[r]ather than focusing on amending his complaint or completing discovery, he spent most of his time filing frivolous motions before the district court.").

Arguably, Defendants' request for summary judgment on this issue is inappropriate. *See Walker v. Foster*, No. 10-cv-3096 (SRN/FLN), 2011 WL 3837122, at *1 (D. Minn. Aug. 30,

2011) (Nelson, J.) (stating that jurisdictional issues collateral to the merits are not appropriate for summary judgment). Here, "[d]efects in service of process are jurisdictional in nature. If a defendant is improperly served, a federal court lacks jurisdiction over the defendant." *Rasor v. Fed. Bureau of Prisons*, No. 05-cv-981 (DWF/FLN), 2006 WL 1174221, at *2 (D. Minn. May 1, 2006) (Noel, Mag. J., as adopted by Frank, J.) (citing *Printed Media Servs., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993)).

As a result, the Court recommends that Defendants' Motion for Summary Judgment be denied in this regard and the Court *sua sponte* dismiss claims against the unnamed Defendants without prejudice under Federal Rules of Civil Procedure Rule 4(m). *See Hoffmann v. United States*, 21 F. App'x 528, 529 (8th Cir. 2001) (per curiam) (unpublished opinion) (holding that failure to serve under Rule 4(m) warranted a *sua sponte* dismissal without prejudice).

### b.    Injunctive Relief Against Defendants Reid and Monio

> Transfer of a prisoner to a new facility can render that prisoner's claims for injunctive relief moot. *See Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). This is especially true where the transfer takes the prisoner outside the authority and care of the allegedly offending prison officials. *See Randolph v. Rodgers*, 253 F.3d 342, 345–46 (8th Cir. 2001) (denying prisoner's requested prospective injunctive relief as to several employees of a correctional facility the prisoner was no longer incarcerated at because those employees had no authority to enact any granted injunctive relief at the prisoner's present facility).

*Clark v. Roy*, No. 15-cv-2778 (SRN/HB), 2016 WL 447458, at *2 (D. Minn. Feb. 4, 2016) (Nelson, J.), *adopting report and recommendation*, 2016 WL 8674582 (Jan. 8, 2016) (Bowbeer, Mag. J.).

Here, Reid and Monio do not work at MCF-STW, where Munt is now incarcerated. Munt does not argue this point, but instead suggests that because his claims against Reid and Monio are in their official capacity and Munt's Complaint affects him wherever he may reside, his

request for injunctive relief is not moot. (Mem. in Opp'n to Mot. for Summ. J. at 35–36). But there is no record evidence suggesting that Reid and Monio continue to have any authority over Munt's care. Consequently, claims for injunctive relief against Defendants Reid and Monio are moot. *See Randolph*, 253 F.3d at 345–46 [hereinafter *Randolph II*]; *Clark*, 2016 WL 447458, at *2.

Summary judgment, however, is also arguably inappropriate as to this issue because a claim decided on mootness grounds is not a judgment on the merits. *See Ranwick v. Texas Gila, LLC*, 37 F. Supp. 3d 1053, 1056 (D. Minn. 2014) (Kyle, J.) ("As mootness is a matter of the Court's subject-matter jurisdiction, the Court must address it before reaching the merits." (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–97 (1998))).

That being said, this Court may raise subject-matter jurisdiction *sua sponte*. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). This Court therefore recommends that Defendants' Motion for Summary Judgment be denied in this regard and the Court *sua sponte* dismiss claims for injunctive relief against Defendants Reid and Monio.

### c.   Claims for Damages Against Defendants in their Official Capacity

Munt's argument that "the 14th Amendment effectively repealed the 11th Amendment" is contrary to law. (Mem. in Opp'n to Mot. for Summ. J. at 36). The law is well-settled:

> [The Eleventh Amendment] deprives a federal court of power to decide certain claims against States that otherwise would be within the scope of Art. III's grant of jurisdiction. For example, if a lawsuit against state officials under 42 U.S.C. § 1983 alleges a constitutional claim, the federal court is barred from awarding damages against the state treasury even though the claim arises under the Constitution.

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119–20 (1984). Importantly, Minnesota enjoys immunity from suit under 42 U.S.C. § 1983. *See Grover-Tsimi v. State of Minn.*, 449 F. App'x 529, 530 (8th Cir. 2011) (per curiam) (unpublished opinion). Likewise. Minnesota enjoys immunity from suit under the ADA. *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 800 (8th Cir. 2002).

Summary judgment on these claims, however, is not appropriate under the circumstances. *See Walker*, 2011 WL 3837122, at \*1 ("Immunity under the Eleventh Amendment, however, presents a jurisdictional question collateral to the merits. *Brown v. United States*, 151 F.3d 800, 803–04 (8th Cir. 1998). Accordingly, it is not appropriate for summary judgment. *Id.*").

As discussed above, this Court may raise subject-matter jurisdiction *sua sponte*. *See* Fed. R. Civ. P. 12(h)(3); *see also Fromm v. Comm'n of Veterans Affairs*, 220 F.3d 887, 890 (8th Cir. 2000) ("Under [Rule 12(h)(3)], either the court or any party may raise an issue of subject-matter jurisdiction at any time, and the Eleventh Amendment is regarded, at least for this purpose, as going to subject-matter jurisdiction."). As a result, Defendants' Motion for Summary Judgment should be denied in this respect, and the Court should *sua sponte* dismiss Munt's claims for damages against Defendants in their official capacity as barred under the Eleventh Amendment.

### d.    Eighth Amendment Claims

> An Eighth Amendment claim that prison officials were deliberately indifferent to the medical needs of inmates involves both an objective and a subjective component. The plaintiff[] must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.

*Dulany*, 132 F.3d at 1239 (citations omitted).

In many respects, the remainder of Defendants' Motion for Summary Judgment should be granted for the same reasons described in this Court's analysis of Munt's Second Motion to

Amend. In particular, Munt has failed to establish an objectively serious medical need on the basis of his alleged facts, and even if he established such a need, his allegations fail to establish that Defendants deliberately disregarded that medical need.

This Court's analysis regarding deliberate disregard is further buoyed by the additional medical evidence that Defendants presented in support of their Motion for Summary Judgment. In particular, the medical evidence demonstrates that Defendants did not diagnose Munt with a condition that caused headaches while wearing eyeglasses and Munt's condition is not so obvious "that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos*, 73 F.3d at 176. In other words, the medical evidence forecloses the possibility that a reasonable jury would find that Defendants deliberately disregarded Munt's medical need.

First, Munt's argument that Dr. Paulson is not an expert and therefore his proffered evidence is not admissible and cannot support Defendants' motion is largely irrelevant to this analysis. *See* (Mem. in Opp'n to Mot. for Summ. J. at 9). In particular, this Court's analysis does not depend "on scientific, technical, or other specialized knowledge." *See Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). For example, a determination as to whether Munt has been diagnosed with a condition that provides an exemption under the Contact Lenses Policy does not require expert testimony. Not a single treatment note in Munt's medical file states that a physician prescribed contacts as medically necessary. *See, e.g.*, (Ex. 6 to Paulson Aff. at 1) (assessment of headaches "potentially related to . . . correctional eyewear" and treating the condition with a referral for "reevaluation and potential rewriting of patient's eyeglasses prescription"); (*id.* at 2) (discussing prior diagnoses of headaches caused by ethmoid sinusitis); (*id.* at 4) (prescribing "Dilacor XR 120" and "Tylenol on an as-needed basis" to address Munt's persistent headaches); (Ex. 7 to Paulson Aff. at 5, 7) (diagnosing Munt with

"[m]yopia/[a]stigmatism" after a "[n]ormal eye exam"); *see also* (Paulson Aff. ¶ 13) ("There is no indication [in] Munt's medical records that he was diagnosed with keratoconus, aniseikonia, or severe astigmatism.").

In fact, the only medical entry where the procurement of contact lenses is even discussed demonstrates that the request was not based on medical need. (Ex. 7 to Paulson Aff. at 7). In this treatment note, the physician indicated that Munt had a "[n]ormal eye exam" and that Munt expressed a desire for a letter stating that "contact lenses are not allowed for basic myopia." (*Id.*) Basic myopia is not a medical condition that necessitates the prescription of contact lenses. *See* (Paulson Aff. ¶ 26) (stating that keratoconus, aniseikonia, or severe astigmatism are the types of conditions that may warrant the prescription of contact lenses as "a medical necessity"). In other words, on the basis of repeated exams indicating basic myopia and non-severe astigmatism, no reasonable jury could find that contact lenses were a medical necessity for Munt, with or without the benefit of expert testimony directed thereto.

Furthermore, as described above, Munt's intermittent medical care with respect to his headaches does not suggest a medical condition "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos*, 73 F.3d at 176; *see, e.g.*, (Paulson Aff. ¶¶ 15–21, 25, 28) (discussing Munt's history of medical care for his complaints of headaches caused by eyeglasses and noting that Munt has not been seen by a medical professional for this reason after transferring to MCF-STW on July 6, 2015).

In addition, Munt's blanket allegations that contacts are not allowed are not supported by the record. *Compare* (Compl. at ¶ D.7) (stating that "contacts were not allowed" in a correspondence received on October 4, 2012), *with* (Ex. 5 to Paulson Aff. at 5) (stating that "contacts are not authorized, but will have eye doctor evaluate" on October 4, 2012). Munt

appears to conflate the very real difference between "allowed" and "authorized." Under the policy, contacts are authorized for medically prescribed reasons. There is nothing to suggest that contact lenses are not "allowed" under any circumstances. *See* (Contact Lenses Policy); (Paulson Aff. ¶ 26) (noting why Munt does not medically qualify for contact lenses).

Contrary to Munt's assertions, there is ample evidence in the record showing that Munt was denied contacts on the basis of medical assessments related to his alleged impairments. For example, Dr. Taylor informed Munt that that she had "never gotten approval for this type of request in the past. In fact, I've been denied for guys with triple your prescription [and] headaches, and I know of no medical insurance on the street that would consider contacts in your case." (Ex. 21 to Compl.). This suggests that the denial was premised on the symptoms that Munt presented to the physicians and not some insidious attempt to undermine his medical care, as Munt alleges. *See* (Compl. at 15–16); (*id.* ¶ E.23). Further, "[t]here is no indication in Munt's medical record" that suggests Munt has "an objective abnormality" that is causing his headaches, "such as a brain tumor or hemorrhage." (Paulson Aff. ¶ 24).

At bottom, Munt has established that he disagrees with the treatment decisions of his medical professionals, but this is insufficient to establish a genuine issue of material fact under the Eighth Amendment's prohibition against inadequate medical care. Munt "must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not . . . rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii*, 512 F.3d at 499 (citations omitted).

Likewise, Munt's arguments in support of his allegations that Defendants were deliberately disregarding his medical condition are meritless. For example, in support of his

position, Munt asserts that "[e]xpert testimony is required as the standard of care and its breach, 'unless the breach is sufficiently obvious as to lie within the common knowledge of the jury.'" (Mem. in Opp'n to Mot. for Summ. J. at at 21) (quoting *Crooker v. United States*, No. 13–30199, 2015 WL 430289, at *3 (D. Mass. Feb. 3, 2015)). But Munt's argument is premised on law that is inapposite to the issue before the Court. *See* (*id.* at 21–23). In particular, Munt is asserting cases premised on a negligence standard for a medical malpractice theory of recovery. *See* (*id.* at 21–23). As described elsewhere, the standard here is much more onerous than mere negligence. *See, e.g.*, *Popoalii*, 512 F.3d at 499. "Indeed, summary judgment would be appropriate even if the evidence revealed [Defendants] 'should have known they were committing malpractice.'" *Martinson*, 22 F. Supp. 3d at 961 (quoting *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 389 (8th Cir. 2014))

Stated differently, Defendants have proffered evidence that they did not act with deliberate disregard for Munt's alleged headaches caused by eyeglasses and Munt has failed to show that that Defendants' actions were criminally reckless in addressing his medical needs. Munt's reliance on incorrect law does nothing to cure this deficiency. Thus, Munt's Eighth Amendment claim fails as a matter of law. Further, the Court notes that other courts have found no Eighth Amendment violation for inadequate medical care on the basis of untreated headaches caused by eyeglasses under similar facts. *See, e.g.*, *Goodman*, 2015 WL 1401661 at *7–8, *aff'd sub nom.*, *Goodman v. Runion*, ___ F. App'x ___, 2017 WL 360544 at *4–5 (4th Cir. Jan. 25, 2017) (per curiam); *Chavez v. Judd*, No. EDCV 08–696–AHM, 2010 WL 4668350 at *6–8 (C.D. Cal. Sept. 28, 2010), *report and recommendation adopted by* 2011 WL 4500622 (Sept. 28, 2011); *Bagwell v. Brewington-Carr*, No. CIV.A. 97–321, 2000 WL 1728148, at *6–7 (D. Del. Apr. 27, 2000), *aff'd,* 33 F. App'x 647 (3rd Cir. 2002) (table decision); *Hatch v. O'Leary*, No. 85

C 8579, 1992 WL 51002, at *3–5 (N.D. Ill. Mar. 5, 1992), *aff'd,* 986 F.2d 1424 (7th Cir. 1993) (unpublished table decision).

In sum, this Court finds there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law on Munt's Eighth Amendment claims.

### e.    ADA Claims

#### i.    Legal Standard

"[U]nder the ADA, a plaintiff must show: 1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability." *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999) [hereinafter *Randolph I*]. Under the ADA, granting *de minimis* access to services is insufficient; "qualified individuals [must] receive 'meaningful access' to programs and activities." *Id.* The "meaningful access" standard is predicated on the notion that a person with a disability has "an equal opportunity to gain the same benefit as his nondisabled peers." *Argenyi v. Creighton Univ.*, 703 F.3d 441, 449 (8th Cir. 2013).

#### ii.    Analysis

Defendants assert that Munt's alleged disability under the ADA claim is his poor eyesight. *See* (Mem. in Supp. of Summ. J. at 5) ("[T]he Court Limited Plaintiff's ADA claim to a claim based on a alleged denial of meaningful access to law library services due to his alleged disability—his alleged poor eyesight"). This is correct insofar as the Court limited Munt's ADA claim to "denial of meaningful access to law library services." (Aug. Order at 14). That being said, Defendants mischaracterize the disability; this Court incorporated an alleged disability with respect to Munt's headaches allegedly caused by eyeglasses, not based on Munt's alleged vision impairments. (July 2016 Order & R. & R. at 6) (finding that Munt's claims of headaches caused

by eyeglasses implicated the ADA because the headaches became "'increasingly debilitating'" and "'affects [his] legal research'" (quoting Ex. 4 to Compl.) (alteration in original)). It was this characterization that was affirmed in Judge Nelson's Order. *See* (Aug. Order at 14). Nevertheless, the exact contours of the alleged disability are largely irrelevant as the record is clear that Munt has not been denied meaningful access to the law library regardless of how the disability is characterized.

First, the Court assumes for the purposes of its analysis that Munt suffers from a qualifying disability and is otherwise qualified to receive the benefit in question. Munt's ADA claim, however, necessarily fails on third prong under *Randolph I*; there is no question of material fact regarding whether Munt was excluded from access to the law library service on basis of his qualifying disability.

"[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (internal quotation marks omitted). Thus, when alleging deprivations based on access to law library services, Munt must "demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim." *Id.* No reasonable jury could find that Munt has been hindered in pursuing his legal claim on the basis of his alleged disability.

Munt enjoys regular access to the law library; Defendants have not physically restricted him on the basis of his disability and if anything have provided him at least as much time as other inmates. *See* (Mem. in Supp. of Mot. for Summ. J. at 6) (stating that "Plaintiff is afforded as much or more law library time than any other inmate at MCF-STW"); *see also* (Affidavit of David Coward, "Coward Aff.") [Doc. No. 143 ¶¶ 5–6] (discussing Munt's use of law library

services). Further proof Munt has not been hindered in pursuing his legal claim is evidenced by both the number and comprehensive nature of Munt's fillings prepared in this litigation. *See, e.g.*, [Doc. Nos. 6, 25, 96] (motions for preliminary relief); [Doc. Nos. 3, 89, 146] (motions for appointment of counsel); [Doc. Nos. 13, 22, 27, 62, 64–65, 72–73, 95, 105, 132, 179] (various letters to the court); [Doc. Nos. 54, 152, 156] (motions for extensions of time); [Doc. No. 175] (motion to recuse Magistrate Judge Rau); [Doc. Nos. 158, 167, 186] (affidavits filed in support of Munt's motions). In total, Munt has submitted hundreds of pages of detailed, organized arguments and supporting evidence to the Court and provided Defendants with discovery requests in pursuing this action. *See* (Affidavit of Timothy S. Christensen, "Christensen Aff.") [Doc. No. 172 ¶¶ 2–4] (stating Munt served Defendants with two sets of interrogatories and a request for production of documents); (Exs. 1–2, Attached to Christensen Aff.) [Doc. No. 172-1] (Munt's requests and Defendants' proffered answers).

In an attempt to argue that he has been hindered in pursuing his legal claim, Munt asserts that his access to the law library is not "ample." *See* (Mem. in Opp'n to Mot. for Summ. J. at 17). But whether Munt's access to the law library is "ample" is largely irrelevant; all Defendants need do in this regard is provide Munt with "meaningful access" to the courts (which by extension implicates some amount of access to law library services). *See Lewis*, 518 U.S. at 351 (reiterating that "meaningful access to the courts is the touchstone" when determining issues related to access to law library services); *accord Argenyi*, 703 F.3d at 449; *Randolph I*, 170 F.3d at 858. Based on the record before the Court, no reasonable jury could find that Munt has been denied "meaningful access" with respect to either access to the court or law library services. Consequently, Defendants Motion for Summary Judgment in this regard should be granted.

### f.    First and Fourteenth Amendment Claims

In opposition to Defendants' Motion for Summary Judgment, Munt raises an argument that he "does not have a claim before this Court" under the First and Fourteenth Amendments. *See* (Mem. in Opp'n to Summ. J. at 38–40). This is contrary to his Amended Complaint, where he clearly alleges claims for relief under the First and Fourteenth Amendments. *See, e.g.*, (Compl. ¶¶ E.2, E.16, E.20–E.23). Furthermore, the Court has in the past categorized Munt's allegations as raising claims under these theories of recovery. *See, e.g.*, (July 2015 R. & R. at 10) ("Munt therefore alleges that Defendants violated his '[F]irst [A]mendment right to redress in so much as [they] impeded the administrative process' and his 'right to Due Process and . . . Equal Protection.'" (quoting Compl. ¶¶ E.2, E.16, E.20–E.21)). If Munt had wanted to remove these claims from consideration, he should have done so by amending his operative pleading to remove the claims in question. For Munt to state that this lawsuit does not include claims arising under the First and Fourteenth Amendments is untenable in light of the procedural posture of this case.

With respect to Munt's claims arising under the Equal Protection Clause of the Fourteenth Amendment, not only has Munt failed to allege sufficient facts to support such a claim, there is no evidence before the Court to suggest that Munt was treated differently than those similarly situated. As a result, Defendants' are entitled to judgment as a matter of law and their Motion for Summary Judgment should be granted in this regard. *Cf. Klinger*, 31 F.3d at 731.

With respect to the Munt's claims arising under the First Amendment and the Due Process Clause of the Fourteenth Amendment, Defendants are also entitled to judgment as a matter of law. In particular, Munt has not established—either by way of factual allegation or by way of direct proof—that Defendants violated Munt's constitutional rights in the manner in

which they handled his grievances. For example, Munt has not alleged—and provides no evidence—that Defendants retaliated against him for his use of the grievance system. Such an allegation may invoke a potential First Amendment violation if Munt could establish that Defendants' actions would chill someone of ordinary firmness from utilizing the grievance process. *See Santiago v. Blair*, 707 F.3d 984, 991–95 (8th Cir. 2013).

Instead, Munt alleges constitutional violations on the basis that Defendants did not follow DOC policy or were otherwise delinquent in the manner in which they handled Munt's grievances. *See* (Compl. ¶¶ D.24, D.27, D.29, D.33, D.36–D.40, E.2, E.16, E.20–E.23). These allegations do not rise above Munt's own conclusory statements, and even if these allegations were better supported, they are insufficient to support a constitutional violation.

In particular, violation of prison policy, "without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts does not give rise to a constitutional violation." *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (alteration in original) (internal quotation marks omitted). Importantly, Munt does not demonstrate that "he was prohibited from filing grievances altogether" or was otherwise "impeded [in] his access to the courts." *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (per curiam). The record clearly shows Munt filed numerous kites regarding the issues that gave rise to this litigation. *See, e.g.*, (Exs. 1, 3–14, 21 to Compl.) (various kites filed by Munt); (Exs. 15, 17–19 to Compl.) (Munt's filed grievance and various responses thereto). And as has been described above, no reasonable jury could find that has Munt has been impeded in his access to the courts.

As a result, Defendants are entitled to judgment as a matter of law for Munt's claims arising under the First and Fourteenth Amendments.

In sum, because no reasonable jury could find that Defendants violated Munt's constitutional rights as alleged in Munt's operative pleading on the basis of the factual record before the Court, Defendants are entitled to judgment as a matter of law. This Court recommends that Defendants' Motion for Summary Judgment be granted in part and denied in part and that this case be dismissed.

## III.    RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Plaintiff Joel Marvin Munt's Second Motion to Amend Complaint [Doc. No. 129] be **DENIED**;

2.    Defendants Nanette Larson, Kathryn Reid, Shelli Monio, Kim Ebeling, Doctors Nos. 1–6, Health Services Workers Nos. 1–6, Opticians Nos. 1-4, and RN No. 1's Motion for Summary Judgment [Doc. No. 140] be **GRANTED in part and DENIED in part** as described herein;

3.    Claims against unnamed Defendants Doctors Nos. 1–6, Health Services Workers Nos. 1–6, Opticians Nos. 1-4, and RN No. 1 be **DISMISSED without prejudice**;

4.    Claims for injunctive relief against Defendants Kathryn Reid and Shelli Monio be **DISMISSED without prejudice**;

5.    Claims for damages against Defendants Nanette Larson, Kathryn Reid, Shelli Monio, and Kim Ebeling in their official capacities be **DISMISSED without prejudice**;

6.      The remaining claims against Defendants Nanette Larson, Kathryn Reid, Shelli Monio, Kim Ebeling arising under the ADA, and First, Eighth, and Fourteenth Amendments be **DISMISSED with prejudice**; and

7.      This case be **DISMISSED**.


Dated: June 5, 2017

                                        _s/ Steven E. Rau_____
                                        STEVEN E. RAU
                                        United States Magistrate Judge



**Notice**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.